ADRIENNE C. PUBLICOVER (State Bar No. 161432)
Email: Adrienne.Publicover@WilsonElser.com
LAURA E. FANNON (State Bar No. 111500)
Email: Laura.Fannon@WilsonElser.com
**WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP**
525 Market Street – 17th Floor
San Francisco, California 94105-2725
Telephone: (415) 433-0990
Facsimile: (415) 434-1370

Attorneys for Defendant
RELIANCE STANDARD LIFE INSURANCE COMPANY

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

| | |
|---|---|
| ROXY HARIRI,<br><br>Plaintiff,<br><br>v.<br><br>RELIANCE STANDARD LIFE INSURANCE COMPANY,<br><br>Defendant. | Case No.: 5:15-cv-03054-EJD<br><br>**NOTICE OF MOTION, MOTION, AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT RE ERISA PREEMPTION**<br><br>Date: August 18, 2016<br>Time: 9:00 a.m.<br>Courtroom: 4<br>Hon. Edward J. Davila<br><br>Action Filed: July 1, 2015<br>Trial Date: None<br><br><u>Documents attached</u>**:**<br><br>1. Moving Separate Statement ;<br>2. Fannon Declaration<br>3. Proposed Order Granting Motion |

# TABLE OF CONTENTS


Table of Authorities ..... ii

NOTICE OF MOTION AND MOTION ..... 1

MEMORANDUM OF POINTS AND AUTHORITIES ..... 2

INTRODUCTION ..... 2

ARGUMENT: PLAINTIFF'S CLAIMS ARE GOVERNED AND PREEMPTED BY ERISA ..... 7

A. The Long Term Disability Plan Was an Employee Welfare Benefit Plan Within the Meaning of ERISA ..... 7

1. The LTD program satisfied Criterion 1 of the statutory definition of an ERISA employee welfare benefit plan ..... 8

2. The LTD plan satisfied Criteria 3 and 4 of the statutory definition of an ERISA employee welfare benefit plan ..... 9

3. The LTD plan satisfied Criterion 5 of the statutory definition of an ERISA employee welfare benefit plan ..... 10

4. The LTD plan satisfied Criterion 2 of the statutory definition of an ERISA employee welfare benefit plan ..... 10

B. The Undisputed Facts Demonstrate That The LTD Plan Was Not Exempt from ERISA As A Governmental Plan ..... 12

C. Plaintiff's Claims Are Preempted by ERISA ..... 17

CONCLUSION ..... 20

## TABLE OF AUTHORITIES

### Cases

*Aetna Health, Inc. v. Davila,* 540 U.S. 200 (2004) .......... 2
*Aetna Life Ins. Co. v. Bayona*, 223 F.3d 1030 (9th Cir. 2000) .......... 20
*Cinelli v. Security Pacific Corp.,* 61 F.3d 1437 (9th Cir. 1995) .......... 8
*Cleghorn v. Blue Shield of California*, 408 F.3d 1222 (9th Cir. 2005) .......... 19
*Credit Managers Ass'n. v. Kennesaw Life & Acc. Ins. Co*., 809 F.2d 617 (9th Cir. 1987) .......... 10
*Donovan v. Dillingham*, 688 F.2d 1367 (11th Cir. 1982) .......... 8
*Elliot v. Fortis Benefits Ins. Co*., 337 F.3d 1138 (9th Cir. 2003) .......... 19
*Kanne v. Connecticut General Life Ins. Co.*, 867 F.2d 489 (9th Cir. 1989) .......... 8, 12
*Metropolitan Life Insurance Co. v. Taylor*, 481 U.S. 58 (1987) .......... 18, 19
*Morton v. Shearer's Foods, LLC,* 2015 U.S. Dist. Lexis 119584 (W.D. Va. Sept. 8, 2015) .......... 16
*Pilot Life Ins. Co. v. Dedeaux,* 481 U.S. 41 (1987) .......... passim
*Saraff v. Standard Ins. Co.,* 102 F.3d 991 (9th Cir. 1996) .......... 11, 13, 15
*Scott v. Gulf Oil Corp.*, 754 F.2d 1499 (9th Cir. 1985) .......... 18
*Shaw v. Delta Airlines, Inc.*, 463 U.S. 85 (1983) .......... 17
*Wilson v. Provident Life and Acc. Ins. Co.,* 101 F.Supp.3d 1038 (W.D. Wash. 2015) .......... 13, 14, 15

### Statutes

29 U.S.C. §§ 1001 et seq. [ERISA] .......... passim
29 U.S.C. §1001(4) .......... 9
29 U.S.C. §1001(16)(B) .......... 9
29 U.S.C. §1002(1) .......... 1, 7, 8, 10
29 U.S.C. § 1002(2) .......... 7
29 U.S.C. §1002(7) .......... 10
29 U.S.C. §1002(21)(A) .......... 17

29 U.S.C. §1003(b)(1) .......... 13
29 U.S.C. § 1132(a)(1)(B) .......... 20
29 U.S.C. § 1144(a) .......... 18
29 U.S.C. § 1144(c)(1).......... 18
29 C.F.R. §2510.3-1(j) .......... 16

