CHARLES B. PERKINS #126942
SUSAN D. PELMULDER (#234731)
ROSE PERKINS PELMULDER
A Professional Association
59 North Santa Cruz Avenue, Suite Q
Los Gatos, California 95030
(408) 399 – 4566 voice
(408) 399 – 6683 facsimile
cbperk@earthlink.net
sue@pelmulder.com

Attorneys for Plaintiff
ROXY HARIRI

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| ROXY HARIRI,<br><br>Plaintiff,<br><br>vs.<br><br>RELIANCE STANDARD LIFE INSURANCE COMPANY,<br><br>Defendant. | Case No. 5:15-cv-03054 EJD<br><br>Plaintiff's Notice Of Cross Motion And Cross Motion For Partial Summary Judgment; and Memorandum In Support of Plaintiff's Motion and In Opposition To Defendant's Motion For Partial Summary Judgment Re ERISA Preemption<br><br>Date: August 18, 2016<br>Time: 9:00 a.m.<br>Dept: 4<br>Honorable Edward Davila<br><br>Documents attached:<br>1. Responsive Separate Statement<br>2. Decl. of John Pivirotto w/ Exhibits 1-5;<br>3. Supp. Decl. of John Pivirotto w/ Exhibit 6;<br>4. Decl. of Ken Rosenblatt, w/ Exhibit 7;<br>5. Decl. of Max Zarzana w/ Exhibits 8, 9, 10;<br>6. 2nd Supp. Decl. of John Pivirotto, w/ Ex. 11;<br>7. 3rd Supp. Decl. of John Pivirotto;<br>8. Decl. of Susan D. Pelmulder w/ Exh. 12-16<br>9. Decl. of Charles B. Perkins w. Exh. 17-22;<br>10. Decl. of Roxy Hariri; and<br>11. Proposed Order Granting Plaintiff's Motion and Denying Defendant's Motion |

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD**:

**PLEASE TAKE NOTICE** that on August 18, 2016 at 9:00 a.m., or as soon thereafter as the Court may hear this matter in Courtroom 4 of the United States District Court for the Northern District of California, San Jose Division, located at 280 South First Street, San Jose, California, Plaintiff Roxy Hariri ("Hariri") will and hereby does cross move this Court, pursuant to Rule 56 of the Federal Rules of Civil Procedure, for an Order granting partial summary judgment in favor of Hariri against Defendant Reliance Standard Insurance Company ("Reliance Standard") on the grounds that the long term disability benefits funded by the Reliance Standard policy ("the Policy") is part of a governmental plan as defined in 29 U.S.C. § 1002(32) and is, therefore, exempt from ERISA under 29 U.S.C. § 1003(b)(1).

This Cross Motion is made pursuant to Federal Rule of Civil Procedure 56(b), on the grounds that Reliance Standard can raise no triable issue of material fact demonstrating that the policy is not part a governmental plan. Therefore, Hariri is entitled to partial summary judgment as a matter of law.

This Cross Motion is based upon this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the concurrently filed, Declarations of Roxy Hariri, Charles B. Perkins, Susan D. Pelmulder, John Pivirotto, and Max Zarzana, with attached Exhibits; any Reply Memorandum filed by Plaintiff; the pleadings and records on file in this action, and any oral argument and documentary evidence as may be presented at the time of the hearing on this Motion.

Dated: July 28, 2016

ROSE PERKINS PELMULDER

By: /s/Charles B. Perkins
CHARLES B. PERKINS
Attorneys for Plaintiff
ROXY HARIRI

## TABLE OF CONTENTS

**TABLE OF AUTHORITIES ........ iv**

**I. INTRODUCTION AND SUMMARY OF ARGUMENT ........ 1**

**II. STATEMENT OF ISSUES TO BE DECIDED ........ 2**

**III. STATEMENT OF FACTS ........ 2**

**IV. ARGUMENT ........ 8**

A. Legal Standards ........ 8

1. Standard of Review ........ 8

2. Government Employee Benefits Plans Are Exempt from ERISA ........ 8

3. The County's Employee Benefits Plan Is Exempt from ERISA to Prevent Federal Interference in the Relations between the County and Its Employees. ........ 9

4. Governmental Plans Can Be Established Or Maintained By Unions Representing Government Employees, And Such Plans Can Be Funded By The Government And Government Employees ........ 11

B. The LTD Plan Providing Benefits to County Employees Represented by the GAA is a Governmental Plan, Exempt from ERISA Preemption. ........ 12

1. The LTD Plan is One Component of the County's Employee Benefits Program, From Which It Should Not Be Separated ........ 12

a. Employee Benefit Plans Should be Evaluated as a Whole ........ 12

b. The Reliance Standard LTD Insurance Policy is Not the Plan. ........ 15

c. Neither the County, nor the GAA, Acted Like it Intended to Create an ERISA Plan. ........ 15

d. If the LTD Plan's Status as a Governmental Plan is to be Evaluated on a Specific Date, 9th Circuit Precedent Holds that Date to be the Date of Denial. ........ 16

