ADRIENNE C. PUBLICOVER (State Bar No. 161432)
Email: Adrienne.Publicover@WilsonElser.com
LAURA E. FANNON (State Bar No. 111500)
Email: Laura.Fannon@WilsonElser.com
**WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP**
525 Market Street – 17th Floor
San Francisco, California 94105-2725
Telephone: (415) 433-0990
Facsimile: (415) 434-1370

Attorneys for Defendant
RELIANCE STANDARD LIFE INSURANCE COMPANY

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

ROXY HARIRI,

Plaintiff,

v.

RELIANCE STANDARD LIFE INSURANCE COMPANY,

Defendant.

Case No.: 5:15-cv-03054-EJD

**DEFENDANT'S REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT RE ERISA PREEMPTION**

Date: August 18, 2016
Time: 9:00 a.m.
Courtroom: 4
Hon. Edward J. Davila

Action Filed: July 1, 2015
Trial Date: None

<u>Documents attached</u>**:**

1. Reply Separate Statement of Stipulated Facts
2. Supplemental Fannon Declaration and Exh. I

# TABLE OF CONTENTS


Table of Authorities ..... ii

INTRODUCTION ..... 1

ARGUMENT ..... 2

A. The Reliance Standard LTD Policy is Substantial Evidence of a Plan, Fund, or Program under ERISA ..... 3

B. GAA, Not the County, Sponsored the LTD Plan ..... 4

1. The LTD Policy was not part of the County employee benefit program ..... 4

2. The identity of the plan sponsor must be based on the facts as they existed at the time Plaintiff ceased working in 2012 ..... 6

3. The County's administrative involvement was ministerial, was performed on behalf of GAA, and/or involved duties that need to be performed by an employer, whether or not the employer is the sponsor of a disability plan ..... 8

4. Although federalism concerns are relevant to explain why Congress exempted governmental plans from ERISA, they have no application in this case ..... 10

5. The County was completely neutral with respect to whether GAA members should have LTD coverage and therefore was not a plan sponsor ..... 10

6. LTD coverage was not collectively bargained ..... 11

7. Whether the County or GAA intended to comply with ERISA is not relevant ..... 11

CONCLUSION ..... 12

# TABLE OF AUTHORITIES

## Cases

*Babikian v. Paul Revere Life Ins. Co.,* 63 F.3d 837 (9th Cir. 1995) ... 3

*Cerone v. Reliance Standard Life Ins. Co.,* 9 F.Supp.3d 1145 (S.D. Cal. 2014) ... 6

*Cinelli v. Security Pacific Corp.,* 61 F.3d 1437 (9th Cir. 1995) ... 3

*Cox v. Reliance Standard Life Ins. Co.,* 2013 U.S. Dist. Lexis 70601 (C.D. Cal. 2013) ... 6

*Donovan v. Dillingham*, 688 F.2d 1367 (11th Cir. 1982) ... 3

*Ed Miniat, Inc. v. Globe Life Ins. Group,* 805 F.2d 732 (7th Cir. 1986) ... 12

*Grosz-Saloman v. Paul Revere Life Ins. Co.,* 237 F.3d 1154 (9th Cir. 2001) ... 6

*In Re Stern,* 345 F.3d 1036 (9th Cir. 2003) ... 7

*LaVenture v. Prudential Insurance Co. of America,* 237 F.3d 1042 (9th Cir. 2001) ... 5

*Orozco v. United Air Lines, Inc.,* 887 F.2d 949 (9th Cir. 1989) ... 3

*Peterson v. American Fidelity Assurance Co.,* 2013 WL 6047183 (D. Nev. 2013) ... 8

*Peterson v. American Life & Health Ins. Co.,* 48 F.3d 404 (9th Cir. 1995) ... 6, 7

*Pierson v. Continental Cas. Co.,* 2000 WL 1879895 (C.D. Cal. 2000) ... 11

*Shaw v. Delta Air Lines,* 463 U.S. 85, 103 S.Ct. 2890, 77 L.Ed.2d 490 (1983) ... 5, 11

