CHARLES B. PERKINS #126942
SUSAN D. PELMULDER #234731
ROSE PERKINS PELMULDER
A Professional Association
59 North Santa Cruz Avenue, Suite Q
Los Gatos, California 95030
(408) 399 – 4566 voice
(408) 399 – 6683 facsimile
cbperk@earthlink.net
sue@pelmulder.com

Attorneys for Plaintiff
ROXY HARIRI

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| ROXY HARIRI,<br><br>Plaintiff,<br><br>vs.<br><br>RELIANCE STANDARD LIFE INSURANCE COMPANY,<br><br>Defendant. | Case No. 5:15-cv-03054 EJD<br><br>Reply Memorandum In Support of Plaintiff's Motion For Partial Summary Judgment Re ERISA Preemption<br><br>Date: August 18, 2016<br>Time: 9:00 a.m.<br>Dept: 4<br>Honorable Edward Davila<br><br>Documents attached:<br>1. Plaintiff's Reply Separate Statement<br>2. Supplemental Declaration of Max Zarzana<br>3. Supplemental Declaration of Roxy Hariri<br>4. Supplemental Declaration of Charles Perkins, w/ Ex. 23 |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........ iii

I. INTRODUCTION AND SUMMARY OF ARGUMENT ........ 1

II. REPLY STATEMENT OF FACTS ........ 3

III. ARGUMENT ........ 5

A. Plans Must be Evaluated as a Whole; the LTD Plan Includes the Policy and the Formal and Informal Agreements Between the County and the GAA ........ 5

B. If a Particular Date is Used to Evaluate the Plan, the Court Must Use the Date Plaintiff's Claim was Denied; Defendant's Argument to the Contrary is Not Supported by Statutory or Case Law; and, the County was Maintaining the Plan when Plaintiff's claim was denied ........ 7

C. The Court's Analysis of Whether the LTD Plan is a Governmental Plan Needs to Be Conducted in Light of the Underlying Reason for the Governmental Plan Exception, Which is Federalism. ........ 9

D. The County Established or Maintained the LTD Plan ........ 10

1. The County Established the LTD Plan ........ 10

2. The County has Continuously Maintained the Long Term Disability Plan, and Was Doing So at the Time Plaintiff's Claim was Denied ........ 11

E. The LTD Plan is Part of the County's Employee Benefits Program, from Which it Should not be Separated ........ 13

F. Defendant's Arguments about the Safe Harbor Regulations are Ineffective ........ 14

G. Defendant Has Not Met its Burdon of Proof ........ 15

IV. CONCLUSION ........ 15

# TABLE OF AUTHORITIES

CASES

*Babikian v. Paul Revere Life Ins. Co.*, 63 F.3d 837, 839 (9th Cir. 1995) ........................................6

*Bolton v. Construction Laborers Pension Trust Fund for So. Cal.,* 56 F.3d 1055-1058 (9th Cir. 1995) ........................................7

*Cinelli v. Security Pacific Corp.*, 61 F.3d 1437, 1442 (9th Cir. 1995) ........................................6

*Donovan v. Dillingham*, 688 F.2d 1367, 1371 (11th Cir. 1982) ........................................6

*Feinstein v. Lewis*, 477 F.Supp 1256, (SDNY 1979) ........................................9

*Grosz-Salomon v. Paul Revere*, 237 F.3d 1154 (9th Cir. 2001) ........................................7

*Gualandi v. Adams*, 385 F.3rd 326 (2nd Cir. 2004) ........................................8, 10, 11

*Hall v. Maine Mun. Employes. Health Trust*, 93.Supp.2d 73, 80-81 (D. ME. 2000) ........................................10

*Hightower v. Texas Hospital Assn.*, 65 F.3d 443450 (5th Cir. 1995) ........................................10

*In Re Stern*, 345 F.3d 1036 (9th Cir. 2003) ........................................7, 8

*Kanne v. Connecticut General Life Ins. Co.*, 867 F.2d 489 (9th Cir. 1989) ........................................6, 15

*Kirkpatrick v. Merit Behavioral Care Corp.*, 79 F.Supp.2d 443 (D. VT. 1999) ........................................10

*Laventure v. Prudential Insurance Co. of America*, 237 F.3d 1042 (9th Cir. 2001) ........................................13, 14

*Menhorn v. Firestone Tire & Rubber Co.*, 738 F.3d 1496, 1501 (9th Cir. 1984) ........................................7

*Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 61, 107 S. Ct. 1542, 1546, 95 L. Ed. 2d 55 (1987) ........................................15

*Pierson v. Continental Cas. Co.*, 2000 WL 1879895, *10 (C.D. Cal. 2000) ........................................13

*Peterson v. American Fidelity Assurance Co.*, 2013 WL 6047183 (D. Nev. 2013) ........................................12

