CHARLES B. PERKINS #126942
SUSAN D. PELMULDER #234731
ROSE PERKINS PELMULDER
A Professional Association
59 North Santa Cruz Avenue, Suite Q
Los Gatos, California 95030
(408) 399 – 4566 voice
(408) 399 – 6683 facsimile
cbperk@earthlink.net
sue@pelmulder.com

Attorneys for Plaintiff
ROXY HARIRI

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

ROXY HARIRI,

Plaintiff,

v.

RELIANCE STANDARD LIFE INSURANCE COMPANY,

Defendant.

Case No.: 5:15-cv-03054-EJD

REPLY SEPARATE STATEMENT OF PLAINTIFF ROXY HARIRI IN SUPPORT OF HER CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT RE: ERISA PREEMPTION AND IN RESPONSE TO DEFENDANT'S CROSS-MOTION AND SEPARATE STATEMENT

Date: August 18, 2016
Time: 9:00 a.m.
Courtroom: 4
Hon. Edward J. Davila

Action Filed: July 1, 2015
Trial Date: None

## REPLY/RESPONSIVE SEPARATE STATEMENT OF DEFENDANT RELIANCE STANDARD

Beginning at **page 11** of this document, defendant Reliance Standard Life Insurance Company ("Reliance Standard") replies to the Additional Facts submitted by plaintiff Roxy Hariri ("plaintiff") in support of her cross-motion. Nothing has been added as to the first 42 facts.

| **Claim or Defense:** | **Reliance Standard's Undisputed Facts/ Supporting Evidence** | **Roxy Hariri's Response/Supporting Evidence** |
|---|---|---|
| **22nd Affirmative defense to the FAC: ERISA Preemption** | | |
| **Facts:** | | |
| **1.** Plaintiff began work for the County of Santa Clara ("the County") as a Deputy District Attorney on September 17, 2001. | First Amended Complaint ("FAC"), ¶ 6, **Fannon Dec., ¶ 3 & Ex. B 002.** | Undisputed. |
| **2.** Plaintiff was a member of the Santa Clara County Government Attorneys' Association (the "GAA"). | FAC, ¶ 14, **Fannon Dec., ¶ 3 & Ex. B 003.** | Undisputed. |
| **3.** The County recognized the GAA as the exclusive bargaining representative for all classified and unclassified attorneys in coded classifications within the GAA bargaining unit. | 2011 Memorandum of Agreement ("2011 MOU"), section 1, Plaintiff's Sixth Supplemental Disclosure, Ex. 8, **Fannon Dec., ¶ 9 & Ex. H 010.** | Undisputed. |
| **4.** On December 19, 2012, Plaintiff ceased working because of a claimed disability. | Family and Medical Leave Request Form, contained n documents produced on May 27, 2016, by Santa Clara County pursuant to subpoena, **Fannon Dec., ¶ 6 & Ex. E 002-003.** | Undisputed. |
| **5.** Over a period of several years, LTD benefits for County attorneys who were members of the GAA were funded by a series of group disability insurance policies issued by various insurance carriers to the County as the policyholder pursuant to various collective bargaining agreements between the County and the GAA. | Zarzana Dec. at ¶¶ 10-12, Plaintiff's Sixth Supplemental Disclosure, **Fannon Dec., ¶ 9 & Ex. H 004.** | Undisputed, but incomplete.<br><br>Plaintiff's Facts No. 43, 46, 47, 53, 54, 55, and Ex 9-17 and 10-20. |

| | | |
|---|---|---|
| **6.** Participants contributed toward the premium cost of the LTD insurance via payroll deduction and, at least during some periods of time, the County contributed a portion of the premium cost. | Zarzana Dec. at ¶¶ 14-15, Plaintiff's Sixth Supplemental Disclosure, **Fannon Dec., ¶ 9 & Ex. H 004-005.** | Disputed. The County currently pays, and at times in the past has paid, 100% of the cost of the LTD plan.<br><br>Plaintiff's Facts Nos. 45, 67. |
| **7.** In 2011, the County and the GAA executed a Memorandum of Agreement (also referred to as a "Memorandum of Understanding") covering the terms and conditions of employment of GAA members for the period September 5, 2011 – September 1, 2013. | 2011 MOU, Plaintiff's Sixth Supplemental Disclosure, **Fannon Dec., ¶ 9 & Ex. H 008.** | Undisputed. |
| **8.** Among other things, the 2011 MOU provided as follows:<br><br>Effective September 5, 2011, the County will stop payments of up to $0.45/$100 of covered salary pursuant to the Long Term Disability (LTD) insurance side letter between the County and GAA signed October 10, 1997. Effective September 5, 2011 employees shall pay all premium costs for LTD insurance coverage (currently through The Standard Insurance Company), which shall continue to be deducted from the employees' paycheck. *Effective no later than March 4, 2012, the County will stop administering the LTD plan as the Employer Plan Sponsor. At least 60 calendar days prior to March 4, 2012, the County and GAA shall meet and confer regarding other options for administration of an LTD plan should GAA wish to continue LTD plan coverage specific for its members.*<br><br>(Emphasis added.) | 2011 MOU, Section 14.7, **Fannon Dec., ¶ 9 & Ex. H 020-21.** | It is undisputed that the quoted words appear in the 2011 MOU. However, the GAA continued to negotiate with the County and, as of November 18, 2011, the County agreed to continue the status quo with regard to the day to day administration of the plan.<br><br>Facts 18 and 19, and Plaintiff's Additional Facts No. 51-55. |

