UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| ROXY HARIRI,<br><br>    Plaintiff,<br><br>    v.<br><br>RELIANCE STANDARD LIFE INSURANCE COMPANY,<br><br>    Defendant. | Case No. 5:15-cv-03054-EJD<br><br>**ORDER GRANTING PLAINTIFF'S CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT; DENYING DEFENDANT'S CROSS MOTION FOR PARTIAL SUMMARY JUDGMENT RE ERISA PREEMPTION; SETTING CASE MANAGEMENT CONFERENCE**<br><br>Re: Dkt. Nos. 25, 32 |

## I. INTRODUCTION

Presently before the Court are the parties' cross motions for partial summary judgment on a single issue: preemption under ERISA, the Employee Retirement Income Security Act of 1974, 29 U.S.C. §1001, et seq. Hariri ("Hariri") asserts that the long term disability benefits funded by Defendant Reliance Standard Life Insurance Company ("Reliance") is part of a "governmental plan" that was "established or maintained" by her employer, Santa Clara County ("County"), and is therefore exempt from ERISA under 29 U.S.C. §1003(b)(1). Reliance contends that the "governmental plan" exemption is not applicable because Hariri's employee union, and not the County, "established or maintained" the long term disability plan underwritten by Reliance. Based upon all papers filed to date, the Court grants Plaintiff's cross-motion for partial summary judgment, and denies Defendant's cross-motion for partial summary judgment.

## II. BACKGROUND

Hariri began working for the County as a Deputy District Attorney in September 2001 and was a member of the Santa Clara County Government Attorneys' Association (the "GAA"). As a County employee and member of the GAA, Hariri was eligible for employee benefits, including long term disability ("LTD") benefits. Beginning in 1992, the County provided continuous LTD benefits for County attorneys who were members of the GAA through the purchase of a series of group disability insurance policies. In October of 1997, however, the County and the GAA agreed to share the cost of the premiums. The GAA membership began paying its portion of the premium payments to the County via payroll deductions, and the County then made the full premium payments to the insurance carrier.

In order to help the County achieve budget savings, on September 2011, the County and the GAA entered a Memorandum of Agreement ("2011 MOU") covering the terms and conditions of employment for GAA members from September 5, 2011 to September 1, 2013. With respect to LTD benefits, the 2011 MOU provided as follows:

> Effective September 5, 2011, the County will stop payments of up to $0.45/$100 of covered salary pursuant to the Long Term Disability (LTD) insurance side letter between the County and GAA signed October 10, 1997. Effective September 5, 2011, employees shall pay all premium costs for LTD insurance coverage (currently through The Standard Insurance Company), which shall continue to be deducted from the employees' paycheck. Effective no later than March 4, 2012, the County will stop administering the LTD plan as the Employer Plan Sponsor. At least 60 calendar days prior to March 4, 2012, the County and GAA shall meet and confer regarding other options for administration of an LTD should GAA wish to continue LTD plan coverage specific for its members.

Defendant's Moving Separate Statement 8 ("MSS"). Thereafter, the County provided the existing LTD insurance carrier with a "formal notice of termination" of the policy.

On May 8, 2012, GAA informed the County that GAA would obtain a LTD policy from Reliance. The GAA researched and purchased the Reliance Policy on its own, without County involvement. The GAA and the County exchanged several emails about transitioning from the

Case No.: 5:15-cv-03054-EJD
ORDER GRANTING PLAINTIFF'S CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT, DENYING DEFENDANT'S CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT RE ERISA PREEMPTION; SETTING CASE MANAGEMENT CONFERENCE
2

previous LTD policy to the Reliance Policy and administration of the Reliance Policy. The emails indicate that County expected and was given an opportunity to review the Reliance Policy before it was purchased "in case there may be some issues that are of concern for us, particularly since GAA is expecting the County to provide that administration." Defendant's MSS 22. In June of 2012, Reliance issued a group LTD policy to GAA as the policyholder.

In December of 2012, Hariri ceased working because of a claimed disability, and Reliance paid her benefits. Hariri returned to work in November of 2013, but became disabled again in January of 2014.