**Rules**

Fed.R.Civ.P. 56 .......... 2

**NOTICE OF MOTION AND MOTION**

TO ALL PARTIES AND TO THEIR ATTORNEYS OF RECORD:

NOTICE IS HEREBY GIVEN THAT, on August 18, 2016, at 9:00 a.m. in Courtroom 4, Fifth Floor, of the San Jose Courthouse, located at 280 South 1st Street, San Jose, CA 95113, Hon. Edward J. Davila presiding, defendant Reliance Standard Life Insurance Company ("Reliance Standard") will, and hereby does, move this Court for an order, pursuant to Rule 56 of the Federal Rules of Civil Procedure, establishing whether the claims of plaintiff Roxy Hariri ("plaintiff") as set forth in the First Amended Complaint are preempted by the Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. §§ 1001 et seq. Specifically, Reliance Standard seeks an order of this Court that plaintiff's claims *are* preempted by ERISA.

This motion is made on the ground that the long-term disability plan underwritten by Reliance Standard is an employee welfare benefit plan within the meaning of ERISA, 29 U.S.C. section 1002(1), and is not a "governmental plan," *id.,* section 1003(2), that would be exempted from the reach of ERISA.

The motion will be based on this notice, motion, and memorandum of points and authorities; separate moving statement; declaration of Laura E. Fannon with exhibits; and proposed order granting Reliance Standard's cross-motion for said relief, as well as upon the opposition/reply filed in response to plaintiff's motion, the arguments at the hearing on the motion, and on all evidence submitted to this court on the parties' cross-motions.

Respectfully submitted,

Dated: July 14, 2016 WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP

By: */s/Adrienne C. Publicover*
ADRIENNE C. PUBLICOVER
LAURA E. FANNON
Attorneys for Defendant
RELIANCE STANDARD LIFE INSURANCE COMPANY

## MEMORANDUM OF POINTS AND AUTHORITIES

## INTRODUCTION

### A. Nature of This Motion

Plaintiff seeks benefits under a group long term disability ("LTD") plan. The Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. §§ 1001, et seq., regulates an LTD benefit program where the program is (a) sponsored by an employer and/or (b) sponsored by an employee organization. Where a participant seeks benefits under an ERISA-governed benefit program, all state law claims that relate to the program and/or that purport to supplement or supplant ERISA's exclusive federal civil enforcement scheme, are preempted. *See, e.g., Aetna Health, Inc. v. Davila,* 540 U.S. 200 (2004); *Pilot Life Ins. Co. v. Dedeaux,* 481 U.S. 41 (1987). ERISA includes a narrow exemption for benefit programs that are sponsored by employers that are political subdivisions of a State. The parties have stipulated that the issue before the Court on these cross-motions is "*Whether Plaintiff's claims as set forth in the First Amended Complaint are preempted by the Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. §§ 1001 et seq.*" Resolution of that issue depends on whether the LTD plan under which Plaintiff seeks benefits was sponsored by an employee organization rather than a public employer and therefore falls outside the governmental plan exemption and within the scope of ERISA regulation. Pursuant to Fed.R.Civ.P. 56, Reliance Standard seeks summary judgment that the LTD plan and Plaintiff's claim for benefits is governed by ERISA and that her state law claims are preempted.

### B. Factual Background

Plaintiff began work for the County of Santa Clara ("the County") as a Deputy District Attorney on September 17, 2001. Moving Separate Statement ("MSS") 1. Plaintiff was a member of the Santa Clara County Government Attorneys' Association (the "GAA"). MSS 2. The County recognized the GAA as the exclusive bargaining representative for all classified and unclassified

attorneys in coded classifications within the GAA bargaining unit. MSS 3. On December 19, 2012, Plaintiff ceased working because of a claimed disability. MSS 4.

Over a period of several years, LTD benefits for County attorneys who were members of the GAA were funded by a series of group disability insurance policies issued by various insurance carriers to the County as the policyholder pursuant to various collective bargaining agreements between the County and the GAA. MSS 5. Participants contributed toward the premium cost of the LTD insurance via payroll deduction and, at least during some periods of time, the County contributed a portion of the premium cost. MSS 6.

In 2011, the County and the GAA executed a Memorandum of Agreement (also referred to as a "Memorandum of Understanding") ("2011 MOU") covering the terms and conditions of employment of GAA members for the period September 5, 2011 – September 1, 2013. MSS 7. Among other things, the 2011 MOU provided as follows (emphasis added):

> Effective September 5, 2011, the County will stop payments of up to $0.45/$100 of covered salary pursuant to the Long Term Disability (LTD) insurance side letter between the County and GAA signed October 10, 1997. Effective September 5, 2011 employees shall pay all premium costs for LTD insurance coverage (currently through The Standard Insurance Company), which shall continue to be deducted from the employees' paycheck. *Effective no later than March 4, 201, the County will stop administering the LTD plan as the Employer Plan Sponsor. At least 60 calendar days prior to March 4, 2012, the County and GAA shall meet and confer regarding other options for administration of an LTD plan should GAA wish to continue LTD plan coverage specific for its members.*

MSS 8.