2. The LTD Plan is Part of a Governmental Plan Because it was Established by the County. ........ 17

3. The LTD Plan is Part of a Governmental Plan Because it has Been Continuously Maintained by the County. ........ 18

4. The Cases Cited by Defendant Can be Distinguished, and Its Arguments do Not Fully Address the Facts ........ 20

**V. CONCLUSION ........ 22**

**TABLE OF AUTHORITIES**

CASES

*Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247-248 (1986) .................................................... 8
*Bassiri v. Xerox Corp.,* 463 F.3d 927, 930 (9th Cir. 2006) .......................................................... 11
*Bolton v. Construction Laborers Pension Trust Fund for So. Cal.,* 56 F.3d 1055-1058 (9th Cir. 1995) ............................................................................................... 16
*Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) ..................................................................... 8
*Cerone v. Reliance Standard Life Ins. Co.*, 9 F.Supp.3d 1145 (S.D. Ca. 2014) .............................16
*Cox v. Reliance Standard,* 2013 U.S. Dist. LEXIS 70601 (C.D. Cal. 2013) ............................14, 20
*du Mortier v. Massachusetts General Life Ins. Co.*, 805 F. Supp. 816, 820 (C.D. Cal. 1992)...13, 14
*Donovan v. Dillingham*, 688 F.2d 1367, 1371 (11th Cir. 1982) .................................................... 15
*Feinstein v. Lewis*, 477 F.Supp 1256, (SDNY 1979) ......................................................... 9, 10, 11
*Gaylor v. John Hancock Mutual Life Ins. Co.*, 112, F.3d 460 (10th Cir. 1997) ....................... 14, 20
*Grosz-Salomon v. Paul Revere*, 237 F.3d 1154 (9th Cir. 2001) ..................................................... 16
*Gualandi v. Adams*, 385 F.3rd 326 (2nd Cir. 2004) ......................................................................... 12
*Imada v. City of Hercules*, 138 F.3d 1294, 1297 (9th Cir. 1998) .................................................. 11
*Kanne v. Connecticut General Life Ins. Co.*, 867 F.2d 489 (9th Cir. 1989) ............................ 13, 15
*Menhorn v. Firestone Tire & Rubber Co.*, 738 F.3d 1496, 1501 (9th Cir. 1984) .......................... 16
*Peterson v. American Life & Health Ins. Co*, 48 F.3d 404 (9th Cir. 1995) ........................ 12, 13, 14
*Postma v. Paul Revere Life Ins. Co.*, 223 F.3d 533, 538 (7th Cir. 2000) ....................................... 14
*Rose v. Long Island Railroad Pension Plan*, 828 F.2d 910 (2nd Cir., 1987) .............................. 9, 10
*Roy v. Teacher's Insurance & Annuity Association*, 878 F.2d 47, 49 (2nd Cir. 1989) ................... 17
*Sarraf v. Standard Ins. Co.,* 102 F.3rd 991 (9th Cir. 1996) ........................................................... 21
*Scott v. Gulf Oil Corp.* 754 F.2d 1499, 1503 (9th Cir. 1985) ...................................................... 13
*Shaw v. Delta Air Lines*, 463 U.S. 85, 103 S.CT. 2890, 77 L.Ed.2d 490 (1983) ..................... 13, 20
*Silvera v. Mutual Life Ins. Co. of N.Y.*, 884 F.2d 423, 425-426 (9th Cir. 1989) ........... 10, 17, 19, 20
*Wilson v. Provident Life & Accident Ins. Co.*, 101 F.Supp.3rd 1038 (W.D.Wa., 2015) ............20, 21

STATUTES

29 U.S.C. §§1001 et seq., Employee Retirement Income Security Act of 1974, as amended ..... 2, 8
29 U.S.C. § 1002(32) .......... 1, 2, 8, 17
29 U.S.C. § 1003(b)(1) .......... 1, 2 , 8, 13
29 U.S.C. § 1003(b)(3) .......... 13
California Insurance Code §35 .......... 19, 20
California Insurance Code §1622 .......... 19
California Insurance Code §10110.6 .......... 16

REGULATIONS

29 C.F.R. Section 2510.3-3(b) .......... 12
29 C.F.R. Section 2510.3-3(c)(1)-(2) .......... 12

RULES

Fed.R.Civ.P., Rule 56(c) .......... 8
Fed.R.Civ.P., Rule 56(e) .......... 8

AGENCY OPINIONS

Department of Labor Opinion 86-23A, 1986 ERISA Lexis 6 .......... 11
Department of Labor Opinion 99-15A, 1999 ERISA Lexis 20 .......... 11, 20

## MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION AND SUMMARY OF ARGUMENT

Roxy Hariri was a Deputy District Attorney for the County of Santa Clara (the County). Her employee benefit plan from the County included coverage under a group long term disability policy issued by Reliance Standard Life Insurance Company (Reliance Standard). She became disabled in December 2012 and Reliance Standard paid benefits. She attempted to return to work in November 2013 but became disabled again in January 2014. Reliance Standard denied her claim in April 2014. She appealed, and Reliance Standard denied the appeal. On July 1, 2015, she filed a Complaint asserting causes of action for breach of contract and breach of the covenant of good faith and fair dealing under California law.

Reliance Standard has moved for partial summary judgment contending that Plaintiff's California Law claims are preempted by ERISA.

Plaintiff opposes Defendant's motion and cross-moves for partial summary judgment on the grounds that her claims against Reliance Standard are exempt from ERISA preemption under 29 U.S.C. § 1003(b)(1) because the insurance policy is part of a governmental plan as defined in 29 U.S.C. § 1002(32). The policy behind the governmental plan exemption is federalism; the federal government should not interfere with the relations between governmental employers and their employees. Insurance policies issued to unions can be part of governmental plans. The Reliance Standard policy is exempt from ERISA as a governmental plan because it is part of the overall employee benefit plan established for the County's employees who are members of the Santa Clara County Governmental Attorney's Association (the "GAA"). Supreme Court authority holds that benefit plans should not be split into components with different law applying to different components. Employee benefit plans must be evaluated as a whole. The long term disability plan is a governmental plan because it was established by the County when it purchased an insurance policy and paid 100% of the premium. The long term disability plan is a governmental plan because it has been maintained by the County. The County has continuously administered the plan. After initially paying 100% of the premium, the County has paid a substantial portion of the premium, except for a short period when the union made concessions as part of the collective

bargaining process. The collective bargaining process continued, the County resumed paying most of the premium, and currently pays 100% of the premium. Although the Reliance Standard policy was issued to the GAA, the County reviewed it and asked for changes. The actual policy language mostly refers to the County of Santa Clara and the policy covers only County employees. During Plaintiff's claim, Reliance Standard corresponded with the County as though it was the policy holder.

## II. STATEMENT OF ISSUES TO BE DECIDED

As Defendant has stated, the main issue to be decided is:

1. Whether Plaintiff's claims as set forth in the First Amended Complaint are preempted by the Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. §§ 1001 et seq.

To answer this question, the following issue must also be decided:

2. Is the long term disability plan covering the attorneys employed by the County and represented by the GAA a governmental plan as defined under 29 U.S.C. §1002(32)?

If the employee benefit plan at issue is a governmental plan, then Plaintiff's claims are exempt from ERISA preemption under 29 U.S.C. §1003(b)(1).

## III. STATEMENT OF FACTS

Plaintiff Roxy Hariri ("Hariri") began working for the County of Santa Clara ("the County") as a Deputy District Attorney as September 17, 2001. Responsive Separate Statement ("RSS") 1. The County is a political subdivision of the State of California. RSS 65. Plaintiff was a member of the Santa Clara County Government Attorneys' Association (the "GAA"). RSS 2. The County recognized the GAA as the exclusive bargaining representative for all classified and unclassified attorneys in coded classifications within the GAA bargaining unit. RSS 3. On December 19, 2012, Hariri ceased working because of a claimed disability. RSS 4.