*Stuart v. Unum Life Ins. Co.,* 217 F.3d 1145 (9th Cir. 2000) ... 3

*Thompson v. American Home Assur. Co.,* 95 F.3d 429 (6th Cir. 1996) ... 12

*Wickman v. Northwestern Nat. Ins. Co.,* 908 F.2d 1077 (1st Cir. 1990) ... 12

*Wilson v. Provident Life and Acc. Ins. Co.,* 101 F.Supp.3d 1038, 1043 (W.D. Wash. 2015) ... 11

## Statutes

29 C.F.R. §2510.3-1(j) ... 10

29 U.S.C. §1002(1) ... 3

40 F.R. 34,526 (1975) ... 10

**DEFENDANT'S REPLY MEMORANDUM OF POINTS AND AUTHORITIES**

**INTRODUCTION**

Much of the argument and many of the facts in Plaintiff's opposition are irrelevant, and none of them demonstrates that the County sponsored the LTD plan at the time Plaintiff stopped working, a fact that is necessary for Plaintiff to establish an ERISA-exempt governmental plan.

The relevant facts are undisputed, simple, straightforward, and compelling in demonstrating that the LTD policy was *not* a governmental plan: Under the 2011 MOU, the County expressly washed its hands of the LTD plan for GAA members. GAA was thereafter on its own in determining (a) whether its members would have LTD coverage, and (b) what insurer would provide that coverage and under what conditions. GAA:

- established a committee to work with a broker to obtain quotes from insurers for LTD coverage for its members;
- obtained census information from the County to assist it with obtaining quotes from insurers;
- eventually voted to obtain an LTD policy from Reliance Standard after considering offers from disability insurers;
- was issued the LTD policy as the policyholder;
- entered into an administration agreement with Reliance Standard.

Further, under the LTD policy, GAA had certain rights and obligations, such as the responsibility to maintain sufficient records of each insured's insurance, to notify Reliance Standard of all individuals eligible for coverage, to provide accurate census and related information, and to pay all premiums. GAA also had the right to cancel the LTD policy, and booklets issued to GAA members who were participants in the LTD plan had GAA's name on the cover.

In stark contrast, the undisputed facts demonstrate that the County did not decide whether GAA members would have LTD coverage; the County did not obtain quotes from insurers or do any of the work necessary to find a disability insurer; the County did not decide to obtain a disability policy from Reliance Standard (or from any other disability insurer); the County was

not the policyholder; the County had no obligations under the terms of the LTD policy; and the County's name was not on the booklets provided to GAA members. To the extent the County ultimately agreed to perform certain functions like payroll deduction and related tasks, not only are these purely ministerial functions that are insufficient to establish plan sponsorship, but the County performed these functions on behalf of the policyholder/plan sponsor, i.e., GAA. In short, it was GAA and not the County that established or maintained the LTD policy under which Plaintiff seeks benefits.

At the end of the day, the thrust of Plaintiff's argument is that nothing changed with the 2011 MOU, because the County continued to withhold premiums from GAA members' paychecks and essentially did the same things it did before 2011. However, the undisputed facts prove that this is not an accurate description of the circumstances. The simple, straightforward, compelling, and undisputed facts show that the County removed itself entirely from responsibility for the LTD coverage for GAA members and threw the entire matter into the lap of GAA, including the decision about whether GAA members would even have LTD coverage. The undisputed facts demonstrate that the LTD plan is not a governmental plan.

## <u>ARGUMENT</u>

## PLAINTIFF'S CLAIMS ARE GOVERNED AND PREEMPTED BY ERISA

Plaintiff does not dispute that there was an LTD plan. She also does not dispute that GAA is an "employee organization" under ERISA, that an employee organization can sponsor an employee welfare benefit plan under ERISA, that a plan providing disability benefits is a welfare benefit plan under ERISA, or that GAA members are participants under ERISA. These tacit or express admissions satisfy four of the five elements of an ERISA-governed employee welfare benefit plan. Plaintiff does not even dispute that if the LTD plan is governed by ERISA, her state law claims are preempted. The only issue that Plaintiff appears to contest is whether GAA or the County sponsored the program.