*Peterson v. American Life & Health Ins. Co*, 48 F.3d 404 (9th Cir. 1995) ........................................5, 7

*Rose v. Long Island Railroad Pension Plan*, 828 F.2d 910 (2nd Cir., 1987) ........................................9

*Roy v. Teacher's Insurance & Annuity Association*, 878 F.2d 47, 49 (2nd Cir. 1989) ........................................9, 10

*Sculthorpe v. Virginia Retirement System*, 952 F. Supp. 307, 310 (E.D. Va. 1997) ........................................10

*Silvera v. Mutual Life Ins. Co. of N.Y.*, 884 F.2d 423, 425-426 (9th Cir. 1989) ........................................8, 9

*Stuart v. Unum Life Ins. Co.*, 217 F.3d 1145, 1152 (9th Cir. 2000) ........................................6

///

*Taggart v. Life & Health Benefits Admin.*, 617 F.2d 1208, 1211 (5th Cir. 1980) *cert denied* 450 U.S. 1030, 101 S.CT. 1739, 68 L.Ed 2d 225 .......... 5

*Triplett v. United Behavioral Health Systems*, 1999 U.S. Dist. Lexis 4108 (E.D. PA. 1999) .......... 10

*Watkins v. Westinghouse Hanford Co.*, 12 F.3d 1517 (9th Cir. 1993) .......... 6

*Wickman v. Northwestern Nat. Ins. Co.*, 908 F.2d 1077, 1083 (1st Cir. 1990) .......... 15

*Wilson v. Provident Life & Accident Ins. Co.*, 101 F.Supp.3rd 1038 (W.D.Wa., 2015) .......... 14

## UNITED STATES CONSTITUTION

10th Amendment .......... 9

## STATUTES

29 U.S.C. § 1001 et seq .......... 9

29 U.S.C. § 1002(32) .......... 1, 20, 12

## REGULATIONS

29 CFR § 2510.3-1(j) .......... 14

## AGENCY OPINIONS

Department of Labor Opinion 86-23A, 1986 ERISA Lexis 6 .......... 8, 9

Department of Labor Opinion 99-15A, 1999 ERISA Lexis 20 .......... 8, 9

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. INTRODUCTION AND SUMMARY OF ARGUMENT

Roxy Hariri was a Deputy District Attorney for the County of Santa Clara (the County). Her employee benefit plan included a long term disability plan (LTD plan). The issue for the Court to decide is whether the LTD plan covering the attorneys employed by the County of Santa Clara (the County), and represented by Santa Clara County Government Attorneys Association (the GAA), is a governmental plan exempt from ERISA.

The LTD plan is a governmental plan because the County established it and also maintained it by extensive and continuous involvement with the administration of the plan, and by contributing premium payments before, during and after Plaintiff's claim. The LTD plan was one of several benefits making up the benefit package negotiated between the County and the GAA, which should not be unbundled. The Court's analysis of whether the LTD plan is a governmental plan needs to be conducted in light of the underlying reason for the governmental plan exception, which is federalism; a finding that the LTD plan became an ERISA plan as the result of concessions entered into during labor negotiations would chill the ability of the County and the GAA to be flexible in negotiations over benefits. To the extent that the LTD plan's status must be determined as of a particular date, Ninth Circuit precedent mandates that date to be the day when Plaintiff's claims were denied, when the County was contributing two thirds of the premium for the LTD plan.

Defendant argues that concessions made by the GAA to the County during 2011 labor negotiations mean that the County can no longer be found to have established or maintained the LTD plan.[1] Due to the County's financial position at the time, the GAA conceded that the County would no longer be policy holder on future LTD policies, and that the full premium for the existing policy would be paid by GAA members through payroll deduction. The County in turn agreed to keep the existing LTD policy in force and to work with the GAA in the future if it wanted to continue the LTD plan. Defendant maintains its position despite the fact that, after further

---

[1] Defendant's Reply Brief consistently reads as though the County must have established the LTD plan for it to be a governmental plan, and ignores 29 USC § 1002(32), which states that governmental plans exist if they are "established or maintained" by a governmental entity.

negotiations, the County continued to perform all of day to day administrative and claims processing activities it had performed for years, the fact that the Reliance Standard policy was a replacement for the prior policy which was issued to the County as policy holder, the fact that the LTD plan is presented as part of the overall benefit plan and covered only County employees, the fact that the County resumed its contribution of over two thirds of the premium for the LTD policy before Plaintiff's claim was denied and rebated premium for the time when Plaintiff attempted to return to work, the fact that, the County is currently paying 100% of the premium for the LTD plan, and the fact that other than the GAA's name appearing as policy holder, everybody treated the County as the policy holder. Defendant takes the position that the plan's status must be evaluated as of the date Plaintiff first became disabled; However, the authority it has offered does not support that.