| | | |
|---|---|---|
| **9.** Pursuant to the 2011 MOU, on August 22, 2011, the County wrote to the existing LTD insurance carrier to provide it with "formal notice of termination" of the policy. The letter went on to state:<br><br>As an outcome of recent negotiations with our government attorney bargaining groups, the County and these groups have mutually agreed to terminate this policy as one of several benefit concessions in order to help the County achieve the necessary budget savings to balance its budget this fiscal year. | Peter Ng letter to The Standard Ins. Co., dated August 22, 2011, contained in documents produced on June 8, 2016, by Santa Clara County pursuant to subpoena, **Fannon Dec., ¶ 8 & Ex. G 046.** | It is undisputed that an unsigned letter from Peter Ng dated August 22, 2011 was included in the documents produced by the County of Santa Clara on June 8, 2016. John Pivirotto responded to that letter and advised Mr. Ng that it was not sufficient to terminate the policy. There was no further communication about terminating the policy, and it remained in effect.<br><br>3rd Supp. Decl. Pivirotto, ¶¶ 2, 3 & 4. |
| **10.** On the same date, the County wrote to insurance broker, John Pivirotto, to inform him of the termination, to say that negotiations with GAA were ongoing, and to say that one of the things the County hoped to accomplish was to terminate the policy in its entirety in which case "GAA may seek to obtain its own LTD coverage policy for its members; the County would not be involved." | Peter Ng email to John Pivirotto, dated August 22, 2011, contained in documents produced on June 8, 2016, by Santa Clara County pursuant to subpoena, **Fannon Dec., ¶ 8 & Ex. G 042.** | It is undisputed that an unsigned letter from Peter Ng dated August 22, 2011 was included in the documents produced by the County of Santa Clara on June 8, 2016. John Pivirotto responded to that letter and advised Mr. Ng that it was not sufficient to terminate the policy. There was no further communication about terminating the policy, and it remained in effect.<br><br>3rd Supp. Decl. Pivirotto, ¶¶ 2, 3 & 4. |
| **11.** On October 3, 2011, Kevin Smith, Treasurer of GAA, authored an email to various individuals, including County officials, stating that he was "presiding over the GAA's committee tasked with recommending any changes to our Long Term Disability Plan." He noted that GAA made "multiple requests over the past month or | Kevin Smith email to Mitchell Buellesbach, et al., dated October 3, 2011, contained in documents produced on June 8, 2016, by Santa Clara County pursuant to subpoena, **Fannon Dec., ¶ 8 & Ex. G 040.** | Undisputed, but the email string cited by Defendant is incomplete.<br><br>Plaintiff's Additional Facts Nos. 51-55. |

| | | |
|---|---|---|
| more to [the County] to provide us with a census of our members to be able to put out a request for bids to insurance carriers for this policy." | | |
| **12.** On October 6, 2011, Smith authored another email to the County stating that:<br><br>On behalf of GAA, Financial Concepts has hired Kathy Miller as a consultant in an effort to determine what will be required for the administration of the GAA LTD Plan. In that capacity, Ms. Miller is authorized to contact the County to obtain census data, other information and obtain answers to any questions we [*sic*] questions we may have about the County's process for the administration of this Plan. | Kevin Smith email to Peter Ng, dated October 6, 2011, contained in documents produced on June 8, 2016, by Santa Clara County pursuant to subpoena, **Fannon Dec., ¶ 8 & Ex. G 039.** | Undisputed, but the email string cited by Defendant is incomplete.<br><br>Plaintiff's Additional Facts Nos. 51-55. |
| **13.** On October 12, 2011, Mr. Smith authored another email, asking if there was "[a]ny progress on getting information out of [the County] for the GAA's transition from county administration of the Long Term Disability plan?" | Kevin Smith email to Mitchell Buellesbach, dated October 12, 2011, contained in documents produced on June 8, 2016, by Santa Clara County pursuant to subpoena, **Fannon Dec., ¶ 8 & Ex. G 037.** | Undisputed, but the email string cited by Defendant is incomplete.<br><br>Plaintiff's Additional Facts Nos. 51-55. |
| **14.** The response from the County was that the individual at the County who was responsible for providing the information was "budgeting his time based on the March 4, 2012 date in the MOA." | Mitchell Buellesbach email to Kevin Smith, dated October 24, 2011, contained in documents produced on June 8, 2016, by Santa Clara County pursuant to subpoena, **Fannon Dec., ¶ 8 & Ex. G 031.** | Undisputed, but the email string cited by Defendant is incomplete.<br><br>Plaintiff's Additional Facts Nos. 51-55. |
| **15.** In further correspondence dated October 26, 2011, Mr. Smith responded by asking "why does he get to budget his time | Kevin Smith email to Mitchell Buellesbach, dated October 26, 2011, contained in documents | Undisputed, but the email string cited by Defendant is incomplete. |

| | | |
|---|---|---|
| when the burden to replace this plan is on us?" | produced on June 8, 2016, by Santa Clara County pursuant to subpoena, **Fannon Dec., ¶ 8 & Ex. G 031.** | Plaintiff's Additional Facts Nos. 51-55. |
| **16.** On November 8, 2011, the County responded with the requested census information. | Peter Ng email to Kevin Smith, dated November 8, 2011, contained in documents produced on June 8, 2016, by Santa Clara County pursuant to subpoena, **Fannon Dec., ¶ 8 & Ex. G 028.** | Undisputed, but the email string cited by Defendant is incomplete.<br><br>Plaintiff's Additional Facts Nos. 51-55. |
| **17.** On May 8, 2012, GAA informed the County that "GAA voted today to switch providers for our LTD policy," and that it would obtain a group LTD policy from Reliance Standard. | Kevin Smith email to Peter Ng, dated May 8 2012, contained in documents produced on June 8, 2016, by Santa Clara County pursuant to subpoena, **Fannon Dec., ¶ 8 & Ex. G 022.** | Undisputed, but the email string cited by Defendant is incomplete.<br><br>Plaintiff's Additional Facts Nos. 56-58. |
| **18.** The County responded by asking if GAA would rely on the County for "paycheck deductions and other assistance." | Peter Ng email to Kevin Smith, dated May 8, 2012, contained in documents produced on June 8, 2016, by Santa Clara County pursuant to subpoena, **Fannon Dec., ¶ 8 & Ex. G 015.** | Undisputed, but the email string cited by Defendant is incomplete.<br><br>Plaintiff's Additional Facts Nos. 56-58. |
| **19.** GAA replied in the affirmative. | Maximilian Zarzana email to Peter Ng, dated May 8, 2012, contained in documents produced on June 8, 2016, by Santa Clara County pursuant to subpoena, **Fannon Dec., ¶ 8 & Ex. G 014.** | Undisputed, but the email string cited by Defendant is incomplete.<br><br>Plaintiff's Additional Facts Nos. 56-58 |
| **20.** The County replied that it would like to review the new policy and requested that the broker summarize the differences between the old policy and the new. | Peter Ng emails to Maximilian Zarzana, dated May 8, 2012, and John Pivirotto, contained in documents produced on June 8, 2016, by Santa Clara County pursuant to subpoena, **Fannon Dec., ¶ 8 & Ex. G 011, 14.** | Undisputed, but the email string cited by Defendant is incomplete.<br><br>Plaintiff's Additional Facts Nos. 56-58. |