In February of 2014, the County and the GAA entered into a new Memorandum of Agreement, which provided in pertinent part that the County would resume paying a portion of the premiums for LTD insurance coverage, and would give employees a rebate for the premium costs they paid for the LTD insurance coverage from June 24, 2013 to February 2, 2014.

Reliance denied Hariri's claim for insurance in April 2014. Thereafter Hariri initiated this action, asserting claims for breach of contract and breach of the covenant of good faith and fair dealing under California law.

### III. STANDARDS

Ordinarily, a motion for summary judgment should be granted if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a); Addisu v. Fred Meyer, Inc., 198 F.3d 1130, 1134 (9th Cir. 2000). The moving party bears the initial burden of informing the court of the basis for the motion and identifying the portions of the pleadings, depositions, answers to interrogatories, admissions, or affidavits that demonstrate the absence of a triable issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). If the moving party meets this initial burden, the burden then shifts to the non-moving party to go beyond the pleadings and designate specific materials in the record to show that there is a genuinely disputed fact. Fed.R.Civ.P. 56(c); Celotex, 477 U.S. at 324. The court must draw all reasonable inferences in favor of the party against whom summary judgment is sought.

Case No.: 5:15-cv-03054-EJD
ORDER GRANTING PLAINTIFF'S CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT, DENYING DEFENDANT'S CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT RE ERISA PREEMPTION; SETTING CASE MANAGEMENT CONFERENCE
3

Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

## IV. DISCUSSION

ERISA was enacted to protect, inter alia, "the interests of participants in employee benefit plans and their beneficiaries." 29 U.S.C. §1001(b). "Employee benefit plans" are either "employee welfare benefit plans" or "employee pension benefit plans," or both. Massachusetts v. Morash, 490 U.S. 107, 109 S.Ct. 1668 (1989). ERISA defines an "employee welfare benefit plan" as: "any plan, fund, or program which ... is ... established or maintained by an employer or by an employee organization, or by both ... for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise, (A) medical, surgical, or hospital care or benefits, or benefits in the event of sickness, accident, disability, death or unemployment. . . ." 29 U.S.C. §1002(1). The term "employee organization" is defined as "any labor union or any organization of any kind, or any agency or employee representation committee, association, group, or plan, in which employees participate and which exists for the purpose, in whole or in part, of dealing with employers concerning an employee benefit plan, or other matters incidental to employment relationships; or any employees' beneficiary association organized for the purpose in whole or in part, of establishing such a plan. 29 U.S.C. §1002(4). ERISA preempts state law claims that "relate to" employee benefit plans. See 29 U.S.C. §1144(a).

ERISA does not govern, however, employee benefit plans "established or maintained" by a governmental entity. 29 U.S.C. §1003(b)(1); see also 29 U.S.C. §1002(32) (defining "governmental plan" as "a plan established or maintained for its employees by the Government of the United States, by the government of any State or political subdivision thereof, or by any agency or instrumentality of any of the foregoing"). "The use of the conjunction 'or' in section 1002(32) 'indicates that a plan is a governmental plan if it is *either* established or maintained by a government body for its employees.'" Roy v. Teachers Ins. and Annuity Ass'n, 878 F.2d 47, 50 (2nd Cir. 1989), citing Feinstein v. Lewis, 477 F. Supp. 1256, 1260 (S.D. N.Y. 1979). In the Department of Labor Opinion, Opinion 86-23A, the U.S. Department of Labor stated its position

that governmental plans include "plans established or maintained pursuant to a collective bargaining agreement between a governmental entity and a labor union where such plans are funded by and cover only employees of governmental entities." Although Department of Labor opinion letters are not binding, they are entitled to deference. Imada v. City of Hercules, 138 F.3d 1294, 1297 (9th Cir. 1998).