Pursuant to the 2011 MOU, on August 22, 2011, the County wrote to the existing LTD insurance carrier to provide it with "formal notice of termination" of the policy. The letter went on to state:

> As an outcome of recent negotiations with our government attorney bargaining groups, the County and these groups have mutually agreed to terminate this policy as one of several benefit concessions in order to help the County achieve the necessary budget savings to balance its budget this fiscal year.

MSS 9.

On the same date, the County wrote to insurance broker, John Pivirotto, to inform him of the termination, to say that negotiations with GAA were ongoing, and to say that one of the things the County hoped to accomplish was to terminate the policy in its entirety in which case "GAA may seek to obtain its own LTD coverage policy for its members; the County would not be involved." MSS 10.

On October 3, 2011, Kevin Smith, Treasurer of GAA, authored an email to various individuals, including County officials, stating that he was "presiding over the GAA's committee tasked with recommending any changes to our Long Term Disability Plan." He noted that GAA made "multiple requests over the past month or more to [the County] to provide us with a census of our members to be able to put out a request for bids to insurance carriers for this policy." MSS 11. On October 6, 2011, Smith authored another email to the County stating that:

> On behalf of GAA, Financial Concepts has hired Kathy Miller as a consultant in an effort to determine what will be required for the administration of the GAA LTD Plan. In that capacity, Ms. Miller is authorized to contact the County to obtain census data, other information and obtain answers to any questions we [*sic*] questions we may have about the County's process for the administration of this Plan.

MSS 12.

On October 12, 2011, Mr. Smith authored another email, asking if there was "[a]ny progress on getting information out of [the County] for the GAA's transition from county administration of the Long Term Disability plan?" MSS 13. The response from the County was that the individual at the County who was responsible for providing the information was "budgeting his time based on the March 4, 2012 date in the MOA." MSS 14. In further correspondence dated October 26, 2011, Mr. Smith responded by asking "why does he get to budget his time when the burden to replace this plan is on us?" MSS 15. On November 8, 2011, the County responded with the requested census information. MSS 16.

On May 8, 2012, GAA informed the County that "GAA voted today to switch providers for our LTD policy," and that it would obtain a group LTD policy from Reliance Standard. MSS 17. The County responded by asking if GAA would rely on the County for "paycheck deductions and other assistance." MSS 18. GAA replied in the affirmative. MSS 19. The County replied that it would like to review the new policy and requested that the broker summarize the differences between the old policy and the new. MSS 20. GAA responded that

> John [the broker] has put in a lot of time to get GAA (and potentially County Counsel) a great new provider and plan. GAA has met and voted to accept the new plan. County Counsel representatives were present during our committee meetings and general membership meeting today when the new plan was discussed. I am not sure what reason the County would have in asking for such information from [the broker].

MSS 21. The County responded that it "would have hoped that John and/or GAA would have offered [the County] a chance to review the new policy(ies) in advance in case there may be some issues that are of concern for us, particularly since GAA is expecting the County to provide that administration." MSS 22. GAA replied as follows:

> Our deal with Reliance involves short term and long term components.
> . . .
> As for involving the county, I have got to say that you have been pretty clear since we signed our new MOU that you do not have the resources to get involved in any discussions with us about the LTD . . . The county made it quite clear that we were on our own with the LTD during our negotiations.

MSS 23.

Effective June 25, 2012, Reliance Standard issued a group LTD policy to GAA as the policyholder. MSS 24. The Preliminary Application for Group Insurance listed GAA as the "Prospective Policyholder" and was signed by the president of GAA. MSS 25. Eligible Classes under the LTD policy were limited to "Each active, Full-time member of the Santa Clara County: (a) Government Attorneys Association . . . who is employed by the County of Santa Clara except for any person employed on a temporary or seasonal basis." MSS 26. The cover page of the Policy Certificate booklet, available on the County website, contained the title "Santa Clara County

Government Attorneys Association." MSS 27. The booklet also included a description of the benefit claim process that mirrors the requirements of ERISA's claim regulations at 29 C.F.R. §2560.503-1. MSS 28. The booklet also included the "ERISA Statement of Rights" required by ERISA-governed summary plan descriptions. MSS 29. Also on the County's website is a memorandum dated July 18, 2012, confirming the "Administrative Agreement by and between Reliance Standard Life Insurance Company . . . and the above named Policyholder" which was effective June 25, 2012 and confirming various premium amounts. The Policyholder identified in the memorandum is "Santa Clara Government Attorneys Association Executive Committee." MSS 30.