John Pivirotto is a life insurance agent who has been responsible for obtaining long term disability insurance coverage for all of the attorneys who are employed by the County and represented by the GAA since about 1992 . Pivirotto Decl. ¶2. In January, 1992, the County

purchased and paid 100% of the premium for a group long term disability insurance policy to cover the attorneys represented by the GAA. RSS 45. The County's action in adding the LTD benefit to the GAA attorney's benefit package was the result of negotiations between the GAA and the County. RSS 46. Since the initial purchase of long term disability ("LTD") insurance by the County in 1992, there has been continuous long term disability coverage in place for the attorneys employed by the County and represented by the GAA. RSS 47.

As of October 10, 1997, the County and the GAA entered into an agreement in which the County agreed to make payments at the rate of up to $.45 per $100 of covered payroll to pay premium for the long term disability coverage. RSS 48. As the premium rate per $100 of covered payroll increased, the County employees represented by the GAA would pay the County via payroll deductions the amount necessary to make up the difference between the amount of premium contributed by the County and the total premium due, and the County continued to make the full premium payments. RSS 49.

As of September 5, 2011, the County and the GAA entered a Memorandum of Agreement (also referred to as a "Memorandum of Understanding" ("2011 MOU")), covering the terms and conditions of employment of GAA members for the period September 5, 2011 – September 1, 2013. RSS 7. Among other things, the 2011 MOU provided as follows: "Effective September 5, 2011, the County will stop payments of up to $.045/$100 of covered salary pursuant to the Long Term Disability (LTD) insurance side letter between the County and the GAA signed October 10, 1997. Effective September 5, 2011, employees shall pay all premium costs for LTD insurance coverage (currently through the Standard Insurance Company) which shall continue to be deducted from employees' paychecks. Effective no later than March 4, 2012, the County will stop administering the LTD plan as the Employer Plan Sponsor. At least sixty calendar days prior to March 4, 2012, the County and GAA shall meet and confer regarding other options for administration of an LTD plan should GAA wish to continue LTD plan coverage specific for its members." RSS 8.

The 2011 MOU, as well as the 2014 and 2015 Memorandum of Agreements cover agreements between the GAA and County concerning other employment benefits, including

medical insurance, dental insurance, vision insurance and life insurance, as well as the LTD benefit. Response to RSS 8, RSS 43.

Max Zarzana is the President of the GAA, and has been since 2008. Zarzana Decl. ¶2. Mr. Zarzana testifies that the GAA made the concessions to the County on LTD coverage in the 2011 MOU in consideration of the County's difficult financial position at that time, and with the expectation that the issue would be revisited in future negotiations as the County's financial position improved. RSS 50.

Although a County employee (Peter Ng) sent an unsigned letter on August 22, 2011 purporting to cancel the existing LTD insurance coverage, the policy was not cancelled and the LTD coverage remained in force. Response to RSS 9.

After the 2011 MOU was entered, the GAA and County officials began exchanging emails over future handling of the LTD plan. See RSS 11-16, which cover emails from October 3 to November 8, 2011. The email string continued beyond the emails quoted by Defendant on November 9, 2011 when Kevin Smith of the GAA wrote to the County with questions about future administration of the plan. RSS 51. On November 18, 2011, Mr. Smith emailed to the County some more questions, as follows (RSS 52):

1. Is the County going to continue to start, stop and re-start payroll deductions for employees enrolled in the GAA plan?
2. Is the County going continue to calculate the integration of sick leave & Vacation balances with the LTD plan?
3. Is the County going to enter the integrated salary amount in the County's HR/Payroll system?
4. Is the County going to provide/complete the employer portion of the claims form from Standard?

The email string continued on November 18, 2011, when Peter Ng of the County responded to Mr. Smith's email by asking whether continuing the "status quo for a period longer will not be problematic for your group." RSS 53. Mr. Smith responded "on behalf of GAA, keeping the status quo is fine." RSS 54. Susan Ware of the County Counsel's Attorney's Association agreed with Mr. Smith. Perkins Decl. ¶ 6 & Ex. 19. Following the November 18, 2011

correspondence about keeping the status quo in administering the LTD plan, there was no further correspondence about changing the administration of the LTD plan, and the County continued to administer it as it did before the 2011 MOU. RSS 55.

Effective June 25, 2012, Reliance Standard issued a group LTD policy which listed the GAA as the policy holder. RSS 24. All persons covered under the LTD plan are County employees. RSS 26. The LTD Policy identifies the "General Group" as "the County of Santa Clara and employees of any subsidiary, division or affiliates named in the Schedule of Benefits page." Ex. A 016. In addition to covering employees represented by the GAA, the Policy also covered County employees represented by the County Counsel Attorneys Association (CCAA). Response to RSS 26. The CCAA is a bargaining unit for employees of the County who work as attorneys or law clerks in the County Counsel Office. Pelmulder Decl. ¶ 4, Ex 13. The premium cost was $.663 per $100 of covered payroll for the 2012 Reliance Standard LTD policy. RSS 68.

When putting together the insurance contract, Reliance Standard uses the name given on the preliminary application as the legal name for the policy holder, but treated the County as the policyholder in the language of the policy terms, Certificate of Insurance, and claims communications. RSS 60.

Reliance Standard does not make a determination of whether a policy is subject to ERISA or not when putting the contract together, and there is no reference to ERISA in the policy it issued to the GAA. RSS 62. Neither the County nor the GAA have ever filed an IRS 5500 form, which ERISA plans are required to file. Id.

The Certificate of Insurance booklet contains all of the policy provisions that pertain specifically to an employee, as well as the ERISA statement of rights and Reliance Standard's claims procedures. RSS 28, RSS 29. The Certificate's "ERISA statement of rights" is equivocal, "you <u>may be</u> entitled to certain rights and protections <u>in the event that</u> the Employee Retirement Income Security Act of 1974 (ERISA) applies." (emphasis added) Response to RSS 29. Reliance Standard automatically includes such language in <u>all</u> the Certificates it issues. RSS 62. The Certificate of Insurance booklets were delivered as follows: 100 to the County HR department, 70 to John Pivirotto, and 30 to the GAA. RSS 59. The County also posted the Policy Certificates on

its website. RSS 27. The Certificate of Insurance booklet (Ex. D), while having some references to the GAA, frequently refers to the County of Santa Clara, stating, for example, "should the County of Santa Clara choose not to continue the insured's coverage during a Family Medical Leave of Absence. . ." Response to RSS 27.