**A. The Reliance Standard LTD Policy Is Substantial Evidence of a Plan, Fund, or Program Under ERISA.**

Plaintiff's contention that the LTD policy is not a formal "plan" misses the point. The existence of a formal written "plan" is not required for ERISA coverage. If it were, plan sponsors could easily avoid ERISA regulations simply by failing to issue a formal "plan." And yet ERISA regulation is not so easily avoided; compliance with ERISA's formal requirements is not a prerequisite to federal regulation or the existence of an ERISA plan. *Orozco v. United Air Lines, Inc.,* 887 F.2d 949, 952 (9th Cir. 1989). *See also Donovan v. Dillingham*, 688 F.2d 1367, 1372 (11th Cir. 1982) (existence of a formal plan is not a prerequisite to ERISA coverage). Plaintiff also ignores established law that an insurance policy is substantial evidence of the existence of a plan, fund, or program, and Plaintiff has offered no opposing evidence to demonstrate that there is no such plan. *See, e.g., Stuart v. Unum Life Ins. Co.,* 217 F.3d 1145, 1152 (9th Cir. 2000) ("There is no doubt that the long term disability policy . . . created a 'plan' under ERISA"); *Babikian v. Paul Revere Life Ins. Co.,* 63 F.3d 837, 839 (9th Cir. 1995) (group insurance policy can satisfy the elements of a plan, fund, or program under ERISA); *Cinelli v. Security Pacific Corp.,* 61 F.3d 1437, 1442 (9th Cir. 1995) (same); *Donovan v. Dillingham*, 688 F.2d at 1373 ("[T]he purchase of a group policy or multiple policies covering a class of employees offers substantial evidence that a plan, fund, or program has been established").

Plaintiff cites no authority for her proposition that "payment of premiums does not identify the source of financing." One of the criteria for determining whether a plan, fund, or program under ERISA is a reality is whether there is an identified source of funding. The statute itself establishes that the purchase of insurance is an authorized source of funding for an ERISA welfare benefit plan. 29 U.S.C. §1002(1) (an employee welfare benefit plan may be established or maintained "through the purchase of insurance or otherwise . . . ."). The above cases demonstrate that the purchase of an insurance policy not only can be a funding mechanism for an ERISA plan; it also is evidence that such a funding mechanism is in place to show the existence of a plan, fund, or program.

It may be that Plaintiff is attempting to argue that a disability plan was ongoing and that when GAA obtained insurance from Reliance Standard, it was part of an ongoing plan established by the County. Whatever merit such an argument might have under other facts, it has no support from the facts in this case. In the 2011 MOU, the County made it clear that it was no longer sponsoring LTD benefits for GAA members. When the County wrote to Standard Insurance to cancel the existing policy, the County said, "GAA may seek to obtain its own LTD coverage policy for its members; the County would not be involved." MSS 10. In other words, any County-sponsored program was at an end. Future disability coverage for GAA members, if any, would be at the discretion of GAA. This was well understood by GAA: "The county made it quite clear that we were on our own with the LTD during our negotiations." MSS 23. Plaintiff has no factual basis to argue that there was some ongoing plan.[1]

**B. GAA, Not the County, Sponsored the LTD Plan.**

To establish the LTD plan as a governmental plan, Plaintiff must demonstrate that the County was the plan sponsor. She has failed to do so: The undisputed evidence is that the County removed LTD coverage from the collectively bargained benefits via the 2011 MOU; expressly relinquished its sponsorship of LTD benefits for GAA members; left the decision about whether GAA members would have LTD coverage, and all of the work necessary to put such coverage into place, in the lap of GAA; and all work and decisions leading up to establishment of the Reliance Standard policy were performed by and/or on behalf of GAA. Plaintiff's scattered arguments attempting to change this history, which is established by contemporaneous documents, are for naught.