The briefing to date has established the following areas of agreement and disagreement.

It is undisputed that the LTD plan was a governmental plan from its establishment in 1992 to September 5, 2011, when the County and the GAA entered into the 2011 MOU. Plaintiff's position is that the LTD plan continued to be a governmental plan from that date forward. Defendant contends that the only relevant date in determining the status of the LTD plan is December 19, 2012, when Ms. Hariri became disabled, and that the LTD plan was not a governmental plan at that time. Plaintiff's position is that if a particular date to evaluate the plan is to be used, that date is the date of denial, April 8, 2014.

It appears to be undisputed that the LTD plan was a governmental plan when the County resumed its contributions of over two thirds of the premium cost as of February 3, 2014, and this should also apply to the period of time for which the County rebated premiums. Other than contending that anything that happened after December 19, 2012 is irrelevant, Defendant did not submit any argument on this issue. It also appears to be undisputed that the LTD plan is currently a governmental plan.

It is undisputed that the LTD plan is an employee benefit plan, but the parties disagree over whether the County established or maintained it at the time of Plaintiff's claim, and over the date on which that analysis should be performed.

The parties disagree as to what terms are part of the LTD plan. Plaintiff's position is that the LTD plan includes the policy and the formal and informal agreements between the GAA and the County. It is necessary to include the formal and informal agreements between the GAA and the County to determine how the LTD plan is to be administered and who pays for it. Defendant seems to be arguing that the LTD plan consists of nothing but the LTD policy.

It is undisputed that the LTD plan does not fall under the ERISA safe harbor regulations.

## II. REPLY STATEMENT OF FACTS

All benefits provided by the County to its employees who are members of the GAA are matters of negotiation; in the absence of negotiation by the GAA, the County would offer less or take benefits away to save money. RSS 70. In the negotiations for the 2011 MOA, the County's financial condition required the GAA to make concessions, and the LTD plan was identified as one of the areas where concessions could be made. RSS 71. As the result of the negotiations for the 2011 MOA, the County agreed to keep the Standard Insurance Company of Oregon policy in force for a period of time and the GAA agreed to have its members pay the full premium. RSS 72.

The County was the policy holder for the Standard Insurance Company of Oregon Long Term Disability Policy which was in effect at the time of the 2011 MOU. RSS 73. The Standard Insurance Company of Oregon policy issued to the County of Santa Clara stayed in force until it was replaced by the Reliance Standard Life Insurance Company Long Term Disability Policy as of June 24, 2012. RSS 74. The Reliance Standard policy was issued as a replacement for the prior policy. RSS 75.

Relative to the future of the long term disability benefit, the County and the GAA agreed that would be a subject for continuing negotiations. RSS 76. In making the concessions on the long term disability benefit that were necessary to reach overall agreement with the County on the 2011 MOA, it was always the intention of the GAA that the long term disability coverage would be continued and that the County would have to agree to continue to perform the day to day administrative tasks necessary to maintain the LTD benefit because the GAA does not have any staff. RSS 77. Following the 2011 MOA, the GAA continued to negotiate the administration of the LTD plan with the County, and the County de facto agreed to continue the day to day

administration of the LTD plan as it had before. RSS 78. The County's functions in administering the LTD plan include, but are not limited to, maintaining records of who was insured, notifying Reliance Standard of all individuals eligible for coverage, maintaining a census of the people covered under the LTD plan, and making all premium payments. RSS 79.

In making the financial concessions necessary to finalize the 2011 MOU, it was always the GAA's intention to recover those concessions as the County's financial condition improved, and that has been done. RSS 80. If the County had not agreed, as the result of the GAA's negotiations at the time of the 2011 MOA, to keep the existing LTD policy in force, or to continue its administration of the LTD plan, the LTD benefit would have ended. Therefore, the LTD plan was continued as a result of collective bargaining between the GAA and the County. RSS 81.

The County's agreement to take the actions necessary to keep the LTD benefit in place are of the same character as its agreements to provide medical insurance or any other benefit; it would rather not take the time or spend the money, but it agrees to do so as the result of negotiations with the GAA. RSS 82. The fact that the GAA as policyholder of the LTD policy has the ability to cancel the policy is no different than the situation that existed when the County was policyholder in that, if the GAA had asked the County to cancel the LTD policy, it would have been happy to do so, thereby saving time and expense. RSS 83. If it is true that making temporary concessions on benefits causes the law applicable to those benefits to change from state law to federal law, with increased administrative burdens relating to record keeping, filing tax documents, and creating plan documents, that would limit the GAA's ability to be flexible in its negotiations with the County. RSS 84.

Mr. Zarzana received the County's rebate of premium paid for the LTD policy called for in the 2014 MOA as part of an undifferentiated lump sum, along with other rebates, paid to him by the County on March 7, 2014. RSS 85.