| | | |
|---|---|---|
| **21.** GAA responded that<br><br>John [the broker] has put in a lot of time to get GAA (and potentially County Counsel) a great new provider and plan. GAA has met and voted to accept the new plan. County Counsel representatives were present during our committee meetings and general membership meeting today when the new plan was discussed. I am not sure what reason the County would have in asking for such information from [the broker]. | Max Zarzana email to Peter Ng dated May 8, 2012, contained in documents produced on June 8, 2016, by Santa Clara County pursuant to subpoena, **Fannon Dec., ¶ 8 & Ex. G 011.** | Undisputed, but the email string cited by Defendant is incomplete. See Plaintiff's Additional Facts Nos. 56-58. |
| **22.** The County responded that it "would have hoped that John and/or GAA would have offered [the County] a chance to review the new policy(ies) in advance in case there may be some issues that are of concern for us, particularly since GAA is expecting the County to provide that administration." | Peter Ng email to Maximilian Zarzana, dated May 9, 2012 contained in documents produced on June 8, 2016, by Santa Clara County pursuant to subpoena, **Fannon Dec., ¶ 8 & Ex. G 010.** | Undisputed, but the email string cited by Defendant is incomplete. See Plaintiff's Additional Facts Nos. 56-58. |
| **23.** GAA replied as follows:<br><br>Our deal with Reliance involves short term and long term components.<br><br>. . .<br><br>As for involving the county, I have got to say that you have been pretty clear since we signed our new MOU that you do not have the resources to get involved in any discussions with us about the LTD . . . The county made it quite clear that we were on our own with the LTD during | Kevin Smith email to Peter Ng, dated May 9, 2012, contained in documents produced on June 8, 2016, by Santa Clara County pursuant to subpoena, **Fannon Dec., ¶ 8 & Ex. G 009.** | Undisputed, but the email string cited by Defendant is incomplete. See Plaintiff's Additional Facts Nos. 56-58. |

| | | |
|---|---|---|
| our negotiations. | | |
| **24.** Effective June 25, 2012, Reliance Standard issued a group LTD policy to GAA as the policyholder. | FAC, ¶ 11, **Fannon Dec., ¶ 3 & Ex. B 002;** Policy, **Fannon Dec., ¶ 2 & Ex. A 001-31.** | Undisputed. |
| **25.** The Preliminary Application for Group Insurance listed GAA as the "Prospective Policyholder" and was signed by the president of GAA. | Reliance Standard's Third Supplemental Disclosures served on June 7, 2016, **Fannon Dec., ¶ 7 & Ex. F 001.** | Undisputed. |
| **26.** Eligible Classes under the LTD policy were limited to "Each active, Full-time member of the Santa Clara County: (a) Government Attorneys Association . . . who is employed by the County of Santa Clara except for any person employed on a temporary or seasonal basis." | Policy, **Fannon Dec., ¶ 2 & Ex. A 007.** | Disputed. The full text of the policy language describing eligible classes is as follows: "Each active, Full-time member of the Santa Clara County: (a) Government Attorney's Association and (b) County Counsel Attorney's Association; who is employed by the County of Santa Clara except any person employed on a temporary or seasonal basis." Defendant's Ex. A 007. |
| **27.** The cover page of the Policy Certificate booklet, available on the County website, contained the title "Santa Clara County Government Attorneys Association." | Reliance Standard's Second Supplemental Disclosures, **Fannon Dec., ¶ 5 & Ex. D 004.** | Undisputed. However, the text of the Policy Certificate refers to the County of Santa Clara, rather than the GAA, on Pages D 16 (2x), D 17, D 20, D 28, D 29 (2x), D 32 (2x), D 39, and D 40 (2x). Other provisions of the policy make no sense unless the word "Policy holder" is read to refer to the County of Santa Clara: "If you were covered under any group long term disability insurance plan maintained by the Policy holder prior to the Policy's Effective Date, you will be insured under the Policy,…(D 35)" |
| **28.** The booklet also included a description of the benefit claim process that mirrors the requirements of ERISA's claim regulations at 29 C.F.R. | Reliance Standard's Second Supplemental Disclosures, **Fannon Dec., ¶ 5 & Ex. D 054 ff.** | Undisputed. |