Governmental plans are exempted from ERISA due to concerns of federalism. Wilson v. Provident Life and Acc. Ins. Co., 101 F.Supp.3d 1038 (W.D. Wash. 2015). The Section 1003(b) governmental plan exemption represents "Congress' intent to refrain from interfering with the manner in which state and local governments operate employee benefit systems." Feinstein v. Lewis, 477 F.Supp. 1256, 1261 (S.D. N.Y. 1979), aff'd, 622 F.2d 573 (2d Cir. 1980). Because ERISA preemption is a defense, the burden is on the defendant to prove the facts necessary to establish it. Kanne v. Connecticut General Life Ins. Co., 867 F.2d 489, 492 n. 4 (9th Cir. 1988). The interpretation of ERISA is a question of law. Farr v. U.S. West Communications, Inc., 151 F.3d 908 (9th Cir. 1998), amended by 179 F.3d 1252 (9th Cir. 1999).

A. What Constitutes the "Employee Benefit Plan"

As an initial matter, the parties dispute what constitutes the "employee benefit plan" in this case. Citing Peterson v. American Life & Health Ins. Co., 48 F.3d 404 (9th Cir. 1995), Hariri contends that the Reliance Policy should be viewed as a component of a multi-benefit plan established for the County's employees who are members of the GAA that included medical insurance, dental insurance, vision insurance and life insurance, as well as LTD insurance. Hariri contends that the County established the LTD component of this multi-benefit plan when it purchased a LTD disability policy in 1992, paid 100% of the premium, and continued paying a portion of the insurance premiums until the GAA and County entered the 2011 MOU.

Hariri acknowledges circumstances changed pursuant to the 2011 MOU, but nevertheless asserts that the GAA "negotiated an agreement that it could keep the LTD plan if it wanted." Hariri's Motion at 10:13-14. Hariri reasons that "[t]he GAA voted to keep LTD benefits, which

Case No.: 5:15-cv-03054-EJD
ORDER GRANTING PLAINTIFF'S CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT, DENYING DEFENDANT'S CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT RE ERISA PREEMPTION; SETTING CASE MANAGEMENT CONFERENCE
5

became part of the agreement between the County and the GAA, and mandatory LTD coverage remained part of the employee benefits plan for [] the GAA. . . ." Hariri's Motion at 10:13-16. Two years later, when the County's financial condition presumably improved, the County again agreed to contribute to the LTD premium, rebated a portion of the premiums paid by employees back to June 24, 2013, and eventually paid 100% of the premiums.

Although LTD coverage may have initially been part of a multi-benefit County plan established in 1992, the County expressly removed LTD coverage from its benefit package when it entered the 2011 MOU. Thereafter, the GAA, acting alone, established a committee to research options for LTD coverage for its members; voted to obtain an LTD policy from Reliance; secured the Reliance Policy; was listed as the policyholder; and assumed sole responsibility for paying 100% of the premiums. From that point on, the LTD coverage was severed out and treated differently from the rest of the benefits offered by the County. Therefore, the Court rejects Hariri's assertion that the LTD benefits should be treated as part of a multi-benefit plan established by the County in 1992. See LaVenture v. Prudential Ins. Co. of America, 237 F.3d 1042 (9th Cir. 2001) (LTD coverage not "intertwined" with the County medical, vision, dental, pension, or other benefits so as to be part of one overall benefits plan); c.f. Shaw v. Delta Air Lines, 463 U.S. 85, 103 S.Ct. 2890 (1983) (benefits administered together treated as part of an overall plan); Peterson v. American Life & Health Ins. Co., supra (like types of benefits for health insurance treated as one plan); Gaylor v. John Hancock Mut. Life Ins. Co., 112 F.3d 460 (10th Cir. 1997) (plaintiff's attempt to sever optional disability coverage from employer's plan for accidental death and dismemberment coverage "cannot be done because the [optional] coverage was a feature of the Plan").

B. Whether the County or the GAA "Established" the Plan Pursuant to a Collective Bargaining Agreement

Reliance contends that the GAA, not the County, established the LTD plan, and therefore the governmental plan exemption to ERISA preemption is not applicable. Reliance reasons that

Case No.: 5:15-cv-03054-EJD
ORDER GRANTING PLAINTIFF'S CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT, DENYING DEFENDANT'S CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT RE ERISA PREEMPTION; SETTING CASE MANAGEMENT CONFERENCE

under the 2011 MOU, the County relinquished its obligation to provide LTD coverage to attorney employees who were members of GAA, after which it became GAA's sole decision whether to offer LTD coverage to its members. Reliance recounts all of the steps taken by the GAA to research and ultimately purchase the Reliance policy as further evidence that the GAA "established and maintained" the Reliance policy: the GAA contacted a broker, obtained data and information to provide to insurance carriers to obtain bids, negotiated policy terms, voted to arrange coverage from Reliance, became the named policyholder, and accepted various rights and obligations under the terms of the Reliance policy. See Defendant's Cross-Motion for Partial Summary Judgment at pp.14-15.