The LTD policy (MSS 24; Ex. A0011, A0013) described the rights and obligations of GAA as the policyholder. Among other things:

- GAA acted on its own behalf and as agent of the employee/members.
- GAA had the responsibility to maintain sufficient records of each insured's insurance, including additions, terminations, and changes.
- GAA had the responsibility to notify Reliance Standard on a timely basis of all individuals eligible for coverage and all individuals whose eligibility had ended.
- GAA had the responsibility to provide accurate census and salary information to Reliance Standard on all insureds.
- GAA had the responsibility to pay all premiums under the LTD policy.
- GAA was required to maintain all records of all insureds.
- GAA had the right to cancel the LTD policy at any time upon proper notice to Reliance Standard.

Plaintiff's date of disability was December 19, 2012.[1] MSS 31. At that time, she was a participant in the LTD plan insured by Reliance Standard. Pursuant to the 2011 MOU, the County

[1] Although plaintiff returned to work for a few weeks, from November 12, 2013, to January 21, 2014 (MSS 33), her claim for benefits from January 22, 2014 forward was considered to have arisen from the same disability, in accordance with the Policy's Recurrent Disability provision:

was not contributing toward premiums for the LTD coverage at that time. MSS 36. Reliance Standard paid plaintiff's claim until November 12, 2013, when she returned to work. MSS 37. Plaintiff ceased working again on January 21, 2014. MSS 38. Reliance Standard denied plaintiff's further claim for disability, as well as her appeal. MSS 39. Reliance Standard's April 8, 2014 letter denying her claim contained language referencing ERISA and Plaintiff's right to appeal the decision pursuant to the ERISA claim process. MSS 40. Plaintiff did file an appeal. MSS 41. Reliance Standard's May 19, 2015 letter denying Plaintiff's appeal also contained language referencing ERISA and Plaintiff's right to file a civil action under ERISA's civil enforcement provisions. MSS 42.

## ARGUMENT

### PLAINTIFF'S CLAIMS ARE GOVERNED AND PREEMPTED BY ERISA

### A. The Long Term Disability Plan Was an Employee Welfare Benefit Plan Within the Meaning of ERISA.

ERISA governs employee pension and welfare benefit plans. 29 U.S.C. §1002(1) and (2). A plan offering LTD benefits is an employee welfare plan. ERISA defines an "employee welfare benefit plan" in relevant part as

> any plan, fund, or program which was heretofore or is hereafter established or maintained by an employer or by an employee organization, or by both, to the extent that such plan, fund, or program was established or is maintained for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise . . . benefits in the event of . . . disability . . . .

29 U.S.C. § 1002(1). Five elements are required for a plan to constitute an employee welfare benefit plan under this definition:

---

> If an Insured returns to Active Work for less than six (6) months, a recurrent Total Disability for the same or related cause will be part of the same Total Disability. A new Elimination Period is not required. Our liability for the entire period will be subject to the terms of this Policy for the original period of Total Disability.

MSS 32. Therefore, her date of disability remained December 19, 2012. MSS 34.

> (1) A plan, fund or program, (2) established or maintained, (3) by an employer or by an employee organization, or by both, (4) for the purpose of providing medical, surgical, hospital care, sickness, accident, disability, death, unemployment or vacation benefits, apprenticeship or other training programs, day care centers, scholarship funds, pre-paid legal services or severance benefits, (5) to participants or their beneficiaries.

*Kanne v. Connecticut General Life Ins. Co.*, 867 F.2d 489 (9th Cir. 1989); *Donovan v. Dillingham*, 688 F.2d 1367, 1371 (11th Cir. 1982). In this case, the LTD plan satisfied all of these elements.

**1. The LTD program satisfied Criterion 1 of the statutory definition of an ERISA employee welfare benefit plan.**

Plaintiff cannot seriously dispute that the LTD program is a "plan, fund, or program" under ERISA. The purpose of this criterion is solely to demonstrate that a program was a reality and not merely a vague promise of future potential benefits. *See, e.g., Cinelli v. Security Pacific Corp.,* 61 F.3d 1437, 1441-42 (9th Cir. 1995) (although the intent to create a plan, without any action, is not sufficient, insurance covering participants is evidence of a plan, fund, or program). For ERISA purposes, then, a plan, fund, or program, "implies the existence of intended benefits, intended beneficiaries, a source of financing, and a procedure to apply for and collect benefits." *Donovan*, *supra*, 688 F.2d at 1372. The LTD policy contains more than sufficient information to satisfy the *Donovan* criteria: The policy sets forth the intended benefits (monthly benefits in the event of disability); the intended beneficiaries (members of GAA who are also employed by and actively working for the County as attorneys); a source of funding (payment of premiums and insurance coverage); and procedures for applying for and collecting benefits. In short, the evidence demonstrates that the LTD plan existed and was more than a mere promise of future potential benefits.

### 2. The LTD plan satisfied Criteria 3 and 4 of the statutory definition of an ERISA employee welfare benefit plan[2]

Although ERISA plans can be sponsored by employers, they can also be sponsored by employee organizations such as the GAA. ERISA specifically defines a "plan sponsor" as:

> (i) the employer in the case of an employee benefit plan established or maintained by a single employer, *(ii) the employee organization in the case of a plan established or maintained by an employee organization,* or (iii) in the case of a plan established or maintained by two or more employers or jointly by one or more employers and one or more employee organizations, the association, committee, joint board of trustees, or other similar group of representatives of the parties who establish or maintain the plan.