On May 8 and 9, 2012, before the Reliance Standard LTD policy was issued, emails were exchanged between the GAA and the County about the policy. RSS 17-23. On May 10, 2012, the email string continued beyond what was cited by Defendant when John Pivirotto provided specimen contracts to Peter Ng at the County for his review. RSS 56.

When John Pivirotto received the "preliminary final policies" from Reliance Standard on July 20, 2012, he sent them to Peter Ng at the County and asked him to reply with any discrepancies he saw. RSS 57.

Mr. Ng responded to Mr. Pivirotto on July 25, 2011 stating, in part, as follows:

> Here are the discrepancies or suggested changes that I see: (1) eligible Classes: should read as "County Counsel Attorney Association" (2) premium Due Dates: should read as. . .(3) regarding Administrative Agreement, should read as:. . . (Emphasis added) RSS 58.

When Ms. Hariri became disabled, she obtained her Reliance Standard claim forms from the County's Human Relations Department. RSS 63. The people she worked with at the County's HR Department were Elizabeth Lopez and Sylvia Hernandez. Id. Whenever she had any questions about her LTD coverage, Ms. Hariri asked the County HR Department, not the GAA. Id.

When Ms. Hariri was preparing to try to return to work in October and November of 2013, there were multiple emails between the claims examiner at Reliance Standard (Constance Esposito) and Sylvia Hernandez in Employee Services at the County. RSS 64. On October 25, 2013, Ms. Esposito wrote an "email to PH" to Ms. Hernandez asking for a copy of the doctor's Return to Work note for Ms. Hariri.[1] Id. Ms. Hernandez replied with a copy of Ms. Hariri's Release to Return to Work. Id. The claim log dated November 5, 2013, records a phone call from Ms. Esposito at Reliance Standard to Sylvia Hernandez "@PH" in which time and payroll records were discussed. Id.

[1] "PH" is a standard abbreviation for "policy holder."

Ms. Hariri's attempt to return to work was not successful and she requested her LTD benefits be reinstated as of January 22, 2014. Response to RSS 33. RSS 62. Upon learning this, Reliance Standard sent an "email to PH" to Elizabeth Lopez at the County and requested a copy of Ms. Hariri's doctor's note. Id.

On December 10, 2013, the County ratified a new MOA with the CCAA for the period December 9, 2013 through July 19, 2015. RSS 66. The CCAA's 2013 MOA included an agreement by the County to pay up to $0.45/$100 of covered salary per employee, per month, for the cost of the LTD Plan, and that the County shall refund to each employee the dollar value s/he contributed to the LTD plan up to $.45/100 of covered salary per month from June 24, 2013 through December 8, 2013. Id. The agreement also memorializes that; "The County shall continue to administer the short term disability and/or long term disability plans on behalf of CCAA at no cost to CCAA for the County to administer the plan." Id. (emphasis added)

As of February 3, 2014, the County and the GAA entered into a new Memorandum of Agreement (2014 MOA). RSS 67. Paragraph 20.7 of the February 3, 2014 MOA required the County to resume payments of up to $0.45 per $100 of covered salary for the LTD plan, and to rebate to employees the premium costs for the LTD insurance coverage made by the employees during the period between June 24, 2013 and February 2, 2014. Id.

At the time Reliance Standard denied Ms. Hariri's claim on April 8, 2014, the County was paying $0.45 per $100 of premium. RSS 67. The language in Reliance Standard's April 8, 2014 letter denying her claim referencing ERISA is prefaced: "in the event that your claim is subject to the Employee Retirement Income Security Act of 1974. . ." (emphasis, added.) Response to RSS 40.

Plaintiff appealed from the denial of her claim. RSS 41. The language in Reliance Standard's May 19, 2015 letter denying Plaintiff's appeal which references ERISA is prefaced by the following language: "In the event that her claim is subject to the Employee Retirement Income Security Act of 1974. . ." (emphasis added.) Response to RSS 42.

On December 7, 2015, the County and the GAA entered into a new Memorandum of Agreement (2015 MOA). RSS 67. In the 2015 MOA, the County agreed to pay 100% of the

premium for the LTD plan from December 21, 2015 to December 17, 2017, when it will revert to paying $0.45 per $100 of covered salary for the LTD plan. RSS 67.

## IV. ARGUMENT

### A. <u>Legal Standards</u>

#### 1. Standard of Review

A Motion for Summary Judgment should be granted if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P., Rule 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-248 (1986). Material facts are those that might affect the outcome of the case under the governing law. (*Id*. at 248) The moving party bears the initial burden of informing the court of the basis for the motion and identifying portions of the pleadings or affidavits that demonstrate the absence of a triable issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party meets its initial burden, the burden shifts to the non-moving party to present specific facts showing that there is a genuine issue of material fact for trial. Fed.R.Civ.P., Rule 56(e); *Celotex Corp.,* 477 U.S. at 324.

#### 2. Government Employee Benefits Plans Are Exempt from ERISA

The Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1001 et. seq. applies to all employee benefit plans, with certain exceptions set forth in 29 U.S.C. § 1003(b) which provides that: "The provisions of this subchapter shall not apply to any employee benefit plan if – (1) such plan is a governmental plan (as defined in § 1002(32) of this title); …"

Section 32 of 29 U.S.C. § 1002 states:

> The term "governmental plan" means a plan established or maintained for its employees by the Government of the United States, or the government of any State or political subdivision thereof, or by any agency or instrumentality of any of foregoing.

Regardless of whether this Court considers the plan at issue to be the complete benefits package negotiated by the County with its various employee groups, the benefit package negotiated between the GAA and the County, or even just the plan to provide LTD benefits to the GAA and CCAA, the plan at issue is a governmental plan exempt from ERISA.

**3. The County's Employee Benefits Plan Is Exempt from ERISA to Prevent Federal Interference in the Relations between the County and Its Employees.**

This nation is founded on a division of power between the federal government and the several states. Finding the LTD benefits subject to federal regulation under ERISA would interfere with the division of power.

In *Feinstein v. Lewis*, 477 F.Supp 1256, (SDNY 1979), affirmed 622 F2d. 573 (2d Cir. 1980) , the court stated "plans established by state and local government are generally excluded from coverage under ERISA because of concerns of federalism. 477 F.Supp. at 1261. The Court considered an extensive amount of legislative history concerning the governmental plan exception and concluded: "These discussions clearly demonstrate that Congress, in exempting governmental plans, was concerned more with the governmental nature of public employees and public employers than with the details of how a plan was established or maintained." *Id.* at 1262.