**1. The LTD Policy was not part of the County employee benefit program.**

Plaintiff's contention that the LTD plan should be considered in conjunction with other employee benefits available from the County is contrary to the undisputed facts and to applicable

---

[1] Plaintiff's argument that the Standard Insurance policy was not "canceled" appears to be another attempt to argue that the underlying disability plan continued after the 2011 MOU. However, the undisputed facts demonstrate that for GAA members, the Standard Insurance policy no longer applied.

Ninth Circuit law. It is contrary to the undisputed facts because the County expressly removed LTD coverage from its benefit package via the 2011 MOU. Obviously, the undisputed facts show that the County did not view disability coverage for GAA members as an integral part of its program offering medical, life, vision, dental, and pension benefits, or it would not have terminated disability benefits in the 2011 MOU.

Plaintiff's contention is also contrary to Ninth Circuit law, because it ignores the holding in *LaVenture v. Prudential Insurance Co. of America,* 237 F.3d 1042 (9th Cir. 2001). In *LaVenture,* business owners were covered under a policy of disability insurance. Because ERISA regulations require that a plan cover at least one common law employee other than the sole owners of an employer, the disability plan on its own was not governed by ERISA. 237 F.3d at 1045. Attempting to bring the disability policy under ERISA, the disability insurer argued that the disability policy was part of a larger plan that included medical coverage that was extended to one of the company employees. The Ninth Circuit held that while the medical coverage might be governed by ERISA, that fact did not bring the disability policy within ERISA, because the insurer "produced no evidence to establish that the disability policy and health plan were intertwined so as to constitute one overall benefit plan." *Id.* at 1047.

Plaintiff likewise has failed to demonstrate that the LTD coverage was "intertwined" with the County medical, vision, dental, pension, or other benefits so as to be part of one overall benefit plan. Factors the *LaVenture* court considered relevant to determine if there was one overall plan were whether coverages were purchased at the same time, from the same insurer, and for the same purpose. 237 F.3d at 1046. Plaintiff has offered no evidence to satisfy any of these factors.

Plaintiff's reliance on *Shaw v. Delta Air Lines,* 463 U.S. 85, 103 S.Ct. 2890, 77 L.Ed.2d 490 (1983) is misplaced. Plaintiff relies on *Shaw* for the proposition that where benefits are administered together, they must be treated as part of an overall plan. However, Plaintiff offers no evidence to show that the LTD coverage was administered together with the County's medical, dental, vision, pension or other benefits. In fact, the evidence shows otherwise. The County's decision in the 2011 MOU to excise and exclude LTD coverage proves the benefits were not

administered as one plan and that the County certainly did not consider disability coverage to be intertwined with or an integral part of its overall benefit program. It is also undisputed that Plaintiff's LTD claim was administered by Reliance Standard. There is no evidence that Reliance Standard also administered the County's medical, dental, vision, or pension benefits at all, much less as part of one overall plan. All of the above further supports the position that LTD coverage was not commonly administered with other benefits so as to constitute one overall benefit plan. Likewise, Plaintiff's reliance on *Peterson v. American Life & Health Ins. Co.,* 48 F.3d 404 (9th Cir. 1995), and *Cox v. Reliance Standard Life Ins. Co.,* 2013 U.S. Dist. Lexis 70601 (C.D. Cal. 2013), is also erroneous. The policies in *Peterson* provided like types of benefits (health insurance). The policies in *Cox* all involved life insurance issued by the same carrier. None of these cases supports Plaintiff's proposition that unlike benefits must always be treated together as a single benefit plan.

**2. The identity of the plan sponsor must be based on the facts as they existed at the time Plaintiff ceased working in 2012.**

In the 2011 MOU, the County terminated any further obligation to sponsor LTD benefits for GAA members. The GAA then decided that its members would continue to have disability coverage and proceeded to assemble relevant information, seeking quotes from insurers and obtaining the group disability policy from Reliance Standard. That is the policy that was in effect when Plaintiff ceased work and under which she applied for LTD benefits. The issue before the Court is who sponsored the LTD policy under which Plaintiff sought benefits. Focusing on the relevant time period, the clear answer is that GAA was the plan sponsor. To argue that the County was the sponsor, Plaintiff must look at facts as they existed long before the 2011 MOU or long after Plaintiff ceased working, none of which is relevant.