During the years Ms. Hariri worked for the County of Santa Clara (the County), she viewed the long term disability plan benefit as one of several benefits that came along with employment by the County, including medical coverage, dental coverage, life insurance coverage, retirement benefits and other benefits. Some of the benefits required deductions from her pay and others the

County provided. RSS 86. From Ms. Hariri's point of view, all of the benefits provided to her through her employment at the County, including the long term disability plan, were provided by the County and administered through its Human Resources Office. RSS 87. From Ms. Hariri's point of view, the only thing about the long term disability benefit that changed as of the September 5, 2011 Memorandum of Agreement between the County and the Santa Clara County Government Attorneys Association was that the amount of the deduction for the long term disability plan benefit increased. RSS 88.

When Ms. Hariri attempted return to work for the County from November 12, 2013 to January 21, 2014, the County resumed its deductions of various items from her pay, including the long term disability insurance coverage, which was deducted along with various other benefits, including PERS contributions, Health Net coverage, dental coverage, basic and supplemental life insurance coverage, visions services, and other items. RSS 89. On or about April 22, 2014, after not having received any pay since she stopped working in January 2014, she received a paystub showing gross earnings in the amount of $799.25. Of the total amount, $736.20 was characterized as "lump sum-off salary schedule pay," and the paystub did not fully explain how that amount was calculated. She called the County to ask for an explanation, and was advised that part of the payment was a return of premium that she had paid for the long term disability coverage during her attempt to return to work from November 12, 2013 through January 21, 2014. RSS 90.

## III. ARGUMENT

### <u>A. Plans Must be Evaluated as a Whole; the LTD Plan Includes the Policy and the Formal and Informal Agreements Between the County and the GAA</u>.

Employee benefit plans must be evaluated as a whole, and an insurance policy is just one component. *Peterson v. American Life and Health Ins. Co.*, 48 F.3d 401, 407 (9th Cir. 1995). The mere purchase of insurance is not enough to constitute a plan. *Taggart v. Life & Health Benefits Admin.*, 617 F.2d 1208, 1211 (5th Cir. 1980) *cert denied* 450 U.S. 1030, 101 S.CT. 1739, 68 L.Ed 2d 225. Employee benefit plans should be evaluated on all the facts and circumstances, from the point of view of a reasonable person. *Kanne v. Connecticut General Life Ins. Co.,* 867 F.2d 489, 492 (9th Cir. 1989).

Contrary to Defendant's insinuation (Defendant's Reply Brief, page 3, lines 2-17), Plaintiff is not arguing that the lack of a formal plan, beyond the four corners of the insurance policy, takes this case out of ERISA. Rather, the LTD plan need to be evaluated based on all the facts and circumstances, stretching from its establishment in 1992, through the County's activities in maintaining it to the present time.

Defendant also appears to argue that the only document to be considered in determining the terms of the plan is the insurance policy, citing *Stuart v. Unum Life Ins. Co.*, 217 F.3d 1145, 1152 (9th Cir. 2000), *Babikian v. Paul Revere Life Ins. Co.*, 63 F.3d 837, 839 (9th Cir. 1995), *Cinelli v. Security Pacific Corp.*, 61 F.3d 1437, 1442 (9th Cir. 1995), and *Donovan v. Dillingham*, 688 F.2d 1367, 1372 (9th Cir. 1982). None of these cases support Defendant's position. In *Stuart*, the Court did not discuss the elements of a plan as set forth in *Donovan*. In *Babikian*, the parties simply agreed that the group policy was a plan (63 F.3d at 838). *Cinelli* cites to *Watkins v. Westinghouse Hanford Co.*, 12 F.3d 1517 (9th Cir. 1993), which stated the elements of a plan as follows:

> Each such plan must (1) provide a policy and a method for funding the plan, (2) describe a procedure for plan operation and administration, (3) provide a procedure for amending the plan, and (4) specify a basis for payments to and from the plan. *Watkins,* 12 F.3d at 1523 N.1

To determine the terms of a plan, the *Donovan* case stated that a Court "must determine whether from the surrounding circumstances a reasonable person could ascertain the intended benefits, beneficiaries, source of financing and procedures for receiving benefits." *Donovan v. Dillingham*, 688 F.2d 1367, 1373 (11th Cir. 1982). This is consistent with the test in *Watkins* and is not consistent with Defendant's argument that the only document to consider in determining the terms of a plan is policy.

Applying the *Watkins* factors to the present case, the formal and informal agreements between the GAA and the County provide a method for funding the plan (at times entirely by contributions from the County, for a short time entirely by the members of the GAA, and at times by both together). RSS 45, 48, 49, 67. The informal agreements between the County and the GAA provide a procedure for plan operation (the County will continue to administer the plan), the MOUs provide a procedure for amending the plan, and specify a basis for funding the plan. *id.*

The policy provides a procedure for plan operation as to claims and specifies a basis for payments from the plan. RSS 24. Therefore, the LTD plan includes the formal and informal agreements between the GAA and the County, as well as the policy.