| | | |
|---|---|---|
| §2560.503-1. | | |
| **29.** The booklet also included the "ERISA Statement of Rights" required by ERISA-governed summary plan descriptions. | Reliance Standard's Second Supplemental Disclosures, **Fannon Dec., ¶ 5 & Ex. D 064 ff.** | Undisputed, but the language is equivocal: "As a participant in the Group Insurance Plan, you may be entitled to certain rights and procedures in the event that the Employee Retirement Income Security Act of 1974 (ERISA) applies." D 064 |
| **30.** Also on the County's website is a memorandum dated July 18, 2012, confirming the "Administrative Agreement by and between Reliance Standard Life Insurance Company . . . and the above named Policyholder" which was effective June 25, 2012 and confirming various premium amounts. The Policyholder identified in the memorandum is "Santa Clara Government Attorneys Association Executive Committee." | Reliance Standard's Second Supplemental Disclosures, **Fannon Dec., ¶ 5 & Ex. D 003.** | Undisputed. |
| **31.** Plaintiff's date of disability was December 19, 2012. | FAC, ¶ 25, **Fannon Dec., ¶ 3 & Ex. B 004**; Letter to plaintiff approving claim, Reliance Standard Initial Disclosures, **Fannon Dec., ¶ 2 & Ex. A 032-33.** | Undisputed. |
| **32.** The Policy's Recurrent Disability provision stated:<br><br>If an Insured returns to Active Work for less than six (6) months, a recurrent Total Disability for the same or related cause will be part of the same Total Disability. A new Elimination Period is not required. Our liability for the entire period will be subject to the terms of this Policy for the original period of Total Disability. | Policy, Reliance Standard Initial Disclosures, **Fannon Dec., ¶ 2 & Ex. A 019.** | It is undisputed that the quoted language is part of the Reliance Standard policy. |
| | | |

| | | |
|---|---|---|
| **33.** Plaintiff returned to work for a few weeks, from November 12, 2013, to January 21, 2014. | FAC, ¶¶ 29, 31, **Fannon Dec., ¶ 3 & Ex. B 004-05.** | It is undisputed that Ms. Hariri attempted to return to work starting November 12, 2013, and that she requested that her disability benefits be reinstated as of January 22, 2014. Ex. B, 004-05. |
| | | |
| **34.** Under the Recurrent Disability Provision, plaintiff's date of disability remained December 19, 2012. | Policy, Reliance Standard Initial Disclosures, **Fannon Dec., ¶ 2 & Ex. A 019.** | Objection, Defendant's "Fact" No. 34 is a legal conclusion, not a fact. The policy's "recurrent disability" provision does not contain the words "date of disability." Ex. A 019. |
| | | |
| **35.** As of her date of disability, December 19, 2012, she was a participant in the LTD plan insured by Reliance Standard. | FAC, ¶¶ 14, 26, **Fannon Dec., ¶ 3 & Ex. B 003-04.** | It is undisputed that, as of December 19, 2012, Plaintiff was a participant in the LTD Plan insured by Reliance Standard. |
| | | |
| **36.** Pursuant to the 2011 MOU, the County was not contributing toward premiums for the LTD coverage at that time. | 2011 MOU, Section 14.7, **Fannon Dec., ¶ 9 & Ex. H 020-21.** | It is undisputed that, as of December 19, 2012, the County was not contributing towards the Reliance Standard insurance policy premium. |
| | | |
| **37.** Reliance Standard paid plaintiff's claim until November 12, 2013, when she returned to work. | November 15, 2013 letter from Reliance Standard to Plaintiff, Reliance Standard's Initial Disclosures, **Fannon Dec., ¶ 2 & Ex. A 034-35.** | Undisputed. |
| | | |
| **38.** Plaintiff ceased working again as of January 21, 2014. | FAC, ¶ 31, **Fannon Dec., ¶ 3 & Ex. B 005**. | Undisputed. |
| | | |
| **39.** Reliance Standard denied plaintiff's further claim for disability, as well as her appeal. | FAC, ¶¶ 34, 51, **Fannon Dec., ¶ 3 & Ex. B 005**, **B 007.** | Undisputed. |
| | | |
| **40.** Reliance Standard's April 8, 2014 letter denying her claim contained language referencing ERISA and Plaintiff's right to appeal the decision pursuant to the ERISA claim process. | April 8, 2014 letter from Reliance Standard to Plaintiff, Reliance Standard's Initial Disclosures, **Fannon Dec., ¶ 2 & Ex. A 036, at A 043.** | Disputed. The section of the April 8, 2014 denial letter advising Plaintiff that she "may request a review" of the denial says nothing about the ERISA claim process. A few |

| | | |
|---|---|---|
| | | paragraphs down, there is equivocal language referencing an ERISA civil action. Ex. A 042-043. |
| **41.** Plaintiff did file an appeal. | FAC, ¶ 38, **Fannon Dec., ¶ 3 & Ex. B 005**. | Undisputed. |
| **42.** Reliance Standard's May 19, 2015 letter denying plaintiff's appeal also contained language referencing ERISA and plaintiff's right to file a civil action under ERISA's civil enforcement provisions. | May 19, 2015 letter from Reliance Standard to Plaintiff, Reliance Standard's Initial Disclosures, **Fannon Dec., ¶ 2 & Ex. A 045, at A 059.** | Undisputed. However, the language in the May 19, 2015 letter referencing ERISA is equivocal; "In the event that her claim is subject to [ERISA]. . ." Ex. A 059. |
| **Plaintiff's Claim for Breach of Contract** | | |
| The foregoing facts, 1-42, support ERISA preemption of this claim. | | Disputed. See responses above and Additional Facts below. |
| **Plaintiff's Claim for Breach of the Implied Covenant of Good Faith and Fair Dealing** | | |
| | | |
| The foregoing facts, 1-42, support ERISA preemption of this claim. | | Disputed. See responses above and Additional Facts below. |
| **Plaintiff's Claim for Punitive Damages** | | |
| The foregoing facts, 1-42, support ERISA preemption of this claim. | | Disputed. See responses above and Additional Facts below. |