In Wilson v. Provident Life and Acc. Ins. Co., 101 F.Supp.3d 1038 (W.D. Wash. 2015), the court addressed whether the "governmental plan" exemption applied to a group insurance plan created by a public school employees union, the WEA, and the defendant insurance carrier, Provident, and providing coverage for non-government union employees and public school employees. The Wilson court framed the issue as follows: "Because the Plan was apparently created without direct involvement, the question becomes whether the Plan may be considered government-established for some other reason, i.e. because it receives public funding." Id. at 1044.

The Wilson court implicitly rejected the argument that public funding alone transformed the WEA-Provident plan into a "governmental plan," and next considered the plaintiff's argument that the school district permitted its employees to participate in the WEA-Provident plan and facilitated the employment of the plan premiums via payroll deductions. The Wilson court stated: "[i]t is clear from the evidence that the Plan anticipated and relied on school district participation; without this, the plan would not have covered the government employees it was designed to cover Id. Ultimately, however, the Wilson court found "dispositive" the fact that the plan at issue was independently created by the WEA for the benefit of its employees along with government

employees, and "the evidence [did not] suggest that school districts (including plaintiff's district) played any direct role in the Plan's creation." Id. at 1045.

Like the plan in Wilson, the LTD plan at issue in this case was independently created by a union, the GAA, through the purchase of the Reliance Policy, and the government entity, the County, did not play any direct role in establishing that plan. Consistent with Wilson, and drawing all reasonable inferences in favor of the non-moving party, Reliance, a reasonable factfinder could conclude that the LTD plan in this case was not "established" as a "governmental plan" because the County was not involved in procuring the Reliance Policy and did not provide funding for the Reliance Policy.

### C. Whether the County or the GAA "Maintained" the Plan Pursuant to a Collective Bargaining Agreement

The Wilson decision, however, does not go so far as to foreclose a finding that the LTD plan at issue is a "governmental plan." Section §1002(32) defines a "governmental plan" as "a plan established or maintained for its employees by a government body. See Roy v. Teachers Ins. And Annuity Ass'n, 878 F.2d 47, 50 (2nd Cir. 1989) (plan is a governmental plan if it is *either* established or maintained by a government body for its employees). The Wilson decision was based upon a finding that the plan in that case was independently created by the WEA, and thus was not "established" by a government body. The Wilson court did not fully analyze whether a plan "established" by a non-governmental body could nevertheless be exempted from ERISA preemption because a governmental body "maintained" the plan. Notably, the plan at issue in Wilson was administered by codefendant, Unum Group. Id. at 1040.

In the present case, there is no evidence that the GAA employed a third party to administer the LTD plan. Instead, Hariri has presented evidence showing that the County continued to perform, without any interruption, all of the day-to-day administrative and claims processing activities it had performed for years prior to the 2011 MOU. See Plaintiff's Reply at 13:2. The County received and distributed most of the Reliance Policy certificates through its HR

Case No.: 5:15-cv-03054-EJD
ORDER GRANTING PLAINTIFF'S CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT, DENYING DEFENDANT'S CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT RE ERISA PREEMPTION; SETTING CASE MANAGEMENT CONFERENCE

8

Department; posted the Reliance Policy certificate on the County's website; and provided claim assistance and claim forms. Id.

Further, it is undisputed that whenever Hariri had questions about her LTD coverage, she contacted the County's Human Relations Department, not the GAA. See Hariri Decl. at ¶9. When she became disabled, Hariri obtained her Reliance claim forms from the County's Human Relations Department, not the GAA. Id. at ¶8. The County's Human Relations Department, not the GAA, assisted Hariri with completing the Reliance claims forms. Id. The claims examiner at Reliance contacted the County Human Relations Department, not the GAA, to obtain Hariri's medical and payroll information.