29 U.S.C. §1001(16)(B) (emphasis added). There should be no debate that GAA is an "employee organization" within the meaning of ERISA:

> The term "employee organization" means any labor union or any organization of any kind, or any agency or employee representation committee, association, group, or plan, in which employees participate and which exists for the purpose, in whole or in part, of dealing with employers concerning an employee benefit plan, or other matters incidental to employment relationships . . . .

29 U.S.C. §1001(4). The 2011 MOU and the course of dealings between the County and the GAA demonstrate that the GAA was an employee organization under ERISA: The GAA represented attorneys employed by the County and negotiated the terms and conditions of employment on their behalf, including employee benefits. MSS 3.

There also should be no debate that the LTD plan was established and maintained to provide one of the types of benefits specifically included in an employee welfare benefit under ERISA, i.e., benefits in the event of disability. *See, e.g., Pilot Life, supra* (dispute over denial of long term disability benefits is governed by ERISA).

---

[2] Criterion 2 of the statutory definition is discussed at subsection (A)(4) below.

**3. The LTD plan satisfied Criterion 5 of the statutory definition of an ERISA employee welfare benefit plan.**

ERISA defines the term “participant” in relevant part as “any member of an employee organization . . . who is or may become eligible to receive a benefit of any type from an employee benefit plan which covers . . . members of such organization . . . .” 29 U.S.C. §1002(7). Here, the LTD policy specifically limits eligibility to full-time members of GAA who are employed by the County as attorneys.

**4. The LTD plan satisfied Criterion 2 of the statutory definition of an ERISA employee welfare benefit plan.**

Criterion number 2, that GAA "established or maintained" a disability benefits plan, is also satisfied in this case. Among other things, the use of insurance to fund disability and other welfare benefits is a classic method by which an ERISA plan may be "established or maintained." ERISA expressly states that an employee welfare benefit plan providing disability benefits may be funded "through the purchase of insurance or otherwise." 29 U.S.C. § 1002(1). The Ninth Circuit long ago recognized that a sponsor can establish an employee benefit plan by obtaining insurance for its employees:

> An employer . . . can establish an ERISA plan rather easily. Even if an employer does no more than arrange for a 'group-type insurance program,' it can establish an ERISA plan, unless it is a mere advertiser who makes no contributions on behalf of its employees.

*Credit Managers Ass'n. v. Kennesaw Life & Acc. Ins. Co.*, 809 F.2d 617, 625 (9th Cir. 1987).

Here, GAA did much more than merely “arrange for” an insurance program for its members. Under the 2011 MOU, the County relinquished its obligations to provide LTD coverage to attorney employees who were members of GAA: “Effective no later than March 4, 2012, the County will stop administering the LTD plan as the Employer Plan Sponsor.” MSS 8. At that point, it was not only GAA’s obligation to arrange for future LTD coverage, but it was also GAA’s

decision whether such coverage would even be provided to its members in the first place. As stated in the 2011 MOU, "the County and GAA shall meet and confer regarding other options for administration of an LTD plan *should GAA wish to continue LTD plan coverage specific for its members."* MSS 8. As the County informed insurance broker, John Pivirotto, "GAA may seek to obtain its own LTD coverage policy for its members; the County would not be involved." MSS 10. The treasurer of GAA later confirmed in an email to the County that "[t]he county made it quite clear that we were on our own with the LTD during our negotiations." MSS 23.

Thereafter, the County terminated its contract with the existing LTD insurance carrier. MSS 9. GAA decided to obtain LTD coverage for its members. MSS 10. GAA formed a committee to review coverage options and carriers. MSS 11. GAA contacted an insurance broker who in turn hired a consultant to contact carriers for bids on GAA's behalf. MSS 12. GAA obtained census and other information from the County in order to obtain quotes from insurers. MSS 16. GAA and its broker received bids and negotiated the terms of the LTD coverage. MSS 21. Ultimately, GAA voted to purchase coverage from Reliance Standard that included short term and long term coverage. MSS 23. GAA entered into an administration agreement with Reliance Standard. MSS 30. A group policy was issued by Reliance Standard to GAA as policyholder in which GAA obtained various rights (e.g., to cancel the policy at any time upon proper notice) and accepted various obligations (e.g., maintain records, notify Reliance Standard of certain changes, pay premiums, etc.). MSS 24. The policy booklets issued to participants bear the name of GAA on their covers. MSS 27.