Since at least 1992, the GAA has been the sole negotiating body for the district attorneys employed by Santa Clara County, whether they are members of the GAA or not. The GAA negotiates a contract to cover salary, benefits and working conditions. Similarly, the CCAA has been the representative for the attorneys and law clerks in the County Counsel office. While LTD benefits are voluntary for many employees (Defendant's Ex. D 001), once the GAA negotiated for LTD coverage, it became mandatory for all employees represented by the GAA. CCAA similarly negotiated for LTD coverage and it became mandatory for all employees it represents. Regardless of how the premium is split between the County and the employees, which insurer issued the policy funding the benefits, or who the policyholder is, the "participants" in the mandatory LTD plan are the County employees represented by the GAA or CCAA in collective bargaining.

In *Rose v. Long Island Railroad Pension Plan*, 828 F.2$^{d}$ 910 (2nd Cir., 1987), the Court of Appeals discussed legislative history and cited "principals of federalism" as the reason for the governmental plan exemption. 810 F.2d at 914. The *Rose* Court also cited the *Feinstein* case; "purpose of ERISA governmental exemption was to 'refrain from interfering with the manner in which state and local governments operate employee benefit systems.'" 477 F.Supp. 1256, cited at

828 F.2d at 914. The *Rose* Court held that the Long Island Railroad was an agency of the state, and therefore the plan was exempt from ERISA.

In *Silvera v. Mutual Life Ins. Co. of N.Y.*, 884 F.2d 423, 425-426 (9th Cir. 1989), the Court cited *Rose* and *Feinstein* for the proposition that, in enacting the governmental exception to ERISA, Congress was "concerned more with the governmental nature of public employees and public employers than with the details of how a plan was established or maintained" (quoting *Feinstein*, 477 F. Supp at 1262).

Here, the County of Santa Clara is a local government, and the benefits system it operates should be free from interference by the federal government. In 2011, during a particularly difficult financial period, the union representatives were asked to make concessions. The GAA and CCAA both agreed that the County would stop contributing to premium payments for the LTD policy for the contract period. The CCAA acknowledged that the County would terminate the insurance policy funding the LTD benefits if and when it was practical, but the GAA negotiated an agreement that it could keep the LTD plan if it wanted. The GAA voted to keep LTD benefits, which became part of the agreement between the County and the GAA, and mandatory LTD coverage remained part of the employee benefits plan for both the GAA and CCAA.

Two years later, the County's financial condition improved. It again agreed to contribute to the LTD premium and it rebated up to $.45/100 of covered salary back to June 24, 2013. Currently, it contributes 100% of the premium cost.

All of the public policy considerations lead to the conclusion that the County must be able to negotiate temporary financial concessions with its employees when the need arises, without the federal government stepping in to regulate a small piece of its benefits package. Based on this factor alone, the LTD benefits for the GAA and CCAA part of a governmental plan exempt from ERISA. but the same result is reached looking into the workings of the LTD plan and definition of a governmental plan.

### 4. Governmental Plans Can Be Established Or Maintained By Unions Representing Government Employees, And Such Plans Can Be Funded By The Government And Government Employees

In the Department of Labor Opinion, Opinion 86-23A, 1986 ERISA Lexis 6 (Ex. 21), the U.S. Department of Labor stated its position that governmental plans include "plans established or maintained pursuant to a collective bargaining agreement between a governmental entity and a labor union where such plans are funded by and cover only employees of governmental entities." In the plan at issue, the county paid the premium for its employees and the employees paid for coverage of their dependents. The DOL found that this was a governmental plan.

Although DOL opinion letters are not binding, they are entitled to a high degree of deference. See *Bassiri v. Xerox Corp.,* 463 F.3d 927, 930 (9th Cir. 2006); *Imada v. City of Hercules*, 138 F.3d 1294, 1297 (9th Cir. 1998).

In *Feinstein,* the Court held that employee welfare plan trusts established pursuant to a collective bargaining agreement between a union and associated townships and school districts constituted a governmental plan.

In the Department of Labor Opinion 99-15A,1999 ERISA Lexis 20 (Ex. 22), the DOL responded to the request of a teachers' union to render an opinion about whether the union's benefit plan was a governmental plan excluded from ERISA. The plan had previously been treated as an ERISA plan. The school district paid the bulk of the funds used for benefits, but employees paid some. All of the employees were governmental employees except for one who was an employee of the union. The Department of Labor found that the union benefit plan was a governmental plan and exempt from ERISA, stating the rule as follows:

> You represent that, until recently, the Fund had taken the position generally that it was covered by Title I of ERISA and has submitted annual reports pursuant to ERISA Title I filing requirements, but the Fund now asserts that it is not covered by Title I because it constitutes a governmental plan within the meaning of ERISA § 3(32).
>
> Section 3(32) of ERISA defines a "government plan" as "a plan established and maintained for its employees by the Government of the United States, by the government of any State or political subdivision thereof, or by any agency or instrumentality of any of the foregoing." The term "governmental plan" also

> includes a plan administered by an "employee organization," within the meaning of ERISA § 3(4), that provides benefits exclusively to employees of a political subdivision, agency, or instrumentality of local government who are also the only members of the employee organization, provided that the plan is funded exclusively by the government and by the government's employees who are members of the sponsoring employee organization. n8
>
> See, e.g., ERISA Opinions 86-10A and 85-21A. As defined in ERISA § 3(4), the term "employee organization," in pertinent part, includes "any labor union or any organization of any kind, or any agency or employee representation committee, association, group, or plan in which employees participate and which exists for the purpose, in whole or in part, of dealing with employers concerning an employee benefit plan, or other matters incidental to employment relationships . . . ." (emphasis added)

In *Gualandi v. Adams*, 385 F.3rd 326 (2nd Cir. 2004) the Court held that when a union received money from a school district and used those funds to set up a benefit plan, the plan had been established by the government and was exempt from ERISA, even though the government had no further involvement. 385 F.3d at 243-244.