The issue of who sponsored the LTD policy must be determined based on the facts as they existed at the time the policy was issued. The cases on which Plaintiff relies did not address the sponsorship issue and are inapplicable. *Grosz-Saloman v. Paul Revere Life Ins. Co.,* 237 F.3d 1154 (9th Cir. 2001), and *Cerone v. Reliance Standard Life Ins. Co.,* 9 F.Supp.3d 1145 (S.D. Cal. 2014), involved questions of the standard of review applicable to denied benefit claims. The standard of

review issue required the courts to determine whether the underlying plan documents granted valid discretionary authority to the insurer. The courts looked to the plan documents that existed at the time of the claim determination because both cases involved disputes over the claim determinations.

There is no claim determination issue before the Court in the present motions. The issue is one of plan sponsorship and whether it was GAA or the County that established the LTD policy that was in place and that covered Plaintiff at the time she stopped working. *See In Re Stern,* 345 F.3d 1036 (9th Cir. 2003).

In *Stern,* the issue was whether a pension plan was ERISA qualified and excluded from a bankruptcy estate. The pension plan covered at least one employee and was ERISA governed when it was established. However, by the time of the bankruptcy filing, it did not cover at least one non-owner employee and was exempt from ERISA. The court held that the ERISA status of a pension plan must be determined at the time of the bankruptcy filing.

The *Stern* court noted that the situation would be different for an ERISA welfare plan. In that situation, the ERISA status of a welfare plan must be determined at the time the plan was established. The court relied on its decision in *Peterson* 48 F.3d 404, which held that where a health insurance policy originally covered an owner and an employee and later only covered the owner, it would continue be governed by ERISA because it was originally established as an ERISA plan. As applied to the present case, then, the analysis of who sponsored the plan must focus on the facts that existed when the plan was established, i.e., when GAA obtained the Reliance Standard policy that covered Plaintiff at the time she ceased working. Whether the County contributed toward premiums years before the Reliance Standard policy was issued or whether it did so in years after Plaintiff ceased working is irrelevant. Under Plaintiff's theory, if the County contributed toward premiums at any point in time after Plaintiff stopped working but while her claim was pending, the policy would not be governed by ERISA—no matter that the County had no involvement in acquiring the policy or negotiating its terms, no matter that the County specifically relinquished any sponsorship obligations, no matter that GAA and not the County is the policyholder, and no matter that GAA's name rather than the County's is on the plan booklets.

**3. The County's administrative involvement was ministerial, was performed on behalf of GAA, and/or involved duties that need to be performed by an employer, whether or not the employer is the sponsor of a disability plan.**

The thrust of Plaintiff's argument that the LTD plan was sponsored by the County is that the County performed certain "administrative" functions. First of all, the statement in Plaintiff's brief (p. 19) that the County performed "all of the administrative activity" is directly rebutted by the undisputed facts: Once the County terminated its sponsorship of LTD benefits, it was GAA that decided whether to obtain LTD insurance for its members, did the work to obtain disability insurance, voted to retain Reliance Standard as the LTD insurer, was the policyholder under the group disability policy, and entered into the administration agreement with Reliance Standard. It was GAA's name that was on the employee booklets. As it is undisputed that the County did not perform any of these functions, the County certainly did not perform "all" of the administrative functions.

The administrative functions that Plaintiff says were performed by the County can be divided into two categories: (1) functions related to payroll deductions; and (2) functions related to Plaintiff's claim for benefits. Regarding the first category, the County's involvement was similar to the activities of the employer in *Peterson v. American Fidelity Assurance Co.,* 2013 WL 6047183 (D. Nev. 2013). In that case, the public school employer had provided salary information for use to market a disability plan, consented to the use of school property to market the plan, conducted payroll deductions and agreed to remit premiums to the insurer, and allegedly established the disability policy as part of a collective bargaining agreement. In contrast to the school's activities, an employee organization representing the public school teachers obtained the policy from the insurer, negotiated its terms with the insurer, and endorsed the program to encourage its members to participate. The court ruled that the disability plan was not established or maintained by the public school employer because the school's administrative functions were ministerial.