Focusing on the Reliance Standard policy, the LTD plan was amended on February 3, 2014 when the County agreed to resume its contribution of over two thirds of the premium cost going forward and retroactive to June 24, 2013. RSS 67. This shows that the LTD plan was amended while the Reliance Standard policy was in force and supports Plaintiff's position that, if a particular date is used to evaluate the status of the LTD plan, that date must be the date of denial (April 8, 2014).

**B. <u>If a Particular Date is Used to Evaluate the Plan, the Court Must Use the Date Plaintiff's Claim was Denied; Defendant's Argument to the Contrary is Not Supported by Statutory or Case Law; and, the County was Maintaining the Plan when Plaintiff's claim was denied</u>.**

As discussed in Plaintiff's moving papers, pg. 16, the Ninth Circuit has repeatedly held that date to be used to determine plan terms is the date of denial. *Grosz-Salomon v. Paul Revere*, 237 F.3d 1154, 1159-60 (9th Cir. 2001), *Bolton v. Construction Laborer's Pension Trust Fund for So. Cal.*, 56 F.3d 1055-1058 (9th Cir. 1995) and *Menhorn v. Firestone Tire & Rubber Co.*, 738 F.3d 496, 1501 (9th Cir. 1984). The rule makes sense because employee benefit plans can be amended, and the Court should interpret the plans based on the terms that exist at the time the claim is denied. The rule also makes sense because the facts related to plan maintenance can change, and 29 USC § 1002(32) requires consideration of how a plan is being maintained.

Defendant's Reply Brief cites *In Re Stern*, 345 F.3d 1036 (9th Cir. 2003) for the proposition that the status of the long term disability plan "must be determined at the time the plan was established." (Defendant's Reply, page 7, line 14-15) In doing so, Defendant misrepresents the holding of *In Re Stern* and ignores 29 USC 1002(32) requiring that plans be evaluated based on how they were established <u>or how they are maintained</u>. *In Re Stern* was a bankruptcy case, and was construing a pension benefit plan, not an employee welfare benefit plan. Therefore, its comments on construing employee welfare benefit plans are dicta. Relative to employee welfare benefit plans, *In Re Stern* simply cites the rule from *Peterson v. American Life Ins. Co.*, 48 F.3d,

404, 407-408 that "qualification for a welfare benefit plan is determined after considering the purpose of the plan when it was established or as it is maintained. 48 F.3d at 407-08." *In Re Stern*, at 401 (emphasis added).

In sum, the Court in *In Re Stern* did not need to concern itself with what entity was maintaining an employee welfare benefit plan being. Its only concern was that a pension benefit plan was always evaluated, by prior holdings, at the time of the bankruptcy filing. With regard to welfare plans, the dicta in *In Re Stern* simply supports Plaintiff's citation to *Peterson v. American Health & Life Ins. Co.*, 48 F.3d 404, 407. *In Re Stern* does not support Defendant's position the plan's status must be evaluated based only on the plan's status when it was established or on the date of disability, and is entirely consistent with the *Grosz-Solomon* rule that plans should be evaluated based on their status at the time of the benefit denial. Therefore, the issue of whether the LTD plan is a governmental plan must be determined as of April 8, 2014, at a time when the County was paying over two thirds of the premium for the LTD plan. RSS 67, 68.

In the present case, the plan terms were amended on February 3, 2014, when the County agreed to resume contributing more than two thirds of the premium cost for the LTD plan, and to rebate premium costs paid by the County employees back to June 24, 2013. *Silvera v. Mutual Life Ins. Co. of NY*, 884 F.2d 423, 426 (9th Cir. 1989), *Gualandi v. Adams*, 385 F.3d 326, 243-244 (2d Cir. 2004), and Department of Labor Opinions, Opinion 86-23a, 1986 ERISA Lexis 6 (Exhibit 21) and Opinion 99-15a, 99 ERISA Lexis 20 (Exhibit 22), hold that when a government entity pays all or the bulk of the premium, the plan is considered to be established or maintained by the government entity. DOL Opinion 99-15a, 1999 ERISA Lexis 20 held that a union plan for government employees who are members of the employee organization is a government plan, provided that the plan is funded exclusively by the government and the employees. The County's contribution of more than two thirds of the premium shows that the County was maintaining the plan when Plaintiff's claim was denied.