## RESPONSE/REPLY TO PLAINTIFF'S ADDITIONAL FACTS

| **Claim or Defense:** | **Reliance Standard's Response/Supporting Evidence** | **Roxy Hariri's Undisputed Facts/ Supporting Evidence** |
|---|---|---|
| **The employee benefit plan providing LTD benefits to the County employees represented by the GAA is a governmental plan exempt from ERISA.** | | |
| **1. The LTD plan providing LTD benefits to the attorneys employed by** | Disputed. The 2011 MOU severed the LTD plan from the other plans mentioned by stating that the County | **Fact 43**: The 2011 MOU, 2014 MOA and 2015 MOA cover agreements between the GAA and County concerning other employment benefits, |

| | | |
|---|---|---|
| **the County and represented by the GAA is part of a larger benefits plan from which it should not be separated.** | would no longer sponsor the LTD plan after March 4, 2012.<br>See 2011 MOU, Section 14.7, **Fannon Dec., ¶ 9 & Ex. H 020-21**; *Laventure v. Prudential Ins. Co. of America,* 237 F.3d 1042, 1047 (9th Cir. 2001) (absent evidence that plans are "intertwined," they do not constitute "one overall benefit plan"). | including medical insurance, dental insurance, vision insurance and life insurance, as well as the LTD benefit.<br>Zarzana Decl. ¶¶ 8, 9, 24; and Ex. 8-11 to 8-14, Ex. 9-14 to 9-17; and Ex. 10-17 to 10-20. |
| | Undisputed but irrelevant; "compliance with ERISA's procedural requirements . . . is not a prerequisite to ERISA coverage." *Orozco v. United Air Lines, Inc.*, 887 F.2d 949, 952 (9th Cir. 1989). | **Fact 44**: Neither the County nor the GAA has ever filed an IRS form 5500.<br><br>Pelmulder Decl. ¶5 & Ex. 14-1 to 14-3; Perkins Decl. ¶5 & Ex. 18-4. |
| **2. The County established the LTD plan** | Undisputed, but occurrences in 1992 are irrelevant. The County was not paying the premiums for the LTD policy as of December 19, 2012, the date of plaintiff's disability.<br>See **Fact No. 36** above and plaintiff's response. | **Fact 45**: In January, 1992, the County purchased and paid 100% of the premium for a group long term disability insurance policy to cover the attorneys represented by the GAA.<br><br>Pivirotto Decl. ¶¶ 3, 4, Exhibit 1. |
| | Undisputed, but occurrences in 1992 are irrelevant. The County was not paying the premiums for the LTD policy as of December 19, 2012, the date of plaintiff's disability.<br>See **Fact No. 36** above and plaintiff's response. | **Fact 46:** The County's action in adding the LTD benefit to the GAA attorney's benefit package in 1992 was the result of negotiations between the GAA and the County.<br>Rosenblatt Decl. ¶¶ 2-4. |
| | Undisputed that LTD coverage was continuously in place for GAA members, but also irrelevant given that the County was not paying the premiums for the LTD policy as of December 19, 2012, the date of plaintiff's disability and no longer | **Fact 47**: Since the initial purchase of long term disability ("LTD") insurance by the County in 1992, there has been continuous long term disability coverage in place for the attorneys employed by the County and represented by the GAA.<br>Pivirotto Decl. ¶¶ 5-18; Pivirotto 2nd Supp. Decl. ¶ 2. |

| | | |
|---|---|---|
| | sponsoring the LTD coverage as of the 2011 MOU.<br><br>See **Fact No. 36** above and plaintiff's response. | |
| **3. The County maintained the LTD plan** | Undisputed but irrelevant, given that the County was not paying the premiums for the LTD policy as of December 19, 2012, the date of plaintiff's disability and no longer sponsoring the LTD coverage as of the 2011 MOU.<br><br>See **Fact No. 36** above and plaintiff's response. | **Fact 48**: As of October 10, 1997, the County and the GAA entered into an agreement in which the County agreed to contribute at the rate of up to $.45 per $100 of covered payroll to pay for the long term disability coverage, and this continued until September 5, 2011.<br><br>Pivirotto Supp. Decl., ¶ 2 & Ex. 6; Pivirotto Decl. ¶¶ 7, 11. |
| | Undisputed but irrelevant, given that the County was not paying the premiums for the LTD policy as of December 19, 2012, the date of plaintiff's disability and no longer sponsoring the LTD coverage as of the 2011 MOU.<br><br>See **Fact No. 36** above and plaintiff's response. | **Fact 49**: As the premium rate per $100 of covered payroll increased, the County employees represented by the GAA would pay the County via payroll deductions the amount necessary to make up the difference between the amount of premium contributed by the County and the total premium due, and the County continued to make the full premium payments.<br><br>Pivirotto Decl. ¶¶ 8-10 and Ex. 2. |
| | Undisputed that Max Zarzana's declaration contains this statement, but not relevant (a) because the existence of an ERISA plan is a question of fact, *Kanne v. Connecticut Gen. Life Ins. Co.*, 867 F.2d 489, 492 (9th Cir. 1988), not of speculation about future intentions; and (b) the fact was that, in the 2011 MOU, the County repudiated sponsorship of the LTD and thereby severed it from the other County-sponsored plans. | **Fact 50:** The GAA made the concessions to the County on LTD coverage in the 2011 MOU in consideration of the County's difficult financial position at that time, and with the expectation that the issue would be revisited in future negotiations as the County's financial position improved.<br><br>Zarzana Decl. ¶ 15 |