Citing Peterson v. American Fidelity Assur. Co., 2013 WL 6047183 (D. Nev. 2013), Reliance characterizes the County's involvement as purely "ministerial," and too insignificant to establish that the County "maintained" the plan. In Peterson, an employee organization representing the public school teachers obtained a disability policy, negotiated the terms of the policy with the insurer and endorsed the program to encourage its members to participate. The public school employer provided salary information for use to market a disability plan, consented to the use of school property to market the plan, conducted payroll deductions and agreed to remit premiums to the insurer. The Peterson court ruled that the disability plan was not established or maintained by the public school employer because the school's administrative functions were ministerial.

Unlike Peterson, the County involvement with the Reliance Policy was more extensive, as outlined above. The present case is also distinguishable from Peterson in that the County expected and was given an opportunity to review the Reliance Policy before it was purchased "in case there may be some issues that are of concern for us, particularly since GAA is expecting the County to provide that administration." Defendant's MSS 22. After reviewing the Reliance Policy, the County sent GAA a list of discrepancies or suggested changes. See Plaintiff's Responsive Separate Statement 58. Further, in November of 2011, the GAA emailed the County questions

Case No.: 5:15-cv-03054-EJD
ORDER GRANTING PLAINTIFF'S CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT, DENYING DEFENDANT'S CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT RE ERISA PREEMPTION; SETTING CASE MANAGEMENT CONFERENCE

9

about the future administration of the plan, namely: is the County going to continue to start, stop and re-start payroll deductions for employees enrolled in the GAA plan; is the County going to continue to calculate the integration of sick leave and vacation balances; is the County going to enter the integrated salary amount in the County's HR/Payroll system; and is the County going to provide/complete the employer portion of the claims form. A County representative, Peter Ng, responded by asking whether continuing the "status quo for a period longer will not be problematic for your group." Plaintiff's Motion at 4:24-25. The GAA representative, Kevin Smith responded that "keeping the status quo is fine." Id. at 4:27.

According to the GAA President, Max Zarzana, following the 2011 MOU, the County "de facto agreed to continue the day to day administration of the LTD plan exactly as it had before." See Zarzana Decl. at ¶8. The County's functions in administering the LTD plan included, but were not limited to: "maintaining records of who was insured, notifying Reliance of all individuals eligible for coverage, maintaining a census of the people covered under the LTD plan, and making all premium payments." Id. at ¶9.

In addition, the County eventually provided indirect funding for the Reliance Policy by giving employees a rebate. The rebate covered a portion of the premium costs County employees paid between June 24, 2013 and February 2, 2014, which overlaps the effective period of the 2011 MOU by approximately three months.

In summary, the County performed numerous administrative day-to-day functions, assisted Hariri with her disability forms, communicated with Reliance for purposes of administering the Reliance Policy, and ultimately provided some of the funding for the Reliance Policy. Under the totality of circumstances, the only reasonable inference to be drawn from the evidence is that the County "maintained" the LTD plan.

## V. CONCLUSION

The undisputed facts show that the County "maintained" the LTD plan at issue in this case, and therefore the governmental plan exemption to ERISA preemption applies. Plaintiff's cross-

Case No.: 5:15-cv-03054-EJD
ORDER GRANTING PLAINTIFF'S CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT, DENYING DEFENDANT'S CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT RE ERISA PREEMPTION; SETTING CASE MANAGEMENT CONFERENCE
10

motion for partial summary judgment is GRANTED, and Defendant's motion for partial summary judgment is DENIED.

A case management conference is scheduled for September 14, 2017 at 10:00 a.m. The parties shall file an updated joint case management statement no later than September 1, 2017.

**IT IS SO ORDERED.**

Dated: August 9, 2017

EDWARD J. DAVILA
United States District Judge

Case No.: 5:15-cv-03054-EJD
ORDER GRANTING PLAINTIFF'S CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT, DENYING DEFENDANT'S CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT RE ERISA PREEMPTION; SETTING CASE MANAGEMENT CONFERENCE
11