The actions of GAA are more than sufficient to demonstrate that GAA established and maintained the LTD plan. In *Saraff v. Standard Ins. Co.,* 102 F.3d 991 (9th Cir. 1996), the plaintiff sought disability benefits under a group insurance policy. The policy was issued to the Orange

County Employees Association. The OCEA's members were employees of Orange County and the OCEA existed for the purpose of dealing with Orange County on matters incidental to the employment relationship, including employee benefits. The court held that the OCEA was an employee organization under ERISA. The court also held that the disability policy was governed by ERISA where the policy was issued to the OCEA; the policy was issued for the purpose of providing OCEA members with LTD coverage; the OCEA maintained the plan; the OCEA actively endorsed the plan and encouraged its members to join; and the certificate and summary plan description specifically referenced ERISA. *Cf. Kanne v. Connecticut Gen.,* 867 F.2d at 493 (plan brochure's description of plan as an ERISA plan evidenced an intent to create an ERISA plan).

Similarly, here GAA decided to obtain disability insurance for its members; shopped around for coverage; negotiated the terms of the coverage; voted to obtain insurance from Reliance Standard; entered into an administrative agreement with Reliance Standard on behalf of its members; the policy was issued to GAA as the policyholder; coverage was limited to GAA members; GAA obtained certain rights and accepted certain obligations regarding maintenance of the policy all as set forth in the LTD policy; and the policy summary specifically referenced ERISA and provided participants notice of their rights under ERISA. None of these facts are disputed and there is no doubt that GAA established and maintained the LTD plan.

In summary, all of the statutory criteria for an employee welfare benefit plan are satisfied in this case.

**B. The Undisputed Facts Demonstrate That The LTD Plan Was Not Exempt from ERISA As A Governmental Plan.**

Plaintiff's sole argument to avoid ERISA coverage is that the LTD plan was exempt from ERISA as a "governmental plan." Governmental plans are exempt from ERISA coverage under 29 U.S.C. §1003(b)(1). A governmental plan is one that is sponsored by a political subdivision of a

State. In this case, that would be the County. However, where an employee benefit plan is sponsored by an employee organization, the plan is governed by ERISA, even if the members of the employee organization who participate in the plan are also employees of a governmental entity. *See, e.g., Saraff v. Standard Ins. Co.,* 102 F.3d 991 (9th Cir. 1996); *Wilson v. Provident Life and Acc. Ins. Co.,* 101 F.Supp.3d 1038 (W.D. Wash. 2015). To succeed in her argument, Plaintiff must demonstrate that the LTD plan was sponsored by the County. Because the LTD plan in this case was sponsored by GAA, an employee organization, and not by the County, the LTD plan is not a governmental plan and therefore not excluded from ERISA.

The background facts in *Saraff* are discussed above, but the point in this context is that the disability plan in that case was held to be an ERISA plan where it was sponsored by an employee organization. This was in spite of the fact that the members of the employee organization and the participants in the disability plan were all employees of a governmental entity.

Similarly, in *Wilson, supra,* the court held that a disability plan was sponsored by an employee organization and was not a governmental plan. The Washington Education Association, an employee organization, arranged for group disability insurance coverage for its members, all of whom were public school employees. The *Wilson* court ruled that the WEA established an employee benefit plan for its members, citing several factors, including the following: The WEA was responsible for creating the plan; the group policy was issued to the WEA and identified the WEA as the policyholder; the WEA endorsed the plan as having its approval; the WEA had the power to amend or terminate the plan; and a plan brochure carried the WEA's logo. 101 F.Supp.3d at 1043-44. Likewise in the present case, GAA arranged for and negotiated for the group LTD policy; the LTD policy was issued to GAA and named GAA as the policyholder; the policy was issued for the purpose of providing LTD and other coverage to GAA members; the GAA endorsed

the plan as having its approval; the GAA had the authority to amend (by agreement with Reliance Standard) and the sole authority to terminate the policy; and the policy booklet contained the name of the GAA on its cover.

The *Wilson* court also ruled that the disability plan was not a governmental plan and was therefore not exempt from ERISA. The court found that the plan was created without direct government involvement and was not a product of collective bargaining, but the result of a separate negotiation between the WEA and the insurer. The court held that the plan was therefore not a governmental plan even though members of the WEA were public school employees, the public school employer of the plaintiff may have contributed toward the premium cost and performed some administrative functions including facilitating the payment of plan premiums via payroll deduction, and the collective bargaining agreement with the plaintiff's employer required the employer to elect to participate in the disability plan. 101 F.Supp.3d at 1044-45.

Like the plan in *Wilson,* the facts in the present case also demonstrate that it is not a governmental plan. Under the 2011 MOU, the County specifically and expressly terminated its position as plan sponsor of the LTD plan. The County relinquished any further obligation under the LTD plan, notified its carrier of the termination of the existing group policy, and left it to GAA's discretion as to whether to have an LTD plan. Further, if GAA decided to sponsor a plan, GAA was required to do all of the work necessary to create such a plan. See 2011 MOU ("the County will stop administering the LTD plan as the Employer Plan Sponsor"), MSS 9; County email to Broker dated August 22, 2011 ("GAA may seek to obtain its own LTD coverage policy for its members; the County would not be involved."), MSS 10; GAA email to County dated May 8, 2012 ("The county made it quite clear that we were on our own with the LTD during our negotiations."), MSS 23. The GAA then contacted a broker, obtained data and information to provide to insurance

carriers to obtain bids, negotiated policy terms, voted to arrange coverage from Reliance Standard, became the named policyholder, and accepted various rights and obligations under the terms of the group policy contract. The County was so uninvolved that GAA did not even provide the County with a copy of the proposed policy before GAA decided to purchase the policy from Reliance Standard. MSS 20. If anything, the County in this case was even less involved than the employers in *Wilson* and *Saraff* and this plan is even further removed from being a governmental plan.