B. **The LTD Plan Providing Benefits to County Employees Represented by the GAA is a Governmental Plan, Exempt from ERISA Preemption.**

**1. The LTD Plan is One component of the County's Employee Benefits program, From Which it Should Not be Separated**

**a. Employee Benefit Plans Should be Evaluated as a Whole**

The 9th Circuit has held that an employer's benefit program should be evaluated as a whole to determine if a plan is covered by ERISA. In *Peterson v. American Life & Health Ins. Co*, 48 F.3d 404 (9th Cir. 1995), a short-term health insurance policy only covered a partner at the time he required bypass surgery. Coverage for the surgery was denied as excluded under the terms of the policy. ERISA regulations provide that a plan with no employee participating does not constitute an ERISA employee benefit plan (29 C.F.R. Section 2510.3-3(b)), and a partner or business owner cannot be an "employee" for purposes of determining existence of an ERISA plan (29 C.F.R. Section 2510.3-3(c)(1)-(2).). Rather than find the American policy subject to a different regulation

and law than the insurance covering the employee and the other partner, the Ninth Circuit Court of Appeals concluded "that the American policy was just one component of Quivira's employee benefit program and that the program, taken as a whole, constitutes an ERISA plan" *Peterson v. American Life & Health Ins. Co*., 48 F.3d, at 407. Employee benefit plans should be evaluated based on all the facts and circumstances, form the point of view of a reasonable person. *Kanne v. Connecticut General Life Ins. Co.*, 867 F.2d 489, 492 (9th Cir. 1989).

The Supreme Court addressed whether state laws should be pre-empted by ERISA for one part of a benefit plan, while another part is exempt from ERISA, in *Shaw v. Delta Air Lines*, 463 U.S. 85, 103 S.CT. 2890, 77 L.Ed.2d 490 (1983). Providing the disability benefits in a separate plan would be excepted under 29 U.S.C. § 1003(b)3. The issue in *Shaw* was whether a state law requiring employers provide particular disability benefits is pre-empted when the employer includes disability benefits in a multi-benefit plan. The Court noted that it is impractical "to permit mutually exclusive pockets of federal and state jurisdiction within a plan." *Shaw*, 463 U.S. at 107-108. The Supreme Court held that unless the supplemental plan was separately administered, it was part of the ERISA plan. *Id.*

The exception to ERISA for a governmental plan is in subsection 1 of Section 1003(b), while the exception for complying with disability insurance laws is in subsection 3 of the same section. Section 1003(b) "excludes 'plans,' not portions of plans, from ERISA coverage." *Shaw v. Delta Air Lines*, 463 U.S. 85, 107 (1983). The same reasoning applies here. All of the benefits negotiated for between the County and GAA are part of one plan or program, even if they are funded by various insurance policies. It would be impractical and inefficient to subject the LTD benefits to ERISA, while the remainder of the County's benefits plan is exempt under Section 1003(b)(1).

It is possible for a government to establish multiple plans and opt into a non-exempt plan. Here, neither the County nor the GAA has never filed an IRS 5500 form as required by ERISA regulations. Although failure to comply with ERISA's reporting and disclosure requirements does not remove a plan from ERISA coverage, *Scott v. Gulf Oil Corp.* 754 F.2d 1499, 1503 (9th Cir. 1985), "it is nonetheless relevant to who had established and was administering the plan." *du*

*Mortier v. Massachusetts General Life Ins. Co*., 805 F. Supp. 816, 820 (C.D. Cal. 1992). There is no evidence the County or the GAA intended to create separate plans for regulatory purposes.

There have been other attempts to consider parts of a plan separate. In *Gaylor v. John Hancock Mutual Life Ins. Co.*, 112, F.3d 460 (10th Cir. 1997) the plaintiff purchased and paid for an optional disability coverage with no contribution from her employer, but the employer contributed to another plan for accidental death and dismemberment. The 10th Circuit evaluated the plan as a whole and held that the plaintiff's attempts to sever her optional disability coverage from the rest of the benefits "cannot be done because the [optional] coverage was a feature of the Plan, notwithstanding the fact that the cost of such coverage had to be contributed by the employee." *Gaylor*, 112 F.3d at 463. *See*, also, *Postma v. Paul Revere Life Ins. Co.*, 223 F.3d 533, 538 (7th Cir. 2000) ("for purposes of determining whether a benefit plan is subject to ERISA, its various aspects ought not to be unbundled." ).

The above authorities, and others, were considered in *Cox v. Reliance Standard,* 2013 U.S. Dist. LEXIS 70601 (C.D. Cal. 2013). In that case, Reliance Standard argued that a supplemental life insurance policy that was completely voluntary and entirely paid for by the employee was subject to ERISA as part of the ERISA plan established by the employer. The Court held that the supplemental plan was part of the underlying ERISA plan. *Id*., at *14.

Here, the Memos of Understanding and Agreement entered into between the County and the GAA include benefits that were provided to its employees, including medical insurance, dental insurance, vision insurance and life insurance, as well as long term disability insurance. These agreements constitute the benefits plan for the employees represented by the GAA. Although the 2011 MOU contemplated the GAA assuming the administrative duties for the LTD component and the employees paying for it, the fact is that the County continued to administer the LTD plan and later resumed contributing funds to it. The long term disability plan is one component of the County's Employee Benefit Plan which, taken as a whole, constitutes a governmental plan. *Peterson v. American Life & Health Ins. Co.*, 48 F.3d 404, 407 (9th Cir. 1995).

**b. The Reliance Standard LTD Insurance Policy is Not the Plan.**

As noted in Defendant's brief, one of the elements of an ERISA plan is "a plan, fund or program." *Kanne v. Connecticut General Life Ins. Co.*, 867 F.2d 489 (9th Cir. 1989); *Donovan v. Dillingham*, 688 F.2d 1367, 1371 (11th Cir. 1982). An insurance policy, "does not by itself constitute an ERISA plan (although it may be evidence of the existence of an ERISA plan)." *Kanne*, 867 F.2d at 492.

One of the elements necessary to have a plan, fund or program is "a source of financing." *Donovan, supra*, 688 F.2d at 1372. Defendant's brief glosses over this element by saying that the source of funding is the payment of premiums. (Defendant's Motion, page 8, line 20). The payment of premiums does not identify the source of financing. Therefore, the policy in itself is not sufficient to meet the definition of an ERISA plan. The formal and informal agreements between the GAA and the County also constitute part of the plan, as they identify who finances the plan and how the plan is administered.

**c. Neither the County, nor the GAA, Acted Like it Intended to Create an ERISA Plan.**

Whether the parties intended to create a non-exempt plan is relevant to determining whether an ERISA plan exists. Here, the evidence all supports the conclusion that no one intended to create an LTD plan subject to ERISA to cover the County employees represented by the GAA. There is no provision in the policy stating a choice of law or intent to be regulated by ERISA. The only references to ERISA in the booklet provided to employees are equivocal and included in all of Reliance Standard's Certificate of Insurance booklets. Furthermore, ERISA requires all employees benefit plans to file IRS Form 5500. Neither the County nor the GAA has ever filed an IRS Form 5500. Plan sponsors cannot opt out of ERISA coverage, but they can opt in. Neither the County, nor the GAA opted into ERISA.