Likewise, in the present case, the County's so-called administrative functions were ministerial. Activities like computing premiums, making premium payments after payroll deduction, and the like are ministerial functions that would not even qualify for sponsorship of an

employee benefit plan. See discussion at Memorandum in Support of Defendant's Motion for Partial Summary Judgment, pp. 15-17. Even Plaintiff's argument that the County reviewed the policy and pointed out "discrepancies" misses the point, because the so-called "discrepancies" related to premium deductions and so were part of the ministerial functions.

The second category of activities relates to the benefit claim process. Plaintiff relies on the County's completion of the employer portion of a claim form and communications with Reliance Standard's claim department regarding Plaintiff's claim. However, these are activities that would be required of an employer in its role as employer of a benefit claimant, regardless of whether the employer also sponsored the disability policy. Disability determinations are based on whether a claimant is disabled from performing an occupation. Issues such as whether the claimant was covered, what type of job the claimant performed, the functions of that job, and whether there were other factors besides disability leading to the claimant's cessation of work can be provided only by an employer, whether or not the employer had or has any involvement in establishing or maintaining the disability policy. These activities do not demonstrate sponsorship of the plan.

Finally, whatever administrative functions were performed by the County, they do not point to the conclusion that it was the County that established or maintained the plan: Any such administrative functions were performed on behalf of GAA. The County had no obligations under the terms of the group LTD policy. Only GAA had those responsibilities. At page 22, Plaintiff denies that the County performed functions on behalf of GAA, citing no factual or legal authority; and yet at page 7, she quotes language from a 2013 memorandum of agreement that "[t]he County shall continue to administer the short term disability and/or long term disability plans *on behalf of CCAA at no cost to CCAA for the County to administer the Plan."* (Emphasis added.) The parties to the memorandum agreement clearly understood it was the employee organization that had the obligation to maintain the plan and that the County performed certain administrative functions *on behalf of* the employee organization. Plaintiff has offered no evidence that the County reasserted sponsorship obligations regarding the LTD plan at any point after the 2011 MOU.

**4. Although federalism concerns are relevant to explain why Congress exempted governmental plans from ERISA, they have no application in this case.**

Federalism concerns may be the basis for a governmental plan exemption in ERISA. Nevertheless, they do not have any bearing on whether GAA or the County sponsored the LTD plan, which is the sole issue before the Court. Nowhere does Plaintiff explain how a finding that a plan sponsored by GAA is governed by ERISA would have any impact on federalism concerns. Plaintiff does not even suggest that such a conclusion would affect the ministerial functions performed by the County.

**5. The County was completely neutral with respect to whether GAA members should have LTD coverage and therefore was not a plan sponsor.**

The Department of Labor regulatory exemption for certain group-type insurance programs, discussed at page 16 of Defendant's Memorandum in Support of Motion for Partial Summary Judgment, is applicable to situations in which an employer or employee organization is neutral regarding employees' participation in the plan and provides guidance to answer the question whether GAA or the County sponsored the plan. 29 C.F.R. §2510.3-1(j). *See also* 40 F.R. 34,526 (1975) (employer neutrality is the key to determining if an employer is sponsoring an employee benefit plan). Here, the undisputed facts demonstrate that the County was entirely neutral with respect to LTD coverage for GAA members. As County representative Peter Ng wrote on August 22, 2011, "GAA may seek to obtain its own LTD coverage policy for its members; the County would not be involved." See MSS 10. Likewise, as GAA representative Keven Smith wrote on May 9, 2012, "The county made it quite clear that we were on our own with the LTD during our negotiations." MSS 23. One would be hard pressed to find stronger facts demonstrating employer neutrality.