///

///

///

**C. The Court's Analysis of Whether the LTD Plan is a Governmental Plan Needs to Be Conducted in Light of the Underlying Reason for the Governmental Plan Exception, Which is Federalism.**

Consistent with the principles of federalism, the purpose of the governmental plan exception is to keep the federal government from interfering with the relationship between public employers and their employees. See Plaintiff's moving papers, pages 9 and 10, citing *Feinstein v. Lewis*, 477 F.Supp. 1256, 1262 (SDNY 1979), affirmed 622 F.2d 573 (2d Cir. 1980); *Rose v. Long Island Railroad Pension Plan,* 828 F.2d 910 (2d Cir. 1987); and, *Silvera v. Mutual Life Ins. Co. of NY*, 884 F.2d 423, 425-426 (9th Cir. 1989). Federalism is important because the County must be able to negotiate temporary financial concessions with its employees without the federal government stepping in to regulate a small piece of its benefits package.

Defendant's reply complains that "nowhere does Plaintiff explain how a finding that a plan sponsored by GAA is governed by ERISA would have an impact on federalism concerns." (Defendant's Reply, page 10, line 1-7).

First of all, federalism is a bedrock principal of the U.S. Constitution, 10th Amendment, and needs to be respected, even in the absence of a specific identified consequence. *Roy v. Teacher's Insurance & Annuity Association*, 878 F.2d 47, 50 (2d Cir. 1989).

Second, if the County and the GAA have to worry about concessions made in labor negotiations subjecting part of their benefit plans to federal regulation, it will chill their ability to negotiate. RSS 84. This is because compliance with ERISA, 29 USC § 1001, *et seq*., requires extensive plan documentation, record keeping, and tax reporting, and that burden is something that the County and the GAA will want to avoid, thereby limiting their ability to negotiate.

The purpose behind the governmental plan exception is consistent with Department of Labor Opinions, Opinion 86-23A, 1986 ERISA Lexis 6 (Exhibit 21 and Opinion 99-15A), 99 ERISA Lexis 20 (Exhibit 22) which focus on the fact that the plans cover exclusively government employees., and that is true in this case. RSS 26.

In sum, the purpose of the governmental plan exception is the keep the federal government out of the relationship between public employers and public employees, and that should be done in this case.

**D. <u>The County Established or Maintained the LTD Plan.</u>**

**1. The County Established the LTD Plan.**

The term "governmental plan" means a plan established or maintained by the government of the United States, by the government of any state or political subdivision thereof, or by any agency or instrumentality of any of the foregoing." 29 USC § 1002(32). By defining the term with disjunctive language, congress contemplated that it would be sufficient for a governmental plan to have been established but not maintained by a governmental entity. *Roy v. Teachers Ins. & Annuity Assoc.*, 878 F.2d 47, 49 (2d Cir. 1989). In *Gualandi v. Adams*, 385 F.3rd 236, 243-244 (2nd Cir. 2004) the Court held that when a union received money from a school district and used those funds to set up a benefit plan, the plan had been established by the government and was exempt from ERISA, even though the government had no further involvement.

Plans that are established as government plans remain government plans despite substantial changes. In *Kirkpatrick v. Merit Behavioral Care Corp.*, 79 F.Supp.2d 443 (D. VT. 1999). The plan at issue was established by the State of Vermont in 1951. It was reorganized as a trust in 1978 and provided benefits through various insurers. Also, a significant number of non-governmental employees were covered. The Court found that, despite these changes, since the plan was established as a governmental plan, it remained a governmental plan. In *Triplett v. United Behavioral Health Systems*, 1999 U.S. Dist. Lexis 4108 (E.D. PA. 1999), a plan was established by collective bargaining between the state and an employees' union. The insurer made several arguments to support its position that the plan had become an ERISA plan, including that non-governmental employees were involved in its administration, the plan described itself as an ERISA plan, and that it was no longer maintained as an ERISA plan because four out of the five participating groups were non-governmental. The Court held that since the plan was established as a governmental plan, it remained a governmental plan. The Court rejected the insurer's arguments, citing the disjunctive language of 29 USC § 1002(32), citing *Hightower v. Texas Hospital Assn.*, 65 F.3d 443450 (5th Cir. 1995), *Sculthorpe v. Virginia Retirement System*, 952 F. Supp. 307, 310 (E.D. Va. 1997), and the *Rose* case. See also, *Hall v. Maine Mun. Employes. Health Trust*, 93.Supp.2d 73, 80-81 (D. ME. 2000).

It is undisputed that the County established the long term disability plan through collective bargaining in 1992. RSS 45-47. Therefore, the plan continues to be a governmental plan.

Defendant argues that the fact that the County established the plan is irrelevant and contends that when the County and the GAA agreed in the 2011 MOU that the County would no longer sponsor the LTD plan, the plan established by the County ended. (Def.'s Reply Brief, pg. 4, ln. 1-11.) Defendant cites no authority. The cases cited above show that plans established as governmental plans remain governmental plans despite changes that would make them non-governmental plans in the absence of the disjunctive language of 29 U.S.C. § 1002(32).