| | | |
|---|---|---|
| | Undisputed; however, the County's (Peter Ng's) response confirmed the County's refusal to administer the LTD plan, stating that the County "simply [didn't] have enough staffing resources to administer more than one voluntary LTD plan for County employees . . . ."<br><br>Perkins Decl. ¶6 & Ex. 19-5. | **Fact 51**: On November 9, 2011 Kevin Smith of the GAA wrote to the County with questions about future administration of the plan.<br><br>Perkins Decl. ¶6 & Ex. 19-5. |
| | Undisputed that Mr. Smith's email contained these questions, but his questions related only to payroll deductions for the cost of the LTD insurance. Under the safe harbor regulation, 29 C.F.R. § 2510.3-1(j), collection of premiums through payroll deductions does not establish plan sponsorship. Ceasing to deduct them similarly would not impact the ERISA status of the LTD plan. | **Fact 52**: On November 18, 2011, Mr. Smith emailed to the County some more questions, as follows:<br><br>1. Is the County going to continue to start, stop and re-start payroll deductions for employees enrolled in the GAA plan?<br>2. Is the County going continue to calculate the integration of sick leave & Vacation balances with the LTD plan?<br>3. Is the County going to enter the integrated salary amount in the County's HR/Payroll system?<br>4. Is the County going to provide/complete the employer portion of the claims form from Standard?<br><br>Perkins Decl. ¶6 & Ex. 19-3 to 19-4. |
| | Undisputed but incomplete; the sentence preceding the quoted phrase in the same email by Peter Ng states, "If there are any delays in working out *the transition out of the County administering the LTD policy*, we will own that."<br><br>Perkins Decl. ¶6 & Ex. 19-3 (emphasis added). | **Fact 53**: On November 18, 2011, Peter Ng of the County responded to Mr. Smith's email by asking whether continuing the "status quo for a period longer will not be problematic for your group."<br><br>Perkins Decl. ¶6 & Ex. 19-3. |
| | Undisputed; however, the context of these emails clarifies that the "status quo" referred to the payroll deduction questions referred to in Kevin Smith's | **Fact 54**: Mr. Smith responded to Mr. Ng on Nov. 18, 2011 stating: "on behalf of GAA, keeping the status quo is fine."<br><br>Perkins Decl. ¶ 6 & Ex. 19-3. |

| | | |
|---|---|---|
| | November 18, 2011 email quoted in plaintiff's Fact 52. It did not refer to wholesale sponsorship of the LTD plan. | |
| | Disputed. In emails in May 2012, the County and GAA continued to argue about who was administering the LTD plan and in what respects.<br><br>See **Fannon Dec., Ex. G008-009** and **Facts 17-23** above. | **Fact 55**: Following the November 18, 2011 correspondence about keeping the status quo in administering the LTD plan, there was no further correspondence about changing the administration of the LTD plan, and the County has continued to perform the day-to-day administrative activities connected with the LTD plan the same as it did before the 2011 MOU.<br><br>Zarzana Decl. ¶ 16 |
| | Undisputed but irrelevant; Mr. Pivirotto also sent the specimen contracts to Max Zarzana at GAA in the same email.<br><br>Perkins Decl. ¶6 & Ex. 19-2. | **Fact 56**: On May 10, 2012, John Pivirotto provided specimen contracts to Peter Ng at the County.<br><br>Perkins Decl. ¶ 6 & Ex. 19-2. |
| | Undisputed but irrelevant. At this point, the GAA had already agreed to obtain disability insurance from Reliance Standard without any input from the County. See **Facts 22-23.** The County's response only involved premium withholding-related issues. See **Defendant's response to Fact 58.** | **Fact 57**: When John Pivirotto received the "preliminary final policies" from Reliance Standard on July 20, 2012, he sent them to Peter Ng at the County and asked him to reply with any discrepancies he saw.<br><br>Pivirotto 2nd Supp. Decl. ¶ 8 & Ex. 11-3 |
| | Undisputed; however, the premium due date issues related only to payroll deductions, which only the employer (County) could do. | **Fact 58**: Mr. Ng replied to Mr. Pivirotto by email on July 25, 2012, pointing out a discrepancy and suggesting changes in the premium due dates to match the County's biweekly pay period start and end dates.<br><br>Pivirotto 2nd Supp. Decl. ¶ 8 & Ex. 11-1 |
| | Undisputed; however, in the same email, Mr. Pivirotto directed that the name "Santa Clara County Government Attorneys Association" appear on the front page of | **Fact 59**: When the policy was issued, 100 Certificate of Insurance booklets were delivered to the County HR department, 70 to John Pivirotto, and 30 to the GAA.<br><br>Perkins Decl. ¶8, & Ex. 20-1 to 20-2. |

| | | |
|---|---|---|
| | the certificate booklets. He did not direct that the County's name be on the cover.<br><br>Perkins Decl. ¶8, & Ex. 20-1 to 20-2. | |
| | Undisputed that Reliance Standard uses the name given on the preliminary application as the legal name for the policyholder. Disputed that Reliance Standard considered the County as the policyholder. The Policy's references to the County do not purport to modify the identification of the GAA as the "policyholder" on the first page of the Policy. The Corba deposition transcript makes clear her assumption that the old insurer and Reliance Standard had the same policyholder.<br><br>See Pelmulder Decl., Ex. 15-10:2-7 and Ex. 16-5:7-22; Fannon Dec., ¶2, Ex. A001. | **Fact 60**: When putting together the insurance contract, Reliance Standard uses the name given on the preliminary application as the legal name for the policy holder, but considered the County as the policyholder in the language of the policy terms, Certificate of Insurance, and claims communications.<br><br>Pelmulder Decl., ¶6, Ex. 15-8, p 34:8-24; Ex. 15-10-11, (Corba Depo.,p 42:20-43:9); Ex. D 16 (2x), D 17, D 20, D 28, D 29 (2x), D 32 (2x), D 39, and D 40 (2x), and D35, Ex. A016. Response to RSS 27. |
| | Undisputed that Reliance Standard does not make a determination whether a policy is subject to ERISA when it is putting the policy together. Disputed that there is no reference to ERISA in the policy issued to GAA. The Policy states, "This Policy is delivered in California and is governed by its laws and/or the Employee Retirement Income Security Act of 1974 ("ERISA") as amended, where applicable." | **Fact 61**. Reliance Standard does not make a determination of whether a policy is subject to ERISA or not when putting the contract together, and there is no reference to ERISA in the policy it issued to the GAA.<br><br>Pelmulder Decl., ¶6, Ex. 15-12 (Corba Depo., p 44:15-33); Ex. A 01-31 (Policy). |