Plaintiff will likely argue that the LTD plan in this case was collectively bargained with a public employer and therefore a governmental plan. However, even assuming this is sufficient to bring the plan within the governmental plan exemption, the facts are directly to the contrary and demonstrate that the LTD plan was *not* collectively bargained. The 2011 MOU expressly removed the LTD plan from the bargaining agreement, terminated any obligations of the County with respect to the LTD plan, and left the entire issue to the GAA as to whether GAA would sponsor an LTD plan for its members. In fact, this case does not even involve a decision like that of the public employer in *Wilson* to elect to participate in the LTD plan, because the County in this case was completely agnostic about whether not there would be an LTD plan for GAA members.

Plaintiff will also likely argue that because the County ultimately provided some administrative services (e.g., payroll deduction), the plan is a governmental plan. However, there are several reasons why this is not sufficient.

First, administrative services like payroll deduction alone, and even a partial contribution by a public employer, are not sufficient to make the plan a governmental plan. *See Wilson,* 101 F.Supp.3d at 1044-45 (partial premium contribution and administrative services like payroll deduction are not sufficient to make a plan a governmental plan). At the time Plaintiff ceased working, the County was not contributing anything toward the LTD premiums.

Second, provision of certain administrative services, especially ministerial services like recordkeeping and payroll deduction, is not sufficient to establish that an entity is "maintaining" a benefit plan. The U.S. Department of Labor, one of the federal agencies charged with the regulation of ERISA, has promulgated a regulation stating that where an employer does not endorse a program and merely provides ministerial services such as payroll deduction, the employer does not establish or maintain the plan. 29 C.F.R. §2510.3-1(j). There is no question that the County did not endorse the LTD plan, and providing certain ministerial services is otherwise not sufficient to establish that it established or maintained the plan.

Third, the County exercised no discretionary functions whatsoever with respect to the LTD plan; only GAA did so. *See, e.g., Morton v. Shearer's Foods, LLC,* 2015 U.S. Dist. Lexis 119584, *20-21 (W.D. Va. Sept. 8, 2015) (collecting and submitting funds via payroll deduction is a ministerial and not a fiduciary function under ERISA). As such, the County was not even a fiduciary of the LTD plan, much less a plan sponsor. *See,e.g.,* 29 U.S.C. §1002(21)(A) (a person is a fiduciary under ERISA where the person has discretionary authority regarding management of the plan).

Fourth, whatever minor ministerial functions the County performed, they were done on behalf of GAA because the LTD policy clearly states that as the policyholder, it was GAA and not the County that had primary responsibility, for maintaining records, providing notices to Reliance Standard, paying premiums, and the like.

Finally, ministerial administrative functions aside, the County had no direct role in the creation of the LTD plan. The County expressly relinquished and terminated its role as plan sponsor, took no position whatsoever as to whether or not there would even be an LTD plan for

GAA members, and left everything related to that decision and the creation of the LTD plan in the lap of GAA.

In summary, the LTD plan was sponsored by GAA and not by the County and was not a governmental plan. The LTD plan was governed by ERISA.

**C. Plaintiff's Claims Are Preempted By ERISA.**

All state laws that "relate to" employee welfare benefit plans, including any common law and state statutory rights of employees seeking to recover plan benefits, are preempted by ERISA. *Pilot Life Insurance Co. v. Dedeaux*, 481 U.S. 41 (1987). ERISA provides, with certain narrow exceptions, that the rights, regulations and remedies afforded by that statute "supersede any and all state laws insofar as they may now or hereafter relate to any employee benefit plan." 29 U.S.C. § 1144(a). ERISA defines the term "State law" broadly to include "all laws, decisions, rules, regulations, or other State action having the effect of law, of any State." 29 U.S.C. § 1144(c)(1).

The Supreme Court has repeatedly made it clear that the preemption provision of ERISA is extremely broad. *See, e.g., Pilot Life*, 481 U.S. at 45-46 ("the express pre-emption provisions of ERISA are deliberately expansive"); *Shaw v. Delta Airlines, Inc.*, 463 U.S. 85 (1983) ("the breadth of [29 U.S.C. §1144(a)'s] pre-emptive reach is apparent . . . ."). The Supreme Court has employed a similarly broad definition in determining whether a law "relates to" an employee welfare benefit plan. A state law "relates to 'a benefit plan . . . if it has a connection with or reference to such a plan.'" *Shaw*, *supra* at 96-97. Furthermore, because Congress used the phrase "relate to" in its broad sense, the Supreme Court has "emphasized that the pre-emption clause is not limited to 'state laws specifically designed to affect employee benefit plans.'" *Pilot Life*, 481 U.S. at 47-48. *Accord, Shaw*, 463 U.S. at 98 (preemption clause should not "be interpreted to pre-empt only state laws

dealing with the subject matters covered by ERISA -- reporting, disclosure, fiduciary responsibility, and the like").