**d. If the LTD Plan's Status as a Governmental Plan is to be Evaluated on a Specific Date, 9th Circuit Precedent Holds that Date to be the Date of Denial.**

In *Grosz-Salomon v. Paul Revere*, 237 F.3d 1154 (9th Cir. 2001), there was an issue about what date should be used to determine the applicable plan terms. The choices were the date of disability or the date of the denial. The Court held that because ERISA plans can be amended (unless there is a clear statement that they cannot be changed) the terms of the plan must be decided as of the date of denial. 237 F.3d at 1159-60. The *Grosz-Salomon* Court cited in accord both *Bolton v. Construction Laborers Pension Trust Fund for So. Cal.,* 56 F.3d 1055-1058 (9th Cir. 1995), holding that under ERISA, a widow's cause of action for spousal benefits accrued when she was denied those benefits, and *Menhorn v. Firestone Tire & Rubber Co.*, 738 F.3d 1496, 1501 (9th Cir. 1984) (Pensioner's ERISA cause of action arose when he applied for and was denied benefits).

In *Cerone v. Reliance Standard Life Ins. Co.*, 9 F.Supp.3d 1145 (S.D. Ca. 2014), the issue was whether Section 10110.6 of the California Insurance Code should be applied to require the de novo review of an ERISA claim. The Court held that the terms of the plan must be determined as of the date the claim is denied.

This brief has already discussed the fact that the Reliance Standard policy is not the same as the LTD plan, and the fact that, while the Reliance Standard policy was in force, the terms of the plan changed when the 2014 MOA required the County to start paying over two-thirds of the premium, and to refund premium paid by the County employees back to June 24, 2013. Thus, when Ms. Hariri's claim was denied on April 8, 2014, the County was maintaining the plan by paying over two-thirds of the premium, as well as undertaking all of the administrative activities previously discussed.

Defendant appears to argue that the Court should use Ms. Hariri's date of disability of December 19, 2012 for all purposes in evaluating this claim. However, the Reliance Standard Policy is not the long term disability plan. The long term disability plan, taken as a whole, also includes the formal and informal agreements between the GAA and the County. As discussed above, under federal law, the date of denial is what matters because plans can be changed, and that is what occurred in this case when the County agreed in the 2014 MOA to contribute over two

thirds of the premium for the Reliance Standard Policy. Therefore, if the Court finds that the status of the plan must be evaluated as of a specific date, rather than as a whole, 9th Circuit precedent holds that the evaluation date is the date of denial.

**2. The LTD Plan is Part of a Governmental Plan Because it was Established by the County.**

The long term disability benefit plan added to the County's benefit package for its attorneys represented by the GAA in 1992 was a governmental plan. The County purchased an insurance policy to fund the LTD benefits at the request of the GAA through collective bargaining and paid 100% of the premiums. Under *Silvera v. Mutual Life Ins. Co. of N.Y.*, 884 F.2d 423 (9th Cir. 1989), and the other authorities discussed above, the County's payment of 100% of the premium is conclusive proof that the policy purchased in 1992 was part of a governmental plan.

In *Silvera v. Mutual Life Ins. Co. of NY*, 884 F2d. 423 (9th Cir. 1989), an insurer argued that the governmental exception did not apply to an insurance policy issued to a city because the insurer administered the insurance policy, rather than the city. The Court of Appeals rejected the insurer's position, noting that all employees of the city were covered, the city paid premiums, presumably from tax money, and other case law supported that an insurance policy issued to a city was evidence of the establishment and maintenance of a governmental plan.

It is well settled that the definition of what constitutes a governmental plan (29 U.S.C. § 1002(32) is disjunctive; the plan is governmental if it is either established or maintained by a governmental entity. *Roy v. Teacher's Insurance & Annuity Association*, 878 F.2d 47, 49 (2nd Cir. 1989). The plan at issue in *Roy* was an optional retirement program set up by the State University of New York, a governmental agency. The Court held:

> We think it clear that the congressional goal of preserving federalism requires that when a pension plan has been established by a governmental entity for its employees and the governmental entity's status as employer has not changed, the plan must be exempt from ERISA as a governmental plan. 878 F.2d at 50.

In the present case, because the County established the long term disability plan for its employees represented by the GAA, and because the employer and beneficiaries have not changed,

the insurance policy at issue is part of the governmental plan established by the County in 1992, notwithstanding the different versions of the plan that have existed over the years.

### 3. The LTD Plan is Part of a Governmental Plan Because it has Been Continuously Maintained by the County.

Even if the LTD plan was considered re-established in 2012 when the Reliance Standard policy was written, the County maintained the LTD plan. This is further support for finding the LTD plan exempt from ERISA. Since establishing the long term disability plan in 1992, the County has maintained it by the following actions:

- Computing the premium due, which is based on the integrated salary amount in the County's HR/payroll system;
- Making the premium payments by wire transfer;
- Calculating the integration of sick leave and vacation balances into the LTD plan;
- Managing payroll deductions when employees contributed to policy premium;
- Calculating and rebating employee contributions to the policy premium;
- Providing claim forms, completing the employer portion of the claims forms, and assisting claimants;
- Reviewing the Reliance Standard Policy and asking for changes;
- Receiving and distributing most of the Reliance Standard Policy Certificates through its HR Department; and
- Having regular correspondence with the insurer over claims issues and providing information to the insurer.

In addition to the above activities, from 1992 until June 24, 2012, the County acted as the policy holder. From 1992 until approximately October 10, 1997, and from December 2015 to the present, the County paid 100% of the premium. From October 10, 1997 through September 4, 2011, the County contributed to the policy premium payments at the rate of $0.45 per $100 of payroll.

As of December 10, 2013, as to the attorneys covered by the Reliance Standard policy who were members of the CCAA group, the County agreed to contribute to premium payments at the rate of $0.45 per $100 of covered salary, and to make a retroactive refund of premium paid by the employees back to June 24, 2013. The CCAA's 2013 MOA also memorializes their agreement that the County would continue to administer the long term disability plan. Thus, the County agreed in 2013 that it had actually been administering the plan, regardless of its intent during the 2011 negotiations.

As of February 13, 2014, the County and the GAA entered into the 2014 MOA, the County agreed to resume its premium payments of $.045 per $100 of covered salary, and to rebate the premium costs paid by the employees back to June 24, 2013. Since the premium cost for the Reliance Standard policy was $.663 per $100 of covered salary, the County was paying over two-thirds of the cost.