In contrast, GAA was not neutral. The GAA made the decision to obtain LTD insurance for its members after the County refused to continue to do so. The GAA sought out coverages, obtained quotes from insurers, negotiated terms, voted to obtain coverage from Reliance Standard, entered into an administration agreement with Reliance Standard, was the named policyholder and accepted the contractual obligations that came with being the policyholder, and in the process endorsed

coverage, including making coverage mandatory for GAA members. *See, e.g.,* Plaintiff's Memorandum in Support of Cross-Motion for Partial Summary Judgment, p. 10. These undisputed facts demonstrate that GAA was not a neutral bystander. *See, e.g., Wilson v. Provident Life and Acc. Ins. Co.,* 101 F.Supp.3d 1038, 1043 (W.D. Wash. 2015) (employee organization was not neutral and endorsed disability insurance policy, was responsible for creating the plan, promoted the plan as having its approval, and had the power to amend or terminate the plan; and a brochure about the plan carried the employee organization's logo).

**6. LTD coverage was not collectively bargained.**

Plaintiff's statements that LTD coverage was collectively bargained are unsubstantiated. To the contrary, the County expressly removed LTD coverage from collective bargaining and eschewed any responsibility for further sponsorship of LTD coverage for GAA members in the 2011 MOU. In this and other respects, DOL Opinion 99-15A is completely distinguishable. The fund in that case was collectively bargained throughout its existence and the public employer contributed toward the fund throughout its existence. Neither of those facts is present in this case and neither applied at the time Plaintiff ceased working. *See also Pierson v. Continental Cas. Co.,* 2000 WL 1879895, *10 (C.D. Cal. 2000) ("[Plaintiff] cites no authority for the proposition that a union plan not mandated by a collective bargaining agreement qualifies for the governmental plan exception, and the court can find none.").

**7. Whether the County or GAA intended to comply with ERISA is not relevant.**

Plaintiff cites no authority for her proposition that GAA or the County could "opt in" to ERISA coverage. Federal law applies whether or not an employer or employee organization "intends" for it to apply. *See, e.g., Shaw v. Delta Air Lines,*463 U.S. at 106 ("The test is not one of the employer's motive . . . ."). To hold otherwise would allow employers and employee organizations to avoid federal regulation simply by saying they did not "intend" to comply with ERISA.[2]

[2] Although intent to comply with ERISA is not decisive, the certificate booklet issued by Reliance did include ERISA language. At no time did the County, GAA, or anyone else object to the inclusion of ERISA language. See Supplemental Fannon Decl, Ex. I, Corba Depo. at 49:18-51:13.

What is relevant is whether the plan sponsor obtained insurance as part of "an expressed intention . . . to provide benefits on a regular and long term basis." *Wickman v. Northwestern Nat. Ins. Co.,* 908 F.2d 1077, 1083 (1st Cir. 1990). *See also Thompson v. American Home Assur. Co.,* 95 F.3d 429, 435 (6th Cir. 1996); *Ed Miniat, Inc. v. Globe Life Ins. Group,* 805 F.2d 732, 739-41 (7th Cir. 1986). In the present case, the County definitely had no intention of providing LTD coverage to GAA members on a regular and long term basis. In fact, just the opposite – it expressed its intention to *cease* sponsoring such benefits. The GAA, on the other hand, did express an intention to provide such benefits on a regular and long term basis by deciding whether or not its members would receive such benefits, doing the work necessary to put the LTD policy in place, including deciding which insurer would provide the benefits, entering into an administration agreement with Reliance Standard, and accepting responsibilities set forth in the contract. The GAA sponsored the disability policy; the County did not. The policy was not part of a governmental plan.

**CONCLUSION**

For each of these reasons, the LTD policy under which Plaintiff seeks benefits is part of an ERISA plan, is not exempt from ERISA as a governmental plan, and Plaintiff's state law claims are preempted by ERISA.

Respectfully submitted,

DATE: August 4, 2016

**WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP**

By */s/Adrienne C. Publicover*
ADRIENNE C. PUBLICOVER
LAURA E. FANNON
Attorneys for Defendant
RELIANCE STANDARD LIFE INSURANCE COMPANY