It is undisputed that continuous long term disability coverage has been provided under the LTD plan from 1992 to the present. RSS 47. The facts show that as the result of collective bargaining leading up to the 2011 MOU, the County agreed to keep the Standard Insurance Company of Oregon policy, with itself as policy holder, in force, and that policy stayed in force until it was replaced by the Reliance Standard policy on June 24, 2012. RSS 47, 72, 73, 74. As the Court held in *Roy*, the congressional goal of preserving federalism requires that when a plan has been established by a governmental entity for its employees and the governmental entity's status has not changed, the plan must be exempt from ERISA as a governmental plan, and that is the situation in this case. 878 F.2d at 50. Maintenance of the plan is not necessary. *Gualandi*, 385 F.3d at 243-244.

**2. The County has Continuously Maintained the Long Term Disability Plan, and Was Doing So at the Time Plaintiff's Claim was Denied.**

As argued in Plaintiff's moving papers, page 18, line 6-20, the County has maintained the LTD plan by contributing premium (initially 100%; at the rate of $.045 per $100 of payroll from October 10, 1997 through September 4, 2011, and from June 24, 2013 to December 20, 2015; and back to 100% from December 21, 2015 to the present), computing the premium due, making the premium payments, managing payroll deductions and rebates, providing claim forms, keeping the Standard Insurance Company of Oregon policy in force as the policy holder until it was replaced by the Reliance Standard policy, reviewing the Reliance Standard policy, receiving and distributing the Reliance Standard policy Certificates, posting the Reliance Standard Certificate on its website,

assisting its employees with claims issues, and corresponding with Reliance Standard on claims issues. RSS 5, 6, 47, 48, 49, 53-60, 63, 64, 69, 72-75, 78, 79, 81, 84-90.

Defendant argues that to establish that the LTD plan is a governmental plan, Plaintiff must demonstrate that the County was the plan sponsor. (Def.'s Reply Brief, pg. 4, ln. 13-21.) Defendant's argument ignores statutory and case law. 29 USC § 1002(32) defines governmental plans in terms of whether the governmental agency established or maintained the plan. Case law evaluating whether governmental plans exist has uniformly focused on the "established or maintained" language. See, *Feinstein, Rose, Silvera, Roy, Gualandi, Peterson, etc.*

Defendant argues that the LTD plan can't have been sponsored by the County because the acts it performed after the 2011 MOU were only ministerial. Defendant cites *Peterson v. American Fidelity Assurance Co.*, 2013 WL 6047183 (D. Nev. 2013) as being similar to the County's involvement in this case. In *Peterson*, the only involvement of the school district was providing salary information, consenting to use of school property to market the plan, and consenting to remit the premium through payroll deductions. The claimant argued that the plan was part of the collective bargaining agreement, but the Court rejected that argument. In this case, the County's involvement with the plan, as summarized above, was much more extensive, with one of the most glaring differences being that, in *Peterson*, the school district never contributed any money towards maintaining the plan. The *Peterson* Court's discussion of the collective bargaining agreement was minimal, whereas the GAA's bargaining with the County kept the Standard Insurance Company of Oregon policy in force until it was replaced by the Reliance Standard policy, kept the County performing the administrative functions and the County resumed its contributions to the premium payments. Furthermore, the *Peterson* Court gave no consideration to federalism.

Defendant's argument that the County performed its administrative functions on behalf of the GAA, is not supported by authority and conflates what happens during labor negotiations with how benefit plans are administered after the negotiations are completed. The reality of labor negotiations is that employers would rather offer less benefits and services and employee organizations negotiate for more benefits and services. In the present case, while the Standard Insurance Company of Oregon policy, with the County as policy holder, remained in force, the

County and the GAA negotiated and the County agreed to continue its administrative services. Following that agreement, the County continued to administer the LTD plan as it had always done, and endorsed it by posting the policy on the website, delivering policy booklets, answering employees' questions, and providing claims assistance and claim forms. The negotiations between the County and the GAA continued as the County's financial condition improved, it resumed its contribution of premium prior to the denial of Plaintiff's claim, and its premium rebates covered the period of time when Plaintiff attempted to return to work.

Defendant argues that there was no collective bargaining citing *Pierson v. Continental Cas. Co.*, 2000 WL 1879895, *10 (C.D. Cal. 2000). In *Pierson*, the claimant purchased two individual income protection policies, and there was no group policy involved. The government entity in that case agreed to certain administrative and endorsement activities sufficient to take the plan out of the safe harbor regulations. The Court found that the agreement to do so took place outside of the collective bargaining context, whereas the agreements in this case were part of collective bargaining. The *Pierson* Court failed to discuss the federalism issue.

In sum, the evidence shows that the County continuously maintained the plan, and was doing so at the time that Plaintiff's claim was denied. Any other result would have the plan flip flopping back and forth between being a governmental plan, then an ERISA plan, then a governmental plan again, and there is no authority to support such a result.