| | | |
|---|---|---|
| | Fannon Decl., ¶2, Ex. A001. | |
| | Undisputed. However, neither GAA nor the County requested that the ERISA pages be removed from the certificate booklets.<br><br>**Fannon Supplemental Decl., ¶ 2 & Ex. I,** Corba Depo. at 49:18-51:13. | **Fact 62**: Reliance Standard automatically includes such language in all the Certificates it issues.<br><br>Pelmulder Decl., ¶6, Ex.15-14 (Corba Depo. p 47:5-9) |
| | Undisputed but irrelevant, because all eligibility information would have had to come from the employer, the County, regardless of who sponsored the plan. | **Fact 63**: Whenever she had any questions about her LTD coverage, Ms. Hariri asked the County HR Department, not the GAA. When she became disabled, she obtained claim forms from the County's HR Department, and worked with Elizabeth Lopez and Sylvia Hernandez at the County's HR Department.<br><br>Hariri Decl. ¶¶ 8, 9. |
| | Undisputed but irrelevant, because all eligibility information would have come from the employer, the County, regardless of who sponsored the plan. In addition, a claim handler's passing reference to the County as the policyholder does not effect a change in the Policy's actual terms. See the provision in the Policy entitled, **ENTIRE CONTRACT, CHANGES:**<br><br>This Policy, your Application, and any attached amendments constitute the entire contract between you and us. Any statement made by you will, in the absence of fraud be deemed a representation, not a warranty. No statement by an Insured will be used in defense of a claim under this Policy. No agent has | **Fact 64**: In October and November of 2013, there were multiple emails between the claims examiner at Reliance Standard (Constance Esposito) and Sylvia Hernandez in Employee Services at the County, in which Ms. Esposito referred to the County as the policyholder, and the County provided detailed information about Ms. Hariri.<br><br>Perkins Decl. ¶ 2 , Ex. 17-1 to 17-5. |

| | | |
|---|---|---|
| | authority to change or waive any part of this Policy. To be valid, any change or waiver must be in writing, signed by either our President, a Vice President, or a Secretary. The change or waiver must also be endorsed on or attached to this Policy.<br><br>Fannon Decl., ¶2, Ex. A013. | |
| | Undisputed. | **Fact 65**: The County is a political subdivision of the State of California.<br><br>Stipulated. |
| | Undisputed but irrelevant, as plaintiff had ceased working before December 10, 2013 and during the period when the County was not contributing toward the cost of the LTD coverage.<br><br>See **Fact No. 4** and plaintiff's response, above. | **Fact 66:** On December 10, 2013, the County agreed with the CCAA that the County would contribute to the LTD plan at the rate of $0.45/$100 of covered salary; that the County would "continue to administer" the plan; and that the County would refund employee contributions from June 24, 2013 though December 8, 2013. (emphasis added)<br><br>Pelmulder Decl. ¶4 , Ex. 13-19 |
| | Undisputed but irrelevant, as plaintiff had ceased working before June 24, 2013, during the period when the County was not contributing toward the cost of the LTD coverage, and plaintiff has submitted no evidence that she ever received any rebate of premiums.<br><br>See **Fact No. 4** and plaintiff's response, above. | **Fact 67**: The 2014 MOA records the County's agreement to contribute $0.45/$100 of salary to pay premiums for the LTD plan, and make refunds for the period from June 24, 2013 though December 8, 2013. The 2015 MOA records the County's agreement to pay 100% of the cost of the LTD plan.<br><br>Zarzana Decl. ¶¶ 23 – 25, Ex. 9-17 & Ex. 10-20. |
| | Undisputed but irrelevant, as the County was not paying any premium as of December 19, 2012, when plaintiff ceased working.<br><br>See **Facts Nos. 35 and 36** above and plaintiff's | **Fact 68**: The premium cost was $.663 per $100 of covered payroll for the Reliance Standard LTD policy.<br><br>Pivirotto Decl. ¶15. |

| | | |
|---|---|---|
| | responses to these facts. | |
| | Disputed and irrelevant. At the time plaintiff stopped working, on December 19, 2012, the County had ceased sponsoring the LTD plan. The 2011 MOU specifically and expressly removed LTD coverage from the collective bargaining agreement.<br><br>2011 MOU, Section 14.7, **Fannon Dec., ¶ 9 & Ex. H 020-21.** | **Fact 69:** The LTD plan is the product of collective bargaining between the GAA and the County.<br><br>Zarzana Decl. ¶¶ 8, 9, 13, and 24; and Ex. 8-11 to 8-14, Ex. 9-14 to 9-17, and Ex. 10-17 to 10-20. |
| | | **Fact 70:** All benefits provided by the County to its employees who are members of the GAA are matters of negotiation; in the absence of negotiation by the GAA, the County would offer less or take benefits away to save money.<br><br>Supp. Decl. of Zarzana ¶ 3. |
| | | **Fact 71:** In the negotiations for the 2011 MOA, the County's financial condition required the GAA to make concessions, and the LTD plan was identified as one of the areas where concessions could be made.<br><br>Supp. Decl. of Zarzana ¶ 4. |
| | | **Fact 72:** As a result of the negotiations for the 2011 MOA, the County agreed to keep the Standard Insurance Company of Oregon policy in force for a period of time and the GAA agreed to have its members pay the full premium.<br><br>Supp. Decl. of Zarzana ¶ 5. |
| | | **Fact 73:** The County was the policy holder for the Standard Insurance Company of Oregon Long Term Disability Policy which was in effect at the time of the 2011 MOU.<br><br>Perkins Decl. ¶7; and Ex. 20, p. 20-11 |
| | | **Fact 74:** The Standard Insurance Company of Oregon policy issued to |