Plaintiff's complaint is based on state law claims alleging that Reliance Standard improperly processed her claim for disability benefits. Focusing on the basis of her claims rather than the labels Plaintiff attaches to them, it is clear that all such claims are preempted by ERISA:

> [P]re-emption of state law claims by ERISA depends on the conduct to which such law is applied, not on the form or label of the law.

*Scott v. Gulf Oil Corp.*, 754 F.2d 1499, 1504 (9th Cir. 1985). Regardless of how the state causes of action are characterized, the courts have repeatedly given the preemptive provision of ERISA a sweeping scope. *See, e.g., Pilot Life, supra* (state common law breach of contract, fraud, and bad faith claims preempted by ERISA); *Metropolitan Life Insurance Co. v. Taylor*, 481 U.S. 58 (1987) (common law breach of contract and tort claims for mental anguish preempted by ERISA).

In *Pilot Life*, the Supreme Court held that when a plaintiff claims benefits under an employee benefit plan, ERISA provides the exclusive remedy. In *Pilot Life*, plaintiff brought a common law "tortious breach of contract" claim, described as arising under "the Mississippi law of bad faith," seeking compensatory and punitive damages allegedly resulting from an insurance company's denial of benefits under an insurance policy provided by his employer. *Pilot Life*, 481 U.S. at 51. The Supreme Court held that this claim, regardless of the name attached to it, was preempted because the state law at issue "related to" an employee benefit plan. *Accord, Metropolitan Life Insurance Co. v. Taylor*, 481 U.S. 58 (1987) (suit for breach of contract, reinstatement of benefits, and mental anguish preempted by ERISA). It is clear from the Supreme Court's holdings in *Pilot Life* and *Taylor* that plaintiff's state law causes of action "relate to" the ERISA Plan and are preempted by ERISA.

As the Supreme Court pointed out in *Pilot Life*, the most important consideration in determining whether a state law will be preempted is Congress' clear intent that the civil enforcement scheme of ERISA be exclusive, not whether the state laws at issue arguably "regulate insurance." 481 U.S. at 51-57. ERISA provides a comprehensive, and therefore exclusive, mechanism for employees to enforce their rights, bring claims, and monitor their fiduciaries, as well as specific remedies for parties that prevail. *Pilot Life*, 481 U.S. at 52-56. The comprehensive enforcement schemes set out in ERISA, 29 U.S.C. § 1132(a), "represent a careful balancing of the need for prompt and fair claims settlement procedures against the public interest in encouraging the formation of employee benefit plans." *Pilot Life*, 481 U.S. at 54.

The policy choices reflected in the inclusion of certain remedies and the exclusion of others under the federal scheme would be completely undermined if ERISA-plan participants and beneficiaries were free to obtain remedies under state law that Congress rejected in ERISA. *Accord*, *Metropolitan Life Insurance Co. v. Taylor*, 481 U.S. 58 (1987) (suit by beneficiary to recover benefits under an employee benefit plan/insurance policy "falls directly under [29 U.S.C. § 1132(a)(1)] of ERISA, which provides an exclusive federal cause of action for resolution of such disputes").

In the present case, Plaintiff is seeking benefits under an ERISA plan. ERISA provides her with a specific and express cause of action for recovering such benefits. 29 U.S.C. § 1132(a)(1)(B) (a participant may bring an action to recover benefits under the terms of his plan). This is Plaintiff's exclusive remedy. Plaintiff's state law claims are therefore preempted. *Cleghorn v. Blue Shield of California*, 408 F.3d 1222 (9th Cir. 2005) (state law claims arising out of a denial of ERISA plan benefits are preempted by ERISA); *Elliot v. Fortis Benefits Ins. Co*., 337 F.3d 1138 (9th Cir. 2003) (state law bad faith claims are preempted by ERISA); *Aetna Life Ins. Co. v. Bayona*,

223 F.3d 1030 (9th Cir. 2000) (state law claims for breach of contract, tortious breach of covenant of good faith and fair dealing, and fraud arising from denial of ERISA benefits, are preempted).

**CONCLUSION**

For each of these reasons, the LTD policy under which Plaintiff seeks benefits is part of an ERISA plan, is not exempt from ERISA as a governmental plan, and Plaintiff's state law claims are preempted by ERISA.

Respectfully submitted,

Dated: July 14, 2016 WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP

By: *_/s/Adrienne C. Publicover_*

ADRIENNE C. PUBLICOVER
LAURA E. FANNON
Attorneys for Defendant
RELIANCE STANDARD LIFE INSURANCE COMPANY