The LTD plan has always been limited to County employees, and even in the Reliance Standard policy, the General Group is "the County of Santa Clara and employees of any subsidiary, division or affiliates named in the Schedule of Benefits page." RSS.

Based on all of the above activities and premium payments, the County has maintained the LTD plan as a governmental plan. The County's payments of 100% of the premium when the plan was established, and currently, are conclusive proof that the plan is a governmental plan. *Silvera.* It would be absurd to have the plan's status change back and forth between being a governmental plan and an ERISA plan. The purpose of the governmental plan exception is to keep the federal government out of the relationship between governmental entities and their employees.

Furthermore, all of the administrative activity for the LTD plan was managed by either the County or John Pivirotto. Although Mr. Pivirotto is informally referred to as an insurance broker, there are technically no life or health insurance brokers in California. Under California Insurance Code §1622, he is a "life agent" authorized to act on behalf of Reliance Standard to "transact" life insurance. This includes representing Reliance Standard in "[t]ransactional matters subsequent to the execution of a contract, and arising out of it." Cal. Ins. Code §35. Therefore, acts by Mr.

Pivirotto are as the agent of Reliance Standard, and correspondence between the County and Mr. Pivirotto was legally between the County and Reliance Standard.

There is no showing that the other aspects of the County's employee benefit plan were administered differently from the LTD benefits. Therefore, under *Shaw v. Delta Airlines, supra*, 463 U.S. at 107-108, the Court should not apply different regulations to different parts of the plan.

Although no case law has gone into detail about the effect of the County paying over two-thirds of the premium, rather than 100%, the substantial contributions by the County are sufficient to show maintenance of the plan. *Silvera, supra*. The Department of Labor's opinion is that governmental plans include plans administered by a union that provide benefits exclusively to governmental employees provided that the plan is funded exclusively by the government <u>and</u> the employees. DOL Opinion 99-15A, 1999 ERISA Lexis 20 (Ex. 22).

To the extent that Defendant contends that the period of time when the County was not making contributions to the premiums (September 5, 2011-June 23, 2013) caused the LTD plan's status to change from being part of the County's underlying governmental plan to being a separate ERISA plan, that argument was rejected in *Gaylor v. John Hancock, supra*, and *Cox v. Reliance Standard, supra*, where optional plans for which a beneficiary paid 100% of the premium were found to be part of the underlying ERISA plans.

**4. The Cases Cited by Defendant Can be Distinguished, and Its Arguments do Not Fully Address the Facts**

In *Wilson v. Provident Life & Accident Ins. Co.*, 101 F.Supp.3rd 1038 (W.D.Wa., 2015), a policy was issued to the Washington Education Association (WEA), an independent association that marketed the plan to multiple government agencies. The school district where the plaintiff worked offered the insurance policy at issue as one of a number of options. The premiums were paid by the district, and with contributions by both public funding and the employees through payroll deductions in unspecified percentages. In addition to covering government employees, the plan also covered a number of employees of the WEA who were not government employees. The court found that the fact that the plan covered non-government employees, and the fact that the

school district which employed the plaintiff did not play any direct role in the plan covering the various different agencies, were dispositive, and that the plan was not a governmental plan.

Unlike the policy providing the benefits in *Wilson*, the only employee groups covered under the LTD plan funded by the Reliance Standard policy are County employees in the GAA and CCAA; there are no non-governmental association or union employees covered; inclusion in the LTD plan is mandatory for those represented by the GAA or CCAA; there is a long history of direct involvement by the County with extensive administrative activities; the County (Peter Ng) asked to review and made changes to the LTD Policy; and, the County's involvement in contributing to the cost of the LTD plan at issue in this case is much more extensive than the school district's contribution in *Wilson*.

In *Sarraf v. Standard Ins. Co.,* 102 F.3rd 991 (9th Cir. 1996), a government employee association bought insurance directly. Unlike the County's LTD plan, there was no evidence that the plan in *Sarraf* was associated with a collective bargaining agreement, that the government ever contributed to premium payments, or that it performed any administrative activities such as deducting premium payments from payroll or paying premiums. Further, the policy in *Sarraf* stated that it was an ERISA plan, and the court so found. Here, there is no mention of ERISA in the Reliance Standard policy. Ex. A 0001-31. The opinion in *Sarraf* is very brief, and does not include the factors discussed in relation to the *Wilson* case, above.

Defendant argues that the LTD plan in this case was not collectively bargained. However, the 2011 MOU gave permission to the GAA to continue a mandatory benefit for County employees. Further, the 2011 MOU was the result of concessions made by the GAA due to the County's financial position; it was always the GAA's intention to recover those concessions when the County's financial condition improved, and it has done so. The collective bargaining process continued after the 2011 MOU when the County agreed to continue the status quo and administer the LTD plan as it always had, when it resumed funding 2/3 of the Reliance Standard premium in 2014, and when it agreed to pay 100% of the premium cost in 2015.

Defendant argues that the County's acts in making payroll deductions and remitting premiums are not sufficient to qualify as maintaining a plan. This ignores the County's other acts,

including providing claim forms and claims assistance, receiving and distributing the Insurance Certificates, posting the Insurance Certificate on its website, corresponding with Reliance Standard as though it was the policy holder, and it asked to review the Reliance Standard policy and asked for changes after its review. At a minimum, the policy review and claim correspondence functions involved discretion.

Defendant argues that the County's actions in administering the plan were done on behalf the GAA. In fact, the County was acting on behalf of its employees, who are the ones who benefitted from its actions.

In sum, Defendant's authorities are distinguishable. It does not address the history of the LTD plan or the collective bargaining related to the LTD plan; its arguments do not fully consider the County's involvement in administering and paying for the plan; and, Defendant has not addressed the public policy against splitting a plan into smaller areas of jurisdiction or the public policy against federal interference in the relations between a governmental entity and its employees.

## V. CONCLUSION

For the reasons discussed above, the long term disability plan, including the Reliance Standard policy, which provides benefits to the attorneys employed by the County and represented by the GAA, is exempt from ERISA as a governmental plan, and Plaintiff's state law claims are not preempted by ERISA. Therefore, Defendant's motion should be denied, and Plaintiff's motion should be granted.

Dated: July 28, 2016

ROSE PERKINS PELMULDER

By: /s/ Charles B. Perkins
CHARLES B. PERKINS
Attorneys for Plaintiff
ROXY HARIRI