**E. The LTD Plan is Part of the County's Employee Benefits Program, from Which it Should not be Separated.**

Plaintiff's moving papers, pg. 12-14 cited authorities for the proposition that an employer's benefit program should be evaluated as a whole, not unbundled into different components, some of which are subject to ERISA and some of which are not.

In opposition, Defendant argues that the County separated the LTD coverage from the rest of its benefit plan via the 2011 MOU, and cites *Laventure v. Prudential Insurance Co. of America*, 237 F.3d 1042 (9th Cir. 2001). In *Laventure*, an insurer argued that a non-ERISA policy had become an ERISA policy because, a year after purchasing the non-ERISA policy, the employer had purchased an ERISA policy for an employee. The Court held that the original policy was not

an ERISA policy because all the benefits flowed to the business owner. 237 F.3d at 1047. The Court also said the insurer had not produced evidence to establish that the non-ERISA policy and the ERISA policy were intertwined so as to constitute one overall benefit plan. *id.* In this case, Defendant argues that the *Laventure* case supports its position that the LTD plan is not a governmental plan because it is not entwined with the County's other benefit plans.

The *Laventure* case has little or nothing in common with the facts in this case, and nothing to do with governmental plan issues. The facts show that the LTD plan is extensively intertwined with the rest of the County's plans. RSS 43, 86-90.

**F. <u>Defendant's Arguments about the Safe Harbor Regulations are Ineffective.</u>**

Defendant's Moving Papers, pg. 16, ln. 4-9 and Reply Brief, pg. 10, cite the safe harbor regulations, 29 CFR § 2510.3-1(j), for the proposition that an employer that is providing only ministerial services cannot be found to have established or maintained a plan. That is not what the regulation says. The regulation specifies certain actions that will keep an employee benefit program <u>from becoming</u> an ERISA plan. As the parties agree that the safe harbor regulations do not apply, this regulation has no relevance to the issue of whether the plan is a governmental plan exempt from ERISA.

Defendant also argues that the LTD plan cannot be a governmental plan because the County was neutral about the plan. In doing so, Defendant again conflates negotiations between the GAA and the County, in which the County was trying to offer less benefits and do less work, with the reality that after the negotiations were concluded, where the County kept the Standard Insurance Company of Oregon policy in force, reviewed the Reliance Standard policy, resumed contributing to the Reliance Standard policy, and took all of the other actions discussed above. Defendant cites *Wilson v. Provident Life & Acc. Ins. Co.*, 101 F.Supp.3rd 1038, 1043 (W.D. Wa. 2015) for the proposition that an employee organization's lack of neutrality was a reason to find that the plan at issue was not a governmental plan. However, the *Wilson* decision identifies the primary reasons for its finding the fact that the plan was created for the benefit of the plan's non-governmental employees who contributed to the plan, and the lack of school district involvement in the plan. 101 F.Supp.3rd at 1044.

Defendant's Reply Brief cites a safe harbor case for the proposition that a plan sponsor must have an expressed intention to provide benefits on a regular and long term basis. *Wickman v. Northwestern Nat. Ins. Co.*, 908 F.2d 1077, 1083 (1st Cir. 1990). In *Wickman*, the claimant argued that a life insurance policy fell under the safe harbor regulations. The Court found that the employer's purchase of the life insurance was not an isolated incident, but was part of a comprehensive insurance program offering health, medical, dental and life insurance, as well as other forms of insurance and benefits. 908 F.2d at 1083. The Court held that this type of activity constituted an intention by the employer to provide benefits on a regular basis, and the insurance plan at issue did not fall into the safe harbor regulations. This has little to do with the present case, except it generally supports Plaintiff's contention that the County's plans should not be unbundled into areas of state and federal jurisdiction.

### G. <u>Defendant Has Not Met its Burdon of Proof</u>

Because Reliance Standard's claim of ERISA preemption is a federal defense in this lawsuit, the burden is on Defendant to prove the facts necessary to establish it. *Kanne v. Connecticut General Life Ins. Co.*, 867 F.2d 498, 492 n.4 (9th Cir. 1988), citing to *Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 61, 107 S. Ct. 1542, 1546, 95 L. Ed. 2d 55 (1987). Defendant has not met its burden, and so its motion must be denied.

## III. CONCLUSION

For the reasons discussed above, the long term disability plan, including the Reliance Standard policy, which provides benefits to the attorneys employed by the County and represented by the GAA, is a governmental plan exempt from ERISA, and Plaintiff's state law claims are not preempted. Therefore, Plaintiff's motion should be granted.

Dated: August 11, 2016

ROSE PERKINS PELMULDER

By: /s/ Charles B. Perkins
CHARLES B. PERKINS
Attorneys for Plaintiff
ROXY HARIRI