| | | |
|---|---|---|
| | | the County of Santa Clara stayed in force until it was replaced by the Reliance Standard Life Insurance Company Long Term Disability Policy as of June 25, 2012.<br><br>Decl. of John Pivirotto dated March 24, 2016, ¶ 12. |
| | | **Fact 75:** The Reliance Standard policy was issued as a replacement for the Standard Insurance Company of Oregon policy, stating "if an employee was covered under any group long term disability insurance plan maintained by you prior to this Policy's Effective Date, that employee will be insured under this Policy, provided that he/she is Actively Act Work and meets all of the requirements for being an Eligible Person under this Policy on its Effective Date. If an employee was covered under the prior group long term disability insurance plan maintained by you prior to the Policy's Effective Date, but was not Actively at Work due to Injury or Sickness on the Effective Date of this Policy and would otherwise qualify as an Eligible Person, coverage will be allowed under the following conditions. . .<br><br>Fanon Decl., ¶ 2 and Ex. A A0212 |
| | | **Fact 76:** Relative to the future of the long term disability benefit, the County and the GAA agreed that would be a subject for continuing negotiations.<br><br>Supp. Decl. of Zarzana ¶ 6. |
| | | **Fact 77:** In making the concessions on the long term disability benefit that were necessary to reach overall agreement with the County on the 2011 MOA, it was always the intention of the GAA that the long term disability coverage would be continued and that the County would have to agree to continue to perform the day to day administrative tasks necessary to maintain the LTD benefit because the GAA does not have any staff. |

| | | |
|---|---|---|
| | | Supp. Decl. of Zarzana ¶ 7. |
| | | **Fact 78:** Following the 2011 MOA, the GAA continued to negotiate the administration of the LTD plan with the County, and the County de facto agreed to continue the day to day administration of the LTD plan exactly as it had before.<br><br>Supp. Decl. of Zarzana ¶ 8. |
| | | **Fact 79:** The County's functions in administering the LTD plan include, but are not limited to, maintaining records of who was insured, notifying Reliance Standard of all individuals eligible for coverage, maintaining a census of the people covered under the LTD plan, and making all premium payments.<br><br>Supp. Decl. of Zarzana ¶ 9. |
| | | **Fact 80:** It was always the GAA's intention to recover the concessions made in the 2011 MOA as the County's financial condition improved, and that has been done.<br><br>Supp. Decl. of Zarzana ¶ 10. |
| | | **Fact 81:** If the County had not agreed, as the result of the GAA's negotiations at the time of the 2011 MOA, to keep the existing LTD policy in force, or to continue its administration of the LTD plan, the LTD benefit would have ended. Therefore, the LTD plan was continued as a result of collective bargaining between the GAA and the County.<br><br>Supp. Decl. of Zarzana ¶ 11. |
| | | **Fact 82:** The County's agreement to take the actions necessary to keep the LTD benefit in place are of the same character as its agreements to provide medical insurance or any other benefit; it would rather not take the time or spend the money, but it agrees to do so as the result of negotiations with the GAA. |

| | | |
|---|---|---|
| | | Supp. Decl. of Zarzana ¶ 12. |
| | | **Fact 83:** The fact that the GAA as policyholder of the LTD policy has the ability to cancel the policy is no different than the situation that existed when the County was policyholder in that, if the GAA had asked the County to cancel the LTD policy, it would have been happy to do so, thereby saving time and expense.<br><br>Supp. Decl. of Zarzana ¶ 13. |
| | | **Fact 84:** If it is true that making temporary concessions on benefits causes the law applicable to those benefits to change from state law to federal law, with increased administrative burdens relating to record keeping, filing tax documents, and creating plan documents, that will limit the GAA's ability to be flexible in its negotiations with the County.<br><br>Supp. Decl. of Zarzana ¶ 14. |
| | | **Fact 85:** Max Zarzana received the County's rebate of premium paid for the LTD policy called for in the 2014 MOA as part of an undifferentiated lump sum, along with other rebates, paid to me by the County on March 7, 2014.<br><br>Supp. Decl. of Zarzana ¶ 15. |
| | | **Fact 86:** During the years Roxy Hariri worked for the County of Santa Clara (the County), she viewed the long term disability plan benefit as one of several benefits that came along with employment by the County, including medical coverage, dental coverage, life insurance coverage, retirement benefits and other benefits. Some of the benefits required deductions from my pay and others the County provided.<br><br>Supp. Decl. of Hariri ¶ 2. |
| | | **Fact 87:** From Ms. Hariri's point of view, all of the benefits provided to her through her employment at the County, including the long term disability plan, were provided by the County and administered through its Human |

| | | |
|---|---|---|
| | | Resources Office.<br><br>Supp. Decl. of Hariri ¶ 3. |
| | | **Fact 88:** From Rosy Hariri's point of view, the only thing about the long term disability benefit that changed as of the September 5, 2011 Memorandum of Agreement between the County and the Santa Clara County Government Attorneys Association was that the amount of the deduction for the long term disability plan benefit increased.<br><br>Supp. Decl. of Hariri ¶ 4. |
| | | **Fact 89:** When Roxy Hariri attempted return to work for the County of Santa Clara (the County) from November 12, 2013 to January 21, 2014, the County resumed its deductions of various items from her pay, including the long term disability insurance coverage, which was deducted along with various other benefits, including deferred compensation, PERS contributions by herself and the County, Health Net coverage, dental coverage, basic and supplemental life insurance coverage, visions services, and other items.<br><br>Supp. Decl. of Hariri ¶ 5; Supp. Decl. Perkins ¶ 2, Ex. 23, page 23-2 |
| | | **Fact 90:** On or about April 22, 2014, after not having received a paycheck from the County, after not having received any pay since she stopped working in January 2014. Roxy Hariri received a paycheck in the gross amount of $799.25. Of the total amount, $736.20 was characterized as "lump sum-off salary schedule pay," and the paystub did not fully explain how that amount was calculated. She called the County to ask for an explanation, and was advised part of the payment was a return of premium that she had paid for the long term disability coverage during her attempt to return to work from November 12, 2013 through January 21, 2014. |

| | | |
|---|---|---|
| | | Supp. Decl. of Hariri ¶ 6; Supp. Decl. of Perkins ¶ 3, Ex. 23, page 23-3 |

*I attest that the evidence cited herein fairly and accurately supports or disputes the facts as asserted.*

Respectfully submitted,

Dated: August, 2016

ROSE PERKINS PELMULDER

By: /s/Charles B. Perkins
CHARLES B. PERKINS
Attorneys for Plaintiff
ROXY